**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
 ----------------------------------------------------- X

Towaki Komatsu,

                 Plaintiff,

        -vs-

The City of New York, NYPD Officer Cruz (shield #: 751),
NYPD Officer Hansen (shield #: 4028), NYPD Lieutenant
Ralph Nieves, NYPD Detective Christopher Fowler (shield #:
3185), NYPD Officer Keith Dietrich (shield #: 5779), NYPD
John Doe1 11/27/17, NYPD John Doe2 11/27/17, NYPD John
Doe3 11/27/17, NYPD Jane Doe1 11/27/17, NYPD Jane Doe2
11/27/17, NYPD Inspector Howard Redmond, Bill de Blasio,
James O'Neill, Lawrence Byrne, Jr., Anthony Shorris, Cyrus
Vance, Jr.

- All of the defendants listed above who are people are being
  sued in their individual and official capacities,

                Defendants.

 ----------------------------------------------------- X

**<u>Complaint</u>**

**JURY DEMAND**

# TABLE OF CONTENTS

I.    Preliminary Remarks ........................................................................................ 3

II.   Jurisdiction .................................................................................................... 20

III.  Parties ........................................................................................................... 21

IV.   Legal Standards ............................................................................................ 34

V.    Background and Retrospective Facts ............................................................ 38

    A.  Lies attributable to New York City Human Resources Administration
    Commissioner Steven Banks that were published on 9/8/17 about how Defendant
    City of New York is committed to equal opportunity ............................... 38

    B.  Proclivities and propensities of the defendants in committing illegal acts and
    omissions against me at public forums that the Mayor conducted while feeding
    their addition to remaining part of a criminal mob instead of being
    law-enforcement personnel ...................................................................... 39

    C.  Indications of municipal liability and deliberate indifference for my claims in
    this action .............................................................................................. 42

VI.   Statement of Facts ........................................................................................ 44

VII.  Causes of Action .......................................................................................... 133

VIII. Jury Demand ................................................................................................ 145

IX.   Prayer for Relief .......................................................................................... 145

Plaintiff Towaki Komatsu (hereinafter referred to in the first-person as "I", "me", and "my"), proceeding pro se in this action, does hereby state and allege all that follows in this pleading.

## PRELIMINARY REMARKS

1.      The following applies throughout this complaint in the interests of brevity:

       a.      Acronyms and aliases in the second column of the following table will be used throughout this pleading instead of the entries in the third column to which they correspond:

| # | Abbreviation | Corresponds To |
|---|---|---|
| 1 | CCRB | New York City Civilian Complaint Review Board |
| 2 | City Council | New York City Council |
| 3 | Defendant City | Defendant City of New York |
| 4 | DOE | New York City Department of Education |
| 5 | DOE's 4/27/17 video | The video recording that was recorded between 6:30 pm and 11 pm on 4/27/17 by a video security camera controlled by DOE that was installed by doors marked "Exit 13" by an entrance to the school that hosted the Mayor's 4/27/17 town hall that I received in response to a FOIL demand. That video recording is available on the Internet at https://drive.google.com/open?id=1MbzBrn2ERdkYajn4MVJy3N6AB5ZA5hFu |
| 6 | DOI | New York City Department of Investigations |
| 7 | FOIL | Freedom of Information Law |
| 8 | FRCP | Federal Rule of Civil Procedure |
| 9 | HRA | New York City Human Resources Administration |
| 10 | IAB | The NYPD's Internal Affairs Bureau |
| 11 | K1 | The related federal lawsuit that I commenced against the City of New York, Defendant Nieves, and others in April of 2018 that corresponds to the ongoing case of *Komatsu v. City of New York*, No. 18-cv-3698 (LGS)(GWG)(S.D.N.Y.) that my claims in this case relate back to and amplify. The judges in that case refused to grant me sufficient time to file a further amended complaint in that case that would have otherwise enabled me to assert my claims in that case instead of in this case. In fact, Judge Lorna Schofield explicitly directed me to instead commence a new civil action for additional claims that I sought to assert in that case. |

| | | |
|---|---|---|
| 12 | K2 | The related federal lawsuit that I commenced against the City of New York, Mr. Banks, and others on 8/14/20 that corresponds to the case of *Komatsu v. City of New York*, No. 20-cv-6510(LLS)(S.D.N.Y.) that is pending appeal and that my claims in this case relate back to and amplify. |
| 13 | K3 | The related federal lawsuit that I commenced against the City of New York, Defendant Redmond, and others on 8/29/20 that corresponds to the ongoing case of *Komatsu v. City of New York*, No. 20-cv-7046 (ER)(S.D.N.Y.) that my claims in this case relate back to and amplify. |
| 14 | K4 | The related federal lawsuit that I commenced against the City of New York, Defendant Mason, and others on 9/13/20 that corresponds to the ongoing case of *Komatsu v. City of New York*, No. 20-cv-7502(S.D.N.Y.) that my claims in this case relate back to and amplify. |
| 15 | K5 | The related federal lawsuit that I commenced against the City of New York, Defendant Mason, and others on 9/25/20 that corresponds to the ongoing case of *Komatsu v. City of New York*, No. 20-cv-8004(S.D.N.Y.) that my claims in this case relate back to and amplify. |
| 16 | K6 | The related federal lawsuit that I commenced against the City of New York, Defendant Mason and others on 10/5/20 that corresponds to the ongoing case of *Komatsu v. City of New York*, No. 20-cv-8251(ER)(S.D.N.Y.) that my claims in this case relate back to and amplify. |
| 17 | K7 | The related federal lawsuit that I commenced against the City of New York, Defendant Mason, and others on 10/11/20 that corresponds to the ongoing case of *Komatsu v. City of New York*, No. 20-cv-8540 (S.D.N.Y.) that my claims in this case relate back and forward to and amplify. |
| 18 | K8 | The related federal lawsuit that I commenced against the City of New York, Defendant Mason, and others on 10/25/20 that corresponds to the ongoing case of *Komatsu v. City of New York*, No. 20-cv-8933 (S.D.N.Y.) that my claims in this case relate back to and amplify. |
| 19 | K9 | The related federal lawsuit that I commenced against the City of New York, Defendant Nieves, and others on 11/1/20 that corresponds to the ongoing case of *Komatsu v. City of New York*, No. 20-cv-9151 (S.D.N.Y.) that my claims in this case relate back to and amplify. |
| 19 | K10 | The related federal lawsuit that I commenced against the City of New York, Ritchie Torres and Rafael Perez of the City Council, and others on 11/1/20 that corresponds to the ongoing case of *Komatsu v. City of New York*, No. 20-cv-9154 (S.D.N.Y.) that my claims in this case relate back to and amplify. |

| 20 | The Mayor | New York City Mayor Bill de Blasio |
|----|-----------|-----------------------------------|
| 21 | Mayor's 4/27/17 town hall | The public town hall meeting that members of the public conducted in a collaborative manner with the Mayor, Mr. Banks, and other government officials as a mostly traditional public forum on 4/27/17 in Long Island City in Queens that was subject to New York State's Open Meetings Law and was used a campaign event to support the Mayor's re-election interests. Defendant Redmond was among others who illegally barred me from attending it as I continued to have active litigation against HRA and was otherwise engaged in protected whistleblowing against HRA and HRA's business partners. Also, Defendants Cruz and Nieves witnessed me being illegally barred from that public forum and illegally didn't intervene on my behalf. |
| 22 | Mayor's 5/23/17 resource fair | The public resource fair meeting that members of the public conducted in a collaborative manner with the Mayor, Mr. Banks, and other government officials as a mostly traditional public forum on 5/23/17 inside of the Veterans Memorial Chamber within the Bronx Supreme Court during the U.S. Navy's annual "Fleet Week" event in New York City while I continued to be a U.S. Navy veteran and was upholding my military enlistment oath to protect and defend the U.S. Constitution against all enemies. Defendant Nieves was among others who illegally barred me from attending it from within the room in which it was conducted as I continued to have active litigation against HRA and was otherwise engaged in protected whistleblowing against the Mayor's NYPD security detail, Mayor's CAU, HRA, and HRA's business partners. |
| 23 | Mayor's 7/12/17 town hall | The public town hall meeting that the Mayor conducted as a public forum on 7/12/17 in the Bronx at 2160 Morris Avenue. That public forum was also used as a campaign event to support the Mayor's re-election interests Defendants Nieves and Cruz were among others who illegally barred me from attending it from within the room in which it was conducted as I continued to have active litigation against HRA and was otherwise engaged in protected whistleblowing against the Mayor's NYPD security detail, Mayor's CAU, HRA, and HRA's business partners. |

| 24 | Mayor's 7/25/17 publicity stunt | The public stunt that the Mayor illegally conducted on 7/25/17 in an area of a subway station located next to a staircase, below Broadway, and by Warren Street in Manhattan in a manner and location that was in violation of the MTA's Rules as Defendant Redmond illegally assaulted me in that subway station in front of NYPD Detective Christopher Fowler while I was conducting myself lawfully and while that was recorded on video. |
|---|---|---|
| 25 | Mayor's 8/30/17 town hall | The public town hall meeting that the Mayor conducted as a public forum on 8/30/17 at 195 Graham Avenue in Brooklyn. That public forum was also used as a campaign event to support the Mayor's re-election interests and I was illegally ejected from it by Defendant Nieves and others who illegally were following illegal orders that Defendant Redmond to cause that to occur as I continued to have active litigation against HRA and was otherwise engaged in protected whistleblowing against the Mayor's NYPD security detail, Mayor's CAU, HRA, and HRA's business partners. |
| 26 | Mayor's 9/8/17 public hearing | The public hearing that the Mayor conducted as a public forum on 9/8/17 at 2 pm inside of the Blue Room in City Hall. I was illegally barred from attending it and testifying in it by Defendant Cruz and unknown others as I continued to have active litigation against HRA and was otherwise engaged in protected whistleblowing against the Mayor's NYPD security detail, Mayor's CAU, HRA, and HRA's business partners. |
| 27 | Mayor's 9/14/17 town hall | The public town hall meeting that the Mayor conducted as a public forum on 9/14/17 at 2525 Haring Street in Brooklyn. That public forum was also used as a campaign event to support the Mayor's re-election interests Defendants Nieves and Cruz were among others who illegally barred me from attending it as I continued to have active litigation against HRA and was otherwise engaged in protected whistleblowing against the Mayor's NYPD security detail, Mayor's CAU, HRA, and HRA's business partners. |
| 28 | Mayor's 9/26/17 town hall | The public town hall meeting that the Mayor conducted as a public forum on 9/26/17 at 254 East 56th Street in Manhattan. That public forum was also used as a campaign event to support the Mayor's re-election interests. Defendant Nieves was among others who illegally barred me from attending it as I continued to have active litigation against HRA and was otherwise engaged in protected whistleblowing against the Mayor's NYPD security detail, Mayor's CAU, HRA, and HRA's business partners. |

| 29 | 10/3/17 City Hall press conference | A press conference that was conducted in front of City Hall's main steps on 10/3/17 at roughly 12 pm about reforming the NYPD. Defendant Hansen was among others who illegally prevented me from attending this. |
|----|-----------------------------------|-----------------------------------------------------------------------------------------------------|
| 30 | Mayor's 10/4/17 town hall | The public town hall meeting that the Mayor conducted as a public forum on 10/4/17 at 2452 Washington Avenue in the Bronx. Defendant Hansen and Nieves were among others who illegally barred me from attending it and otherwise illegally didn't intervene on my behalf to enable me to attend it as I continued to have active litigation against HRA and was otherwise engaged in protected whistleblowing against the Mayor's NYPD security detail, Mayor's CAU, HRA, and HRA's business partners. |
| 31 | Mayor's 10/25/17 resource fair | The public resource fair meeting that members of the public conducted in a collaborative manner with the Mayor and other government officials on 10/25/17 at Brooklyn College located at 2705 Campus Road in Brooklyn. That public forum was also used as a campaign event to support the Mayor's re-election interests Defendant Nieves and Redmond were among others who illegally barred me from attending it as I continued to have active litigation against HRA and was otherwise engaged in protected whistleblowing against the Mayor's NYPD security detail, Mayor's CAU, HRA, and HRA's business partners. |
| 32 | Mayor's 10/26/17 town hall | The public town hall meeting that the Mayor conducted as a public forum on 10/26/17 at 350 Fifth Avenue in Brooklyn. Defendant Redmond was among others who illegally barred me from attending it as I continued to have active litigation against HRA and was otherwise engaged in protected whistleblowing against the Mayor's NYPD security detail, Mayor's CAU, HRA, and HRA's business partners. |
| 33 | Mayor's 11/2/17 town hall | The public town hall meeting that the Mayor conducted as a public forum on 11/2/17 at 230-17 Hillside Avenue in Queens Village in Queens. Defendant Nieves was among others who illegally barred me from attending it as I continued to have active litigation against HRA and was otherwise engaged in protected whistleblowing against the Mayor's NYPD security detail, Mayor's CAU, HRA, and HRA's business partners. |

| 34 | Mayor's 11/27/17 public hearing | The public hearing that the Mayor conducted as a public forum on 11/27/17 at 12 pm inside of the Blue Room in City Hall. I was illegally barred from attending it and testifying in it by Defendants Cruz, Hansen, Nieves, and Redmond as I continued to have active litigation against HRA and was otherwise engaged in protected whistleblowing against the Mayor's NYPD security detail, Mayor's CAU, HRA, and HRA's business partners. |
| --- | --- | --- |
| 35 | Mayor's 11/27/17 public hearing video | The video recording that the Mayor's office arranged to be recorded of the Mayor's 11/27/17 public hearing that is available on the Internet at https://www.youtube.com/watch?v=gJovs33FfAk. |
| 36 | Mayor's CAU | The Mayor's Community Affairs Unit |
| 37 | Mr. Banks | HRA Commissioner Steven Banks |
| 38 | My HRA lawsuit | The hybrid lawsuit that I commenced against HRA in January of 2017 that corresponds to *Komatsu v. New York City Human Resources Administration*, No. 100054/2017 (Sup. Ct., New York Cty.) and is pending appeal. I asserted claims in that case that my claims in this case relate back to and amplify. |
| 39 | OCA | New York State Office of Court Administration |
| 40 | Second Circuit | United States Court of Appeals for the Second Circuit |
| 41 | Urban | Urban Pathways, Inc. It is the slumlord for the building in which I reside. |

2.    The next screenshot is from the elapsed time of 10 seconds in the Mayor's 11/27/17 public hearing video a I played it back with the closed-captioning feature enabled to show subtitles and confirms that the Mayor was deceitful by announcing that that hearing was a public hearing at the very time that members of the NYPD's criminal mob were continuing to illegally prevent me from attending and testifying in that hearing.



3.      The Mayor's 11/27/17 public hearing video is just 8 minutes and 20 seconds in length

and only 1 member of the public testified in it. Also, the next screenshot that is from the elapsed

time of 8 minutes and 20 seconds in it show NYPD Jane Doe1 11/27/17 on the far-left and

NYPD John Doe1 11/27/17 on the far-right.



4.      Among other questions, two questions that are naturally raised by what I just discussed

are the following:

a. Since the Mayor's 11/27/17 public hearing lasted for less than 8 minutes and 25 seconds as it was used as a photo-op publicity stunt for the Mayor just 20 days after Mayor's NYPD security detail, Mayor's CAU, Jessica Ramos, and whistleblower news censors in journalism acted as accomplices as they succeeded in stealing the 11/7/17 outcome of the 2017 New York City government elections for the mutual benefit of Bill de Blasio and themselves by repeatedly committing flagrant, totally illegal, and otherwise patently unethical acts of voter suppression, voter fraud, whistleblower retaliation, and whistleblower news censorship at and in relation to public forums that the Mayor conducted leading up to 11/7/17 between 4/27/17 and 11/2/17, what were the specific and objectively valid reasons why members of the NYPD's criminal mob illegally and willfully prevented me for more than 1.5 hours between 11:34 am and 1:08 pm on 11/27/17 from being able to exercise my rights pursuant to the First Amendment, Fourth Amendment, Fifth Amendment, Fourteenth Amendment, and New York State's Open Meetings Law to walk past the NYPD guardhouse located just inside of the Broadway entrance to City Hall to a security screening area to undergo a security check involving the use of a metal detector and then to City Hall's building?

b. Why didn't NYPD Jane Doe1 11/27/17 and NYPD John Doe1 11/27/17 tell me at 12:39 pm on 11/27/17 that the Mayor's 11/27/17 public hearing had finished as I talked with NYPD John Doe1 11/27/17 as I stood next to the guardhouse located just inside of City Hall while NYPD Jane Doe1 11/27/17 stood nearby as I continued to be illegally prevented from walking past that area to reach City Hall's building that is a public forum as well as the area between that guardhouse and City Hall's building

on City Hall's property that also is a public forum?

5.      The next screenshot is also from the elapsed time of 8 minutes and 20 seconds from the Mayor's 11/27/17 public hearing. It appears to confirm that a whistleblower news censor in journalism named Yoav Gonen attended the Mayor's 11/27/17 public hearing while he sat on the left in the front row in the Blue Room in City Hall and used a laptop that is shown as being open with its screen turned on in this screenshot. Actual journalists who are reporters may have also attended that public hearing, such as the woman who wore a red top and appears with an open laptop in this screenshot.



6.      The Mayor's office arranged for an a public notice to be published on 11/22/17 in an official New York City government report named "The City Record" that announced information about Mayor's 11/27/17 public hearing that included when it would be conducted, where it would be conducted, and the agenda for that public hearing in which the public was permitted to attend and testify in support of or in opposition to proposed legislation that was on the agenda to be discussed during that public forum. That public notice is available on the Internet at https://a856-cityrecord.nyc.gov/RequestDetail/20171121102. I brought a printed copy of that public notice with me on 11/27/17 when I visited City Hall to try to lawfully attend and testify in that hearing. I also showed that printed notice to Defendant Cruz as he illegally prevented me from attending the Mayor's 11/27/17 public hearing.

7.      In response to a FOIL demand that I submitted to the NYPD, I received video recordings

that were recorded on 11/27/17 by video security cameras controlled by the NYPD of areas

located in the immediate vicinity of the entrance to City Hall by Broadway. Those video

recordings do not contain any audio. One of those video recordings is nearly 2 hours in length.

Due to the file size of that particular video, I arranged for it to be split into two video clips. The

first video clip is 1 hour, 23 minutes, and 16 seconds in duration. The beginning of that recording

corresponds to the time of 11:24:56 am on 11/27/17. It ends at the tie of 12:48:12 pm. I have

made a copy of that video recording available on the Internet at

https://drive.google.com/open?id=14KMfsOQ3hz2c1MhrWzSmrM4T3a-bv5RB.  I renamed that

video recording as "11-27-17 incident with Nieves, Cruz, Hansen by Broadway entrance to City

Hall_part 1 of 2_7.26187 - NORTHEAST CO BROADWAY - MURRAY (NE co (13792) Part

1.mp4" and will hereinafter refer to it as "11/27/17 aerial video1".  The next screenshot

corresponds to the elapsed time of 10 minutes and 55 seconds in that video clip and what was

then the time of roughly 11:35:51 am. Defendant Redmond shown in this screenshot as he

stood immediately to my left as he was walking past me as I stood next to the NYPD guardhouse

located just inside of the entrance to City Hall by Broadway and wore a white sweater.



8.    The second video clip from that original video recording that I received from the NYPD is 26 minutes, and 51 seconds in duration. The beginning of that recording corresponds to the time of 12:48:08 pm on 11/27/17. It ends at the time of 1:14:59 pm. I have made a copy of that video recording available on the Internet at

https://drive.google.com/open?id=1AvRbqrzF5G06NxrgFPrUl4yJpY7_36kV.  I renamed that video recording as "11-27-17 incident with Nieves, Cruz, Hansen by Broadway entrance to City Hall_part 2 of 2_7.26187 - NORTHEAST CO BROADWAY - MURRAY (NE co (13792) Part 2.mp4" and will hereinafter refer to it as "11/27/17 aerial video2".

9.    The table shown next contains brief information about as well as links to copies of video recordings that I recorded with my cell phone and photographs that I took with it on **a)** 11/27/17 while I lawfully conducted myself as I stood in close proximity to the NYPD guardhouse that is located just inside of the entrance to City Hall by Broadway, **b)** on 11/27/17 while I was inside of City Hall after having been illegally prevented from accessing it earlier on that date, and **c)** on 11/30/17 while attending the public town hall meeting that the Mayor conducted in Queens that Defendant Cruz also attended. The second table that follows this one includes a brief description of what appears in the video recordings and photographs listed in this table.

| # | Date & Time Created | Filename | Link to video |
|---|---|---|---|
| 1 | 11/27/17 at 11:39 am | IMG_3222.MOV | https://drive.google.com/file/d/1Hh9XhKICQie9raqSMlPkDSa5Wz3wVrFp/view?usp=sharing |
| 2 | 11/27/17 at 11:43 am | IMG_3223.MOV | https://drive.google.com/file/d/14CLWFRzAC2OrBoSA8optvahD4kWivdB2/view?usp=sharing |
| 4 | 11/27/17 at 11:53 am | IMG_3225.JPG | https://drive.google.com/file/d/1KLIPIKGBYZr4HnLFvWeLoW9gR9VutsNy/view?usp=sharing |

| 5 | 11/27/17 at 12:05 pm | IMG_3226.MOV | https://drive.google.com/file/d/1SchTJTSYtiLK8PGEv7PlXHa7FJ2UKqpW/view?usp=sharing |
| 6 | 11/27/17 at 12:13 pm | IMG_3227.JPG | https://drive.google.com/file/d/16wDUM-Zio1S-vobizIjT-SqJ6QyD0C9h/view?usp=sharing |
| 7 | 11/27/17 at 12:19 pm | IMG_3228.JPG | https://drive.google.com/file/d/1NOg76o4OCX0QRoRpix_5Zkh4PiUf20CD/view?usp=sharing |
| 9 | 11/27/17 at 1:06 pm | IMG_3230.MOV | https://drive.google.com/file/d/1eEoGWDbcwOuNGQ8lORKWD-2yeUqe-nZy/view?usp=sharing |
| 10 | 11/27/17 at 1:11 pm | IMG_3231.MOV | https://drive.google.com/file/d/1B-xjIWB0ADVnviedX9GZr6NSoeL0gmwl/view?usp=sharing |
| 11 | 11/30/17 at 7:24 pm | town hall 11-30.mov | https://drive.google.com/file/d/1yPXmVyjX2_-80dQzak0HsU1byN2i65tE/view?usp=sharing |
| 12 | 11/30/17 at 7:26 pm | VID_20171130_192647.mp4 | https://drive.google.com/file/d/1nBXW8AzCNylQf_eTQoeTUnzoU-V87Vuv/view?usp=sharing |
| 13 | 11/30/17 at 9:59 pm | IMG_3297.MOV | https://drive.google.com/file/d/1yOTXGRyEhcarxc6wt3W5qZvyAzwi8zID/view?usp=sharing |

| # | Filename | Brief Description |
|---|---|---|
| 1 | IMG_3222.MOV | Printed copies of both the public notice that was issued for the Mayor's 11/27/17 public hearing and New York State's Open Meetings Law that I was then holding are shown in this video as I stood next to the NYPD guardhouse located just inside of City Hall and recorded City Hall's building in the background. |
| 2 | IMG_3223.MOV | A printed copy of the public notice that was issued for the Mayor's 11/27/17 public hearing that I then held is shown in this video as I still stood next to that guardhouse while Defendant Cruz partly emerged from it and told me his name in an irritated manner in response to my having just asked him for it. I also stated his NYPD shield number as I recorded that video of his uniform that included a marking of "IB" on his collar that I believe stands for "Intelligence Bureau" to pretend on days other than Halloween that the NYPD has intelligence. |

| 4 | IMG_3225.JPG | I'm shown in this photograph as I held a printed copy of the public notice that was issued for the Mayor's 11/27/17 public hearing. This photograph also shows Defendant Cruz as he sat in the NYPD guardhouse and appeared to be using a telephone. A raised and extended telephone cord is seen in this photograph through the glass of that NYPD guardhouse while Mr. Cruz's left hand was raised and near his left ear. |
|---|---|---|
| 5 | IMG_3226.MOV | I'm shown in this video as I held a printed copy of the public notice that was issued for the Mayor's 11/27/17 public hearing while I still stood next to that guardhouse and also recorded Defendant Cruz while he sat inside of it. |
| 6 | IMG_3227.JPG | I took this photograph of 3 video security cameras that are installed near the NYPD guardhouse that is located just inside of the Broadway entrance to City Hall as I still stood next to that guardhouse. One of those camera units then had the identification number of 726187 marked on its exterior. |
| 7 | IMG_3228.JPG | This is a photograph of a business card that I was shown by a young black woman whose name I don't know and met as I continued to stand next to that guardhouse as she was then entering City Hall's grounds for an appointment about an internship with New York City Manhattan Borough President Gale Brewer's office. I believed that I apprised her then that I was being illegally being prevented from accessing City Hall's grounds before she was allowed to proceed past that point to get to City Hall's building. |

| 9 | IMG_3230.MOV | Although I inadvertently recorded this video in an upside-down manner, it can be properly rotated by playing it back with a software program. Defendant Nieves appears in this video as I still stood next to the NYPD guardhouse that is located just inside of the entrance to City Hall by Broadway. I recorded that video as I continued to be illegally prevented from accessing City Hall's building by him and Defendant Hansen after Defendant Cruz had left that area. Defendant Nieves is shown and heard in that video as he illegally ordered me to move away from where I then lawfully stood. He is also shown and heard in it as he told me that Defendant Redmond was his supervisor and that Mr. Redmond had issued an order to cause me to be prevented from accessing City Hall's building on that date. A whistleblower news censor in journalism named J. David Goodman who works for the New York Times also appears in this video as I told him that Defendant Nieves wasn't allowing me to attend a public meeting. In response, Mr. Goodman is shown and heard as he told me that he had to run from where we were instead of being a journalist by gathering information about what I just told him and reporting that through the New York Times to hold the Mayor's office and NYPD properly accountable after they stole the outcome of the 2017 New York City government elections by similarly engaging in acts of voter suppression, voter fraud, whistleblower retaliation, and violations of the Hatch Act at public forums that the Mayor conducted and used as campaign events leading up to the 2017 New York City government elections. |

| 10 | IMG_3231.MOV | I recorded this video of NYPD Officer Keith Dietrich who sued Defendant Redmond unsuccessfully for discrimination. I recorded that video as I stood inside of the main entrance to City Hall on its first floor in area that may aptly be characterized as an atrium after Defendants Nieves and Hansen finally relented and allowed me to walk past them to get to City Hall's building after the Mayor's 11/27/17 public hearing ended and while other public hearings were taking place inside of City Hall that were conducted by the City Council. Mr. Dietrich is heard making remarks to me in that video to inform me that I wouldn't be allowed me to remain in the public area where I then stood because the Mayor would soon be in that area in spite of the fact that I sought to lawfully exercise my First Amendment and Fourteenth Amendment right to remain where I was and lawfully apprise the Mayor that I was just illegally prevented from attending and testifying in the public hearing that he just conducted while asking him in a very public way in from of journalists and whistleblower news censors in journalism what he would do about that while I would be recording him, them, and members of the NYPD nearby on video. On a related note, the New York Daily News published a news article on the Internet on 12/12/18 at https://www.nydailynews.com/news/politics/ny-pol-city-hall-protest-no-arrests-20181211-story.html that is entitled "Police are Hands-Off at City Hall Sit-In Protest Demanding Housing for the Homeless" that was written by Jillian Jorgensen and discussed the fact that members of the NYPD that included NYPD Detective Raymond Gerola of the Mayor's NYPD security detail allowed demonstrators to conduct a sit-in protest on 12/12/18 inside of the City Hall while blocking exits and passageways that included an area in the immediate vicinity of the atrium in City Hall. That retrospectively confirms that I had a Fourteenth Amendment due process and equal protection right to continue to exercise my First Amendment right of assembly on 11/27/17 in that atrium area in City Hall while the Mayor would be in that same area. |

| 11 | town hall 11-30.mov | I recorded this video as I attended the public town hall meeting that the Mayor conducted in Queens on 11/30/17 that New York City Councilman Rory Lancman acted as the moderator for.  The following key people appear in this video: |
|---|---|---|

<blockquote>

**a)** Marco Carrion of the Mayor's Community Affairs Unit ("Mayor's CAU").

**b)** Melinda Katz while she was the Queens Borough President.

**c)** An unknown Black male member of the Mayor's NYPD security detail who was recorded on video as he assaulted me near where the Mayor stood on 7/18/17 during the public resource fair meeting that the Mayor conducted in Queens before the Mayor's office illegally concealed that video recording from the public to protect the Mayor's re-election interests in an illegal manner that constituted voter suppression, voter fraud, whistleblower retaliation, and violations of the Hatch Act.

**d)** Joe Ventri of the Mayor's NYPD security detail.

</blockquote>

The unknown Black male member of the Mayor's NYPD security detail to whom I just referred was recorded in that video I recorded on 11/30/17 as he violated the Handschu Agreement by conducting illegal surveillance against me while I was typing an early version of a legal brief to use in litigation against other members of the Mayor's NYPD security detail, other members of the NYPD, members of the Mayor's CAU, and New York State court officers in response to illegal acts and omissions that they committed against me since 4/27/17 at public forums that the Mayor had been conducting. My attendance at that 11/30/17 town hall was possible only because NYPD Officer Jerry Ioveno intervened on my behalf and arranged for Shauna Stribula of the Mayor's CAU to be overruled to allow me to attend that town hall. Before he intervened, Ms. Stribula illegally tried to prevent me from exercising my rights pursuant to the First Amendment, Fourteenth Amendment, and Fifth Amendment, and New York State's Open Meetings Law to attend that town hall meeting as she did so in front of the school that hosted it and violated my Fourth Amendment rights in doing so. She did so in the immediate presence of members of the public, members of the NYPD, and other members of the Mayor's CAU as those New York City government personnel illegally condoned her behavior against me in furtherance of a conspiracy to illegally prevent me from attending that public forum.

| 12 | IMG_3297.MOV | I recorded this video as I continued to attend the Mayor's 11/30/17 town hall meeting. Defendant Cruz appears in this video as well as Andrew Berkowitz and Karl Pfeffer as both of them then were members of the Mayor's NYPD security detail. Marco Carrion is also show in this video. |
| 13 | VID_20171130_192647.mp4 | I recorded this video as I continued to attend the Mayor's 11/30/17 town hall meeting. This video shows that I recorded my laptop's screen on video as I was looking at a news article that the New York Times published on the Internet at https://www.nytimes.com/2017/10/17/nyregion/brooklyn-judge-police-perjury-nypd.html on 10/17/17 that is entitled "Brooklyn Judge Seeks to Examine the Prevalence of Police Lying" and was written by Joseph Goldstein. That article concerned the NYPD's ongoing practice of "Testilying", former Brooklyn federal judge Jack Weinstein, and the case of _Cordero v. City of New York,_ No. 15-cv-3436 (JBW) (E.D.N.Y. Feb. 23, 2018) that I attended. After recording what appeared on my laptop's screen, I then rotated my cell phone's camera to record the Mayor to indicate my view that whatever he said about the NYPD during that town hall meeting would be lies that were designed to cater to a criminal mob that I believe owns him and for which he acts as a puppet. |

10.    The illegal acts and omissions that were committed against me on 11/27/17 by the Broadway entrance to City Hall and inside of City Hall on its first floor in atrium area were committed in relation to my efforts to have exercised my legal right to have done the following:

a.   Attended and testified in the Mayor's 11/27/17 public hearing while exercising the entire array of my legal rights while doing so.

b.   Continued to lawfully stand in the atrium area in City Hall to lawfully and publicly confront the Mayor from a sufficient distance away about the fact that I was illegally prevented from attending and testifying in the public hearing that he conducted on 11/27/17 to which I just referred after I previously apprised him on 7/18/17 that Defendant Redmond illegally prevented me from attending the public town hall meeting that he (the Mayor) conducted on 4/27/17 in Queens.

c.   Lawfully and publicly question the Mayor from a sufficient distance away to find out

exactly what, if any, appropriate corrective action he would undertake and when in response to the fact that I continued to be illegally prevented from attending public forums that he conducted.

11.     This is a civil rights action to vindicate my rights in response to illegal acts and omissions that were committed against me by members of the NYPD on 11/27/17 in relation to efforts that I undertook to access City Hall's building on that date and lawfully exercise the entirety of my legal rights while doing so in the immediate presence of the Mayor and others. Such illegal acts and omissions were committed against me while Defendant Redmond was then the primary defendant in *Sherrard v. City of New York*, No. 15-cv-7318 (MB) (S.D.N.Y. Jun. 13, 2018) and a legal filing was submitted in that case on that date by the Plaintiff's attorney. I was aware of Defendant Redmond's status in that case since 4/27/17.

     a.     Those who committed such illegal acts and omissions against me on 11/27/17 did so to retaliate against me in furtherance of what was then an ongoing conspiracy against me and campaign of harassment in response to protected whistleblowing activities that I engaged in. Such protected activities that I engaged in were against the Mayor, members of the Mayor's NYPD security detail, other members of the NYPD, HRA, and HRA's business partners. Those activities were all intertwined with my HRA lawsuit

12.     Some of my claims in this action closely parallel earlier claims that I asserted against Defendant Cruz in K3 for illegal acts that he committed against me on 9/8/17 at City Hall as he illegally prevented me from attending and testifying in the Mayor's 9/8/17 public hearing.

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C.

§§1331 and 1343. This action is brought pursuant to 42 U.S.C. §§1983, 1985, 1988 and the First, Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution.

2.      Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§2201 and 2202, FRCP Rules 57 and 65, and the general legal and equitable powers of this Court.

3.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because I reside in the Bronx and the illegal acts and omissions that were committed against me that this action concerns were committed in Manhattan.

4.      An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. §1988.

5.      Consistent with the requirements of New York General Municipal Law § 50-e, I filed a timely Notice of Claim with the New York City Comptroller within 90 days of the accrual of my claims under New York law. This Court therefore has supplemental jurisdiction over my claims under New York law because they are so related to the within federal claims that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

6.      My claims have not been adjusted by the New York City Comptroller's Office.

## PARTIES

1.      I am, and was at all times relevant to this action, a resident of Bronx County in the State of New York. I am also a U.S. Navy veteran, who swore to defend the U.S. Constitution against all of its enemies indefinitely and without exceptions. I have honored that oath and continue to do so.

2.      Bill de Blasio is the Mayor of the City of New York.

3.      Defendant City of New York is a municipal corporation duly incorporated and authorized under the laws of the State of New York pursuant to §431 of its Charter. The City of New York is authorized under the laws of the State of New York to maintain a police department, the

NYPD, which is supposed to act as its agent in the area of law-enforcement and for which it and the Mayor are ultimately responsible. The City and the Mayor both assume the risks incidental to the maintenance of a police force and the employment of police officers.

4.      Defendants Redmond, Nieves, Cruz, Hansen, Fowler, Dietrich, NYPD John Doe1 11/27/17, NYPD John Doe2 11/27/17, NYPD John Doe3 11/27/17, NYPD Jane Doe1 11/27/17, NYPD Jane Doe2 11/27/17, O'Neill, and Byrne, Jr. were at all times relevant herein officers, employees, and agents of the NYPD and the City of New York.

5.      The following shows how NYPD John Doe1 11/27/17 appeared on 11/27/17 and 10/24/18:



| 11/27/17 | 11/27/17 | 10/24/18 |
|---|---|---|
| This is from the elapsed time of 1 hour, 15 minutes, and 29 seconds in 11/27/17 aerial video1. | This is from the elapsed time of 8 minutes and 20 seconds in the Mayor's 11/27/17 public hearing video. | |

6.      The next table shows how NYPD John Doe2 11/27/17 appeared on 11/27/17 in 11/27/17 aerial video1 at the elapsed times listed as Defendant Redmond may have walked directly in front of him to City Hall's grounds at the elapsed time of 30 minutes and 28 seconds in that video.

| At 30 minutes and 17 seconds | At 30 minutes and 28 seconds |
|---|---|
|  | |

7.      The next table shows how NYPD John Doe3 11/27/17 appeared on 11/27/17 in 11/27/17 aerial video1 at the elapsed times listed.

| At 36 minutes and 49 seconds | At 30 minutes and 51 seconds |
|---|---|
|  | |

8.     The following shows how NYPD Jane Doe1 11/27/17 appeared on 7/25/17 and 11/27/17:



| 7/25/17 | 11/27/17 | 11/27/17 |
|---------|----------|----------|
|         | This is from the elapsed time of 8 minutes and 20 seconds in the Mayor's 11/27/17 public hearing video. | This is from the elapsed time of 1 hour, 15 minutes, and 29 seconds in 11/27/17 aerial video1. |

9.     NYPD Jane Doe2 11/27/17 is a Black female. The following shows how she appeared on 11/27/17 as she was near the entrance to City Hall by Broadway at the elapsed time of roughly 20 minutes and 2 seconds in 11/27/17 aerial video1 and was exiting City Hall's grounds:





10.     Defendant Redmond helps to direct the Mayor's NYPD security detail and holds the rank

of Inspector in the NYPD.

11.     Defendants Nieves, Fowler, Dietrich, NYPD John Doe1 11/27/17, NYPD Jane Doe1

11/27/17 were at all times relevant herein members of the NYPD security detail for New York

City Mayor Bill de Blasio that Defendant Redmond directs.

12.     On 11/27/17, both Defendant Bill de Blasio and Defendant James O'Neill were

responsible for how the NYPD operated. Prior to that date, I had face-to-face conversations with

both of them on 6/26/17 (with Defendant O'Neill) and on 7/18/17 (with Defendant de Blasio)

that were recorded on audio and/or video about illegal acts and omissions that Defendant

Redmond and other members of the NYPD committed against me since 4/27/17 at public forums that the Mayor had conducted. Information about the meeting that the New York City Bar Association conducted on 6/26/17 during which I talked with Defendant O'Neill is available from the New York City Bar Association's web site at https://www.nycbar.org/media-listing/media/detail/a-conversation-with-new-york-city-police-commissioner-james-p-oneill. Mr. de Blasio also stood within roughly 20 feet from me as Defendant Redmond was recorded on video on 7/25/17 as he illegally assaulted me in front of many whistleblower news censors in journalism and Defendant Fowler inside of a subway station below Broadway by Murray Street in Manhattan as Mr. Redmond continued to flagrantly violate my constitutional rights at a time and in a location in which the Mayor was illegally conducting a publicity stunt in violation of the MTA's Rules that authorized me to have conducted myself in the manner in which I did so at the time that Mr. Redmond began assaulting me and violating my constitutional rights then.

13.     At all times relevant herein, Defendant Byrne, Jr. was the NYPD's Deputy Commissioner for Legal Matters. In that capacity, he was also partly responsible for how the NYPD operated. Prior to 11/27/17, I had a face-to-face conversation with him on 10/3/17 during a meeting that the New York City Bar Association conducted at 42 West 44th Street in Manhattan at which he was part of a panel of speakers that also included Defendant Vance, Jr. That meeting was recorded on audio by the New York City Bar Association. I have made a copy of that audio recording available on the Internet at ˚https://drive.google.com/open?id=1z3UbsChlk0hH8guVbv0kEqigxA67q4cX with the filename of "10-3-17 chat with Cyrus Vance & NYPD Deputy Commissioner for Legal Affairs Lawrence Byrne at NYC Bar Association.mp3". Additional information about that meeting is available from the New York City Bar Association's web site at https://www.nycbar.org/media-

listing/media/detail/police-officer-testimony-a-quarter-of-a-century-after-the-mollen-commission. During that meeting, I clearly apprised him about the fact that members of the NYPD had been committing illegal acts and omissions at public forums that the Mayor had been conducting while subjecting me to illegal viewpoint discrimination as they illegally preventing me from attending them. While talking with him at the end of that meeting, I specifically urged him to intervene on my behalf to end such illegal acts and omissions against me by members of the NYPD. He refused and instead told me that I would have to keep reporting complaints about that.

14.     At all times relevant herein, Defendant Vance, Jr. has been the Manhattan District Attorney. As such, he has been responsible for upholding the constitutional rights of New Yorkers in New York City and enforcing applicable laws in New York City that that include NYPL §240.20, NYPL §240.26, NYPL §215.10, NYPL §240.65, NYPL §175.25, NYPL §195.00, New York City Charter §1116. Prior to 11/27/17, I also had a face-to-face conversation with him on 10/3/17 during the meeting that the New York City Bar Association conducted at 42 West 44th Street in Manhattan that I just discussed. Only part of my remarks to him during that meeting were recorded by the audio recording that the New York City Bar Association recorded of that meeting because of problems with the microphones that were used during that meeting. That meeting as attended by an attorney named Ron Kuby and a whistleblower news censor in journalism named Joseph Goldstein. Mr. Goldstein works for the New York Times and talked with me at the end of that meeting. During that meeting, I clearly apprised Mr. Vance, Jr. about the fact that members of the NYPD had been committing illegal acts and omissions at public forums that the Mayor had been conducting while subjecting me to illegal viewpoint discrimination as they illegally preventing me from attending them. While talking with him then,

I specifically urged him to intervene on my behalf to end such illegal acts and omissions against me by members of the NYPD. He refused to do so as he told me then that he wouldn't intervene on my behalf about that because he wasn't a federal prosecutor.

15.     At all times relevant herein, Defendant Anthony Shorris was an employee of the City of New York and worked for the Mayor's office as the First Deputy Mayor of New York City. On 10/13/17, I talked with Mr. Shorris at the New York Law School during a meeting it conducted and recorded on video that is available on the Internet at

https://www.youtube.com/watch?v=ZEKi8skDT0c. That meeting was also attended by whistleblower news censors in journalism named Yoav Gonen, Ben Max, Matthew Chayes, and Jillian Jorgensen. Mr. Gonen then worked for the New York Post. He now works for a news organization named "The City". Ben Max runs a news organization named Gotham Gazette. Mr. Chayes works for Newsday. Ms. Jorgensen then worked for the New York Daily News and now works for Spectrum News. The next screenshot is from the elapsed time of 37 minutes and 54 seconds of the video recording that was recorded of that meeting by the New York Law School as I talked with Mr. Shorris during that meeting. This screenshot is from how I played back that video with its closed-captioning feature enabled.



NYPD security detail going to stop
violating those rights particularly

16.     This screenshot accurately reflects the fact that I then lawfully took off the gloves so to

speak in my line of questions to Mr. Shorris as I asked him to tell me when the Mayor's NYPD

security detail would stop violating my First Amendment right to attend public forums that the

Mayor conducted. While asking him that, I cited the landmark and seminal court decision about

viewpoint discrimination that the U.S. Supreme Court issued in _Wood v. Moss_, 134 S. Ct. 2056,

572 U.S., 188 L. Ed. 2d 1039 (2014). I also told Mr. Shorris during that conversation that **a)** I

had just been illegally prevented from attending the Mayor's 10/12/17 town hall and **b)**

Defendant Redmond was then both the defendant in a civil right lawsuit (I was then referring to

_Sherrard v. City of New York_) and a member of the Mayor's NYPD security detail who illegally

prevented me from attending public forums that the Mayor had been conducting. After I talked

with Mr. Shorris on 10/13/17, Defendants Redmond and Nieves were personally involved in

causing me to be illegally prevented from attending the public resource fair meeting that the

Mayor conducted on 10/25/17 in Brooklyn while I was at the site of that public forum when Mr.

Shorris thereafter arrived there on that date. Upon his arrival, I apprised him that I was being

illegally prevented from attending that public forum. In response, he told me that he would look

into that, then went inside the college that hosted that public forum as I continued to be illegally prevented from attending that public resource fair meeting. That circumstance establishes deliberate indifference on Mr. Shorris' part about the illegal acts and omissions that were being committed against me to attend public forums that the Mayor conducted.

17.     The individual defendants are being sued herein in their individual and official capacities.

18.     The defendants in this action who are people violated oaths that they were required to take through the illegal acts and omissions that they committed against me on 11/27/19 in relation to my efforts to lawfully **a)** access City Hall's building, **b)** attend and testify in the Mayor's 11/27/17 public hearing, **c)** remain in the atrium area on the first floor in City Hall, and otherwise lawfully **d)** exercise my constitutional rights on City Hall's grounds.

19.     The specific oaths that the defendants violated on 11/27/19 in regards to me were those that they were required to take upon **a)** joining the NYPD and/or **b)** otherwise working for the City of New York. Those oaths required them to swear or affirm that they would perform their duties as members of the NYPD and/or other personnel of the City of New York in accordance with the U.S. Constitution and New York State Constitution to the best of their abilities. In regards to this point, the Mayor's press office made a transcript available on the Internet of a swearing-in ceremony for new members of the NYPD that the Mayor presided over on 10/8/15. That transcript is available on the Internet at https://www1.nyc.gov/office-of-the-mayor/news/702-15/transcript-mayor-de-blasio-delivers-remarks-nypd-swearing-in-ceremony.

20.     The next screenshot shows an excerpt from that transcript that reflects how those new members of the NYPD pledged to uphold the U.S. and New York Constitution and to faithfully discharge their duties as members of the NYPD to the best of their abilities. Hindsight confirms that the defendants in this action who were members of the NYPD on 11/27/17 lied in the oaths

that they took upon joining the NYPD by having thereafter refused to perform their jobs as police officers in full compliance with that oath in regards to me on 11/27/19.

> **Mayor:** I do hereby pledge – I'm sorry, I should say repeat after me – I do hereby pledge and declare –
>
> **Recruits:** I do hereby pledge and declare –
>
> **Mayor:** – to uphold the Constitution of the United States –
>
> **Recruits:** – to uphold the Constitution of the United States –
>
> **Mayor:** – and the Constitution of the State of New York –
>
> **Recruits:** – and the Constitution of the State of New York –
>
> **Mayor:** – and faithfully discharge my duties –
>
> **Recruits:** – and faithfully discharge my duties –
>
> **Mayor:** – as a New York City Police Officer –
>
> **Recruits:** – as a New York City Police Officer –
>
> **Mayor:** – to the best of my ability –
>
> **Recruits:** – to the best of my ability –
>
> **Mayor:** – so help me God.
>
> **Recruits:** – so help me God.

21.     In a similar vein, other personnel of the City of New York are required upon working for the City of New York by New York State Civil Service Law §62 to take and file an oath or affirmation in which they pledge and declare that they will support the U.S. and New York State Constitution and faithfully discharge the duties of their jobs with the City of New York to the best of their abilities. The terms of New York State Civil Service Law §62 are shown on the New York State Senate's web site at https://www.nysenate.gov/legislation/laws/CVS/62. The following are two relevant excerpts from that law:

    a.     "Every person employed by the state or any of its civil divisions, except an employee in the labor class, before he shall be entitled to enter upon the discharge of any of his duties, shall take and file an oath or affirmation in the form and

language prescribed by the constitution for executive, legislative and judicial officers, which may be administered by any officer authorized to take the acknowledgment of the execution of a deed of real property, or by an officer in whose office the oath is required to be filed. In lieu of such oath administered by an officer, an employee may comply with the requirements of this section by subscribing and filing the following statement: **"I do hereby pledge and declare that I will support the constitution of the United States, and the constitution of the state of New York, and that I will faithfully discharge the duties of the position of ............, according to the best of my ability. "** Such oath or statement shall be required only upon original appointment or upon a new appointment following an interruption of continuous service, and shall not be required upon promotion, demotion, transfer, or other change of title during the continued service of the employee, or upon the reinstatement pursuant to law or rules of an employee whose services have been terminated and whose last executed oath or statement is on file."

(boldface formatting added for emphasis)

b.      "The refusal or wilful failure of such employee to take and file such oath or subscribe and file such statement shall terminate his employment until such oath shall be taken and filed or statement subscribed and filed as herein provided."

22.     On a closely related note, the following shows the terms of New York City Charter Section 435(a) that address the legal duties that all members of the NYPD have and underscores the fact that the defendants in this action who were members of the NYPD on 11/27/17 committed illegal acts and omissions in regards to my efforts to access City Hall's building to attend and testify in the Mayor's 11/27/17 public hearing and attend an event that the Mayor conducted in the atrium area in City Hall on that date that Defendant Dietrich didn't let me attend in violation of my First Amendment and Fourteenth Amendment rights of assembly and equal protection in a public forum:

"**The police department and force shall have the power and it shall be their duty to preserve the public peace, prevent crime, detect and arrest offenders, suppress riots, mobs and insurrections, disperse unlawful or dangerous assemblages and assemblages which obstruct the free passage of public** streets, **sidewalks**, parks and places; **protect the rights of persons** and property, **guard the public health**, **preserve order at** elections and **all public meetings and assemblages**; subject to the provisions of law and the rules and regulations of the commissioner of traffic,* regulate, direct, control and restrict the movement of vehicular and pedestrian traffic for the facilitation of traffic

and the convenience of the public as well as the proper protection of human life and health; **remove all nuisances in the public** streets, parks and **places**; arrest all street mendicants and beggars; provide proper police attendance at fires; inspect and observe all places of public amusement, all places of business having excise or other licenses to carry on any business; **enforce and prevent the violation of all laws and ordinances in force in the city**; and for these purposes **to arrest all persons guilty of violating any law or ordinance for the suppression or punishment of crimes or offenses**.

(boldface formatting added for emphasis)

23.     By committing the illegal acts and omissions against me that my claims in this action concern, the defendants who did so and were then personnel of the City of New York violated New York City Charter §1116 that requires them to be promptly fired and prohibited from working for the City of New York again.

24.     At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the NYPD and City of New York. They were acting for and on behalf of the NYPD and Mayor at all times relevant herein. While doing so, the defendants in this action who are and/or were members of the NYPD did so with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

25.     The individual defendants' acts hereafter complained of were carried out intentionally, recklessly, and oppressively with malice and egregious, callous, and wanton disregard of plaintiff's rights.

26.     At all relevant times, the individual defendants were engaged in joint ventures, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

## LEGAL STANDARDS

1.    I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.    The excerpt that appears next that is from _Doe v. City of New York_, No. 18-cv-670 (ARR)(JO) (E.D.N.Y. Jan. 9, 2020) confirms that I had a First Amendment right to criticize every government official that I encountered and otherwise would have encountered on 11/27/17 while I was on City Hall's grounds. That includes the Mayor. This excerpt also confirms my First Amendment right to criticize with them also entitled me to not be retaliated against for doing so.

> ""[t]he right to criticize public officials is at the heart of the First Amendment's right of free speech." _Kaluczky v. City of White Plains,_ 57 F.3d 202, 210 (2d Cir. 1995) (citing _N.Y. Times Co. v. Sullivan,_ 376 U.S. 254, 282 (1964)). Indeed, the "right to criticize the police without reprisal" is "clearly" an "interest protected by the First Amendment," _Kerman v. City of New York,_ 261 F.3d 229, 241-42 (2d Cir. 2001), as "[t]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers[,]" _id._ at 242 (quoting _City of Houston v. Hill,_ 482 U.S. 451, 461 (1987)). Thus, on summary judgment, the Second Circuit has held that a plaintiff established a First Amendment retaliation claim when he proffered facts showing that police officers retaliated against him for making derogatory comments to the officers and for threatening to sue them. _Kerman,_ 261 F.3d at 241-42.[3]""

3.    _Elrod v Burns,_ 427 US 347 (1976) includes the following finding about First Amendment rights that include the right to lawfully assemble in a public forum that includes a public resource fair meeting:

> "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."

4.    _Hansen v. Harris_, 619 F.2d 942 (2d Cir. 1980) includes the following relevant findings about estoppel:

> "The Government may sometimes be estopped from enforcing its rules, based on the conduct of its agents."

5.    _Barboza v. D'Agata,_ 151 F. Supp. 3d 363 (S.D.N.Y. 2015) includes the following

relevant findings that confirms that people are permitted to use crude and offensive speech in the

context of complaining about government activity:

> "The Court of Appeals found this was in the scope of protected speech because
> defendant's messages were crude and offensive but made in the context of complaining
> about government action on a telephone answering machine set up for the purpose,
> among others, of receiving complaints from the public. Mangano 571. That decision is on
> all fours with this case. It dealt with offensive language used to express to government
> employees dissatisfaction with government action"

6.    The underlined excerpt from _Hopper v. City of Pasco_, 241 F.3d 1067 (9th Cir. 2001)

addresses standardless discretion at public forums:

> "Courts have also been reluctant to accept policies based on subjective or overly general
> criteria. "`[S]tandards for inclusion and exclusion' in a limited public forum `must be
> unambiguous and definite' if the `concept of a designated public forum is to retain any
> vitality whatever.'" _Christ's Bride,_ 148 F.3d at 251 (quoting _Gregoire v. Centennial Sch.
> Distr.,_ 907 F.2d 1366, 1375 (3d Cir.1990)). Absent objective standards, government
> officials may use their discretion to interpret the policy as a pretext for censorship.
> _See Board of Educ. v. Mergens,_ 496 U.S. 226, 244-45, 110 S.Ct. 2356, 110 L.Ed.2d 191
> (1990) (generalized definition of permissible content poses risk of arbitrary application);
> _Putnam Pit, Inc. v. City of Cookeville,_ 221 F.3d 834, 845-46 (6th Cir.2000) ("broad
> discretion [given] to city officials [raises] possibility of discriminatory application of the
> policy based on viewpoint"); _Cinevision Corp. v. City of Burbank,_ 745 F.2d at 560 (9th
> Cir.1984) (vague standard has "potential for abuse"); _Gregoire,_ 907 F.2d at 1374-75
> ("virtually unlimited discretion" granted to city officials raises danger of arbitrary
> application); _see also City of Lakewood v. Plain Dealer Publ. Co.,_ 486 U.S. 750, 758-59,
> 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) (absence of express standards in licensing
> context raises dual threat of biased administration of policy and self-censorship by
> licensees). Therefore, "the more subjective the standard used, the more likely that the
> category will not meet the requirements of the first amendment." _Cinevision,_ 745 F.2d at
> 575; _see also Christ's Bride,_ 148 F.3d at 251 (suppression of speech under defective
> standard requires closer scrutiny)."

7.    The long excerpt shown next from _Hershey v. Kansas City Kansas Community College,_

No. 2: 16-cv-2251-JTM (D. Kan. Feb. 17, 2017) addresses both standardless discretion and

municipal liability really well. What is particularly noteworthy about its findings is that it

indicates that instance in which people are denied access to a public forum due to standardless

discretion of government officials, a plaintiff doesn't need to show that he was discriminated

against based on the content of his First Amendment expression.

As plaintiff points out, he has alleged that he was denied access to a public forum "for unstated reasons, in accordance with no policy, and at the absolute discretion of College officials." Dkt. 1, ¶ 50. He alleges that the College "has no policy to specify any standards by which College officials approve or deny requests," and that the College "vests absolute, standardless discretion in College officials" to allow or deny requests to use facilities for expressive activities. *Id.* ¶¶ 41, 42. Additionally, he alleges that the Board of Trustees and defendants Long and Wynn were acting as policymakers for the College at all relevant times. Finally, plaintiff has spelled out how a municipal policy or custom — in this instance, the *absence* of any standards governing exercise of discretion on requests to use College facilities — caused the deprivation of First Amendment rights alleged in the complaint.

Because plaintiff has alleged that access to the public forum is based on "standardless discretion" of College officials, he need not show that he was discriminated against based on the content of his materials. "A government regulation that allows arbitrary application is `inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view.'" *Forsyth Cty., Ga. v. Nationalist Movement,* 505 U.S. 123, 130 (1992) (cite omitted). Government regulation of access to a public forum must have definite standards because "if the permit scheme involves appraisal of facts, the exercise of judgment, and the formation of an opinion by the licensing authority, the danger of censorship and of abridgment of ... First Amendment freedoms is too great to be permitted." *Id.* at 131 (internal quotation marks and citations omitted); *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.,* 452 U.S. 640, 649 (1981) (awarding space on a first-come, first-served basis "is not open to the kind of arbitrary application that this Court has condemned as inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view.")

Plaintiff has also adequately alleged the existence of a municipal policy or custom giving rise to liability under 42 U.S.C. § 1983. A municipal policy may be shown by an informal custom amounting to a widespread practice that is so permanent and well settled as to constitute a custom or usage. *See Bryson v. City of Okla. City,* 627 F.3d 784, 788 (10th Cir. 2010). To withstand a motion to dismiss on such a theory, a plaintiff must allege: 1) the existence of a continuing, persistent and widespread practice of unconstitutional misconduct by the municipality's employees; 2) deliberate indifference to or tacit approval of such misconduct by the municipality's policymaking officials after notice to the officials of that particular misconduct; and 3) that the plaintiff was injured by virtue of the unconstitutional acts pursuant to the custom, with the custom being the "moving force" behind the acts. *Gates v. Unif. Sch. Dist. No. 449,* 996 F.2d 1035, 1041 (10th Cir. 1993). Viewed in the light most favorable to plaintiff, the complaint alleges the existence of a persistent custom of vesting absolute discretion in College officials to grant or deny

access to the public forum, knowledge of and tacit approval of the impermissible practice by College policymakers, and injury to plaintiff caused by the custom. Defendants' motion to dismiss the claim against the College is therefore denied.

8.   *Regional Economic Community v. City of Middletown*, 294 F.3d 35 (2d Cir. 2002)

includes the following finding that concerns proving discriminatory intent:

> "Discriminatory intent may be inferred from the totality of the circumstances, including ... the historical background of the decision ...; the specific sequence of events leading up to the challenged decision ...; [and] contemporary statements by members of the decisionmaking body"

9.   *Hammock v. Pierce*, No. 15-CV-09052 (NSR) (S.D.N.Y. May 7, 2018) contains the

following findings that addresses proving a retaliatory motive and is from a case that involved

seizure of personal property:

> "retaliatory motive may be inferred from a number of circumstantial factors, including, *inter alia, "(i)* the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter, and (iv) statements by the defendant concerning his motivation." *Burton v. Lynch,* 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009"

10.   According to *Jovanovic v. City of New York*, 04 Civ. 8437 (PAC) (S.D.N.Y. Aug. 17,

2006), "malice may be inferred from the lack of probable cause."

11.   In *Knight First Amendment Inst. Columbia v. Trump*, 928 F.3d 226 (2d Cir. 2019), the

Second Circuit confirmed that government personnel may not bar people from public forums by

engaging in viewpoint discrimination.

12.   In *Matal v. Tam*, 137 S. Ct. 1744, 582 U.S., 198 L. Ed. 2d 366 (2017), the U.S. Supreme

Court issued the following critically relevant findings:

> "Giving offense is a viewpoint. The "public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers."

13.   The following is a pertinent excerpt from *Frain v. Baron*, 307 F. Supp. 27 (E.D.N.Y.

1969):

"Fear of disorder, which the City cites to justify its policy, has been ruled out as a ground for limiting peaceful exercise of First Amendment rights. <u>Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963)</u>."

14.    The following is a relevant excerpt from <u>*Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899 (8th Cir. 2012)</u> that concerns having a court issue an order that restrains acts that may otherwise be lawful due to a propensity and proclivity to commit unlawful conduct:

"a district court has authority to issue a broad injunction in cases where "a proclivity for unlawful conduct has been shown." *See <u>McComb v. Jacksonville Paper Co., 336 U.S. 187, 192, 69 S.Ct. 497, 93 L.Ed. 599 (1949)</u>. The district court is even permitted to "enjoin certain otherwise lawful conduct" where "the defendant's conduct has demonstrated that prohibiting only unlawful conduct would not effectively protect the plaintiff's rights against future encroachment." <u>Russian Media Grp., LLC v. Cable America, Inc., 598 F.3d 302, 307 (7th Cir.2010)</u>* (citing authorities). If a party has violated the governing statute, then a court may in appropriate circumstances enjoin conduct that allowed the prohibited actions to occur, even if that conduct "standing alone, would have been unassailable." <u>*EEOC v. Wilson Metal Casket Co.,* 24 F.3d 836, 842 (6th Cir.1994)</u> (internal quotation omitted)."

## BACKGROUND AND RETROSPECTIVE FACTS

1.    I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.    On 9/8/17, the Mayor's office issued a press release on the Internet at

<u>https://www1.nyc.gov/office-of-the-mayor/news/581-17/mayor-de-blasio-signs-12-bills-strengthening-justice-equity-new-york-city</u> that concerned the Mayor's 9/8/17 public hearing that Defendant Cruz illegally prevented me from being able to attend and testify in. The following is a relevant excerpt from that press release:

"Diversity and inclusion are the foundation of our City," said Department of Social Services Commissioner Steven Banks. "We applaud this Administration's commitment to these core values and for making a concerted effort to ensure that all New Yorkers, regardless of race, gender, and sexual orientation have equal access to services and resources".

3.    Mr. Banks unsurprisingly lied about a material fact as he made the preceding remarks. He

also lied during conversations that I had with him both before and after he made the preceding remarks. Contrary to his deceit, illegal discrimination and segregation, fraud and deceit, violations of civil rights, and intolerance for viewpoints that conflict with the Mayor's administration and the NYPD are what Defendant City of New York is about. Moreover, the Mayor's administration's commitment is really to its lobbyists in place of values as it maintains its customs, policies, and practices of illegally denying New Yorkers equal access to services and resources.

**Proclivities and propensities of the defendants in committing illegal acts and omissions against me at public forums that the Mayor conducted while feeding their addition to remaining part of a criminal mob instead of being law-enforcement personnel**

4.      To begin this subsection, I'll discuss illegal acts and omissions by defendants in this action against me that were indicative of proclivities and propensities that they had to be part of criminal conspiracies against me and to otherwise act alone to violate my constitutional rights in relation to attending public forums that the Mayor conducted prior to 11/27/17. The table shown next identifies public forums since 4/27/17 that the Mayor and others conducted at which the defendants that my 11/27/17 claims concern committed very similar illegal acts and omissions against me prior to 11/27/17 as they appeared to feed an addiction to being criminals instead of actual law-enforcement personnel by doing so. Among other things, such illegal acts and omissions by them against me **a)** illegally prevented me from attending those public forums altogether, **b)** caused me to be illegally segregated from the room in which town hall meetings were conducted by being restricted to attending them from overflow rooms, **c)** prevented me from attending press conferences that were open to the public to attend, and **d)** caused me to be

criminally assaulted, stalked, and harassed by them and others on a public sidewalk that was adjacent to a building that hosted a public town hall meeting that the Mayor conducted on the date it was conducted.

| # | Defendant | Summary of some of the illegal acts & omissions |
|---|-----------|-------------------------------------------------|
| 1 | Cruz | • Illegal exclusion from public town hall meetings that the Mayor conducted:<br><br>   7/12/17, 9/14/17<br><br>• Illegal failure to intervene to uphold my constitutional rights at public forums that the Mayor conducted as other members of the NYPD violated them:<br><br>   4/27/17, 7/12/17, 8/30/17, 9/14/17, 10/26/17 |
| 2 | Dietrich | • Illegal exclusion from public town hall meetings that the Mayor conducted:<br><br>   9/28/17<br><br>• Illegal failure to intervene to uphold my constitutional rights at public forums that the Mayor conducted as other members of the NYPD violated them:<br><br>   9/28/17 |
| 3 | Fowler | • Illegal exclusion from public town hall meetings that the Mayor conducted:<br><br>   8/30/17<br><br>• Illegal exclusion from a press conference that was open to the public:<br><br>   7/25/17 in a subway station located near City Hall that involved a press conference that the Mayor illegally conducted in violation of the MTA's rules about where and how such a press conference could be conducted.<br><br>• Illegal failure to intervene to uphold my constitutional rights at public forums that the Mayor conducted as other members of the NYPD violated them:<br><br>• 7/25/17 and 8/30/17 |
| 4 | Hansen | • Illegal exclusion from public town hall meetings that the Mayor |

| | | |
|---|---|---|
| | | conducted:<br><br>    10/4/17<br><br>• Illegal exclusion from a press conference that was open to the public:<br><br>    10/3/17 at City Hall that involved a press conference that was conducted by people who pushed for reforming the NYPD.<br><br>• Illegal failure to intervene to uphold my constitutional rights at public forums that the Mayor conducted as other members of the NYPD violated them:<br><br>    8/30/17, 10/4/17 |
| 5 | NYPD John Doe1<br>11/27/17 | • Illegal failure to intervene to uphold my constitutional rights at a press conference that was open to the public that the Mayor illegally conducted as other members of the NYPD violated my rights:<br><br>    7/25/17 in a subway station located near City Hall that involved a press conference that the Mayor illegally conducted in violation of the MTA's rules about where and how such a press conference could be conducted. |
| 6 | NYPD John Doe1<br>11/27/17 | • Illegal failure to intervene to uphold my constitutional rights at a press conference that was open to the public that the Mayor illegally conducted as other members of the NYPD violated my rights:<br><br>    7/25/17 in a subway station located near City Hall that involved a press conference that the Mayor illegally conducted in violation of the MTA's rules about where and how such a press conference could be conducted. |
| 7 | Nieves | • Illegal exclusion from public town hall meetings, resource fair meetings, and public hearings that the Mayor conducted:<br><br>    5/23/17, 7/12/17, 8/30/17, 9/14/17, 9/26/17, 10/25/17, 11/2/17<br><br>• Illegal failure to intervene to uphold my constitutional rights at public forums that the Mayor conducted as other members of the NYPD violated them:<br><br>    4/27/17, 5/23/17, 7/12/17, 8/30/17, 9/8/17, 9/14/17, 9/26/17, 10/4/17, 10/25/17, 11/2/17<br><br>• Illegal stalking, harassment, seizure, assault, detention, and/or |

| | | |
|---|---|---|
| | | restraint on and retaliation for First Amendment activities at a public forums that the Mayor conducted: |
| | | 4/27/17, 5/23/17, 8/30/17, 9/14/17, 9/26/17, 10/25/17, 11/2/17 |
| | | • Illegal harassment, First Amendment retaliation, and ejection from a town hall that the Mayor conducted: |
| | | 8/30/17 |
| 8 | Redmond | • Illegal exclusion from public town hall meetings, resource fair meetings, and public press conferences that the Mayor conducted: |
| | | 4/27/17, 7/25/17, 8/30/17, 10/25/17, 10/26/17 |
| | | • Illegal stalking, harassment, seizure, assault, detention, and restraint on and retaliation for First Amendment activities at a public press conference that the Mayor conducted: |
| | | 7/25/17 |
| | | • Illegal harassment, First Amendment retaliation, and ejection from a town hall that the Mayor conducted: |
| | | 8/30/17 |
| | | • Illegal failure to intervene to uphold my constitutional rights at public forums that the Mayor conducted as other members of the NYPD violated them: |
| | | 5/23/17, 6/8/17, 7/12/17, 7/25/17, 9/14/17, 9/28/17, 10/25/17, 10/26/17 |

**<u>Indications of municipal liability and deliberate indifference for my claims in this action</u>**:

5.      I incorporate by reference the statements that I made in all of the preceding paragraphs as though fully set forth herein.

6.      In the interests of brevity and pursuant to FRCP Rule 10(c), I also incorporate all of the following by reference as though fully set forth herein:

      a.   The "Background Facts" and "Retrospective Facts" sections that appear in the complaints that I filed in K9 and K10 on 11/1/20. Those submissions corresponds to

docket number 2 in those cases and those complaints have a table of contents at the beginning of them.

b.  The "Background Facts" and "Legal Standards and Additional Background Facts" sections that appear in the First Amended Complaint that I filed in K4 on 10/5/20. That submission corresponds to docket number 4 in that case.

c.  The "Legal Standards and Background Facts" and "Statement of Facts" sections that appear in the complaint that I filed in K5 on 9/25/20. That submission corresponds to docket number 2 in that case. That complaint also has a table of contents at the beginning of it.

d.  The "Background Facts" and "Legal Standards and Additional Background Facts" sections that appear in the complaint that I filed in K6 on 10/5/20. That submission corresponds to docket number 2 in that case. That complaint also has a table of contents at the beginning of it.

e.  The "Background Facts" section that appears in the First Amended Complaint that I submitted in K7 on 10/18/20 that corresponds to docket number 3 in that case. That section begins on page 54 in that submission.

f.  The "Background Facts" section that appears in the complaint that I submitted in K8 on 10/25/20 that corresponds to docket number 2 in that case. That section begins on page 27 in that submission.

## STATEMENT OF FACTS

7.  I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set

forth herein.

8.      Through this section, I will present a discussion of what appears in pertinent video

recordings and photographs that I recorded and otherwise took with my cell phone and laptop **a)**

on 11/27/17 by the Broadway entrance to City Hall and inside of City Hall's building and **b)** on

11/30/17 while attending the public town hall meeting that the Mayor conducted then.

9.      11/27/17 aerial video1 shows me arriving to the NYPD guardhouse that is located just

inside of the Broadway entrance to City Hall at roughly 11:34:50 am on 11/27/17. In response to

my arrival there, Defendant Cruz is then seen opening the door to that guardhouse that he was

then inside of as he stuck his head out and briefly talked with me. The next screenshot is from

the elapsed time of 9 minutes and 56 seconds in that video as Mr. Cruz had that guardhouse door

open and talked with me as I arrived there.



10.     I immediately told him that I sought to proceed past that area to attend the Mayor's

11/27/17 public hearing inside of City Hall. The next screenshot is from the elapsed time of 10

minutes and 8 seconds in that video as I held a paper in my right hand that I showed to Mr. Cruz

that was a printed copy of the public notice that was issued for the Mayor's 11/27/17 public

hearing. I also then had a cup of coffee with me that I periodically drank.



11.     The next screenshot is from the elapsed time of 10 minutes and 51 seconds in that video and shows Defendant Redmond as he demonstrated what is known as a NYPD "Perp Walk" as he and NYPD Officer Paul Briscoe approached where I then was while they walked next to one another. Defendant Redmond appears to the right of Mr. Briscoe in the lower-right corner of this screenshot.



12.     The next screenshot is from the elapsed time of 10 minutes and 58 seconds in that video

and shows Mr. Briscoe as he reached in front of me towards Mr. Cruz with his right hand to

shake his hand. Mr. Redmond appears in front of Mr. Briscoe.



13.     Given the fact that Mr. Cruz previously and illegally prevented me from attending the

Mayor's 9/8/17 public hearing, I justifiably expected that there was a very strong likelihood that he would similarly try to illegally prevent me from attending the Mayor's 11/27/17 public hearing upon meeting him on 11/27/17. He proved by his recidivism against me on 11/27/17 that I was totally right about that. The next screenshot is from the elapsed time of 13 minutes and 47 seconds in that video and shows New York City Councilman Chaim Deutsch on the far left as I told him that Mr. Cruz was not allowing me to proceed past that guardhouse to attend the Mayor's 11/27/17 public hearing. I didn't know then that Mr. Deutsch was then what I regard as a total suck-up for the NYPD's mob. I sought to have Mr. Deutsch then immediately intervene on my behalf in his capacity as a lawmaker to enable me to attend the Mayor's 11/27/17 public hearing. Although he talked with me then and looked at the printed copy of the public notice that I had with me then of the Mayor's 11/27/17 public hearing, he inexcusably showed disrespect to military veterans and subservience to the NYPD's mob by not doing anything to try to intervene on my behalf to enable me to attend the Mayor's 11/27/17 public hearing. Mr. Deutsch was also the moderator of the Mayor's 9/14/17 town hall meeting in Brooklyn that Mr. Cruz illegally didn't allow me to attend from within the room in which it was conducted as it was conducted while I was in the school that hosted that town hall on 9/14/17.



14.     The next screenshot is from the elapsed time of 14 minutes in that video and shows Mr. Deutsch and I as I held up a printout that concerned the Mayor's 11/27/17 public hearing to show to Mr. Deutsch to try to persuade him to intervene on my behalf to enable me to attend that public forum. However, he proved to be a traitor to fundamental civil rights by not intervening on my behalf on 11/27/17 to try to enable me to attend that public forum.



15.     The next screenshot is from the elapsed time of 14 minutes and 16 seconds in that video and shows New York City Councilman Jimmy Van Bramer as he walked in my direction to reach the Broadway exit of City Hall as I told him that I was being illegally prevented from accessing City Hall's building to attend a public meeting to try to get him to immediately intervene on my behalf in his capacity as a lawmaker. However, he made no effort to do so. Mr. Van Bramer has white hair and then wore a dark coat while he stood near the center in this screenshot. Mr. Deutsch also appears in this screenshot and Mr. Cruz was then poking his head out of that guardhouse. Prior to that date, Mr. Van Bramer was the moderator of the Mayor's 4/27/17 town hall meeting that Defendant Redmond and members of the Mayor's CAU illegally prevented me from attending.



16.     The next screenshot is from the elapsed time of 14 minutes and 16 seconds in that video and shows Mr. Van Bramer as he walked past me to the Broadway exit of City Hall while I looked at him and was making remarks to him about the fact that I was being illegally prevented from attending the Mayor's 11/27/17 public hearing. Mr. Deutsch also appears in this screenshot as Mr. Cruz poked his head out of the NYPD guardhouse.



17.     The next screenshot is from the elapsed time of 14 minutes and 21 seconds in that video and shows Mr. Van Bramer as he just exited City Hall's grounds and looked backwards toward

me while I looked at him as he gestured to me with his left hand and made a remark to me in which he stated in sum and substance that it was bad that I was being prevented from being able to access City Hall's building.



18.      The next screenshot is from the elapsed time of 14 minutes and 42 seconds in that video and shows me as I began to record a video recording with my cell phone as I still stood next to that guardhouse and continued to conduct myself in an entirely lawful manner. Mr. Cruz continued to then be inside of that guardhouse.



19.     The video recording that I then began to record is just 23 seconds in length and was the video recording that has the filename of "IMG_3222.MOV". That video confirms that I recorded printed copies of the public notice that was issued for the Mayor's 11/27/17 public hearing and provisions of New York State's Open Meetings Law as well as City Hall as I still stood next to that guardhouse. At that time, the City Council was conducting a public hearing in the main chamber in City Hall. That meant that Defendant Cruz was also then illegally preventing me from attending that public forum that I had a First Amendment right to attend while waiting for the Mayor's 11/27/17 public hearing to begin at noon in City Hall and likely even later due to the Mayor's well-chronicled and inexcusable addiction to avoiding punctuality for meetings that he conducted as nothing more than a public servant and a loathsome one at that who had been condoning illegal acts and omissions since 7/18/17 that were committed since 4/27/17 against me by Defendant Redmond at public forums that he conducted.

20.     The next screenshot is from the elapsed time of 15 minutes and 17 seconds in 11/27/17 aerial video1. Mr. Deutsch and I are shown in it as we stood next to that NYPD guardhouse as he looked at a printed copy of the public notice that was issued for the Mayor's 11/27/17 public hearing. Mr. Deutsch appears in the lower-left corner in this screenshot. As I waited by that guardhouse, Mr. Cruz never gave me a valid explanation for why he wouldn't let me lawfully walk past that area to reach City Hall's building.



21.     The next screenshot is from the elapsed time of 17 minutes and 20 seconds in that video as a female member of the public who I had never met and first name is Dona arrived to where I then continued to stand next to that guardhouse. She then sought to also lawfully walk past that area to reach City Hall's building, but Mr. Cruz illegally refused to let her do so.



22.     The next screenshot is from the elapsed time of 18 minutes and 41 seconds in that video

as that woman and I both talked with Mr. Cruz about the fact that we sought to walk past that

area to reach City Hall's building as I then showed Mr. Cruz a printed copy of the public notice

for the Mayor's 11/27/17 public hearing. However, Mr. Cruz continued to criminally prevent us

from walking past that area to City Hall's building in violation of NYPL §240.20, NYPL

§240.26, NYPL §215.10, NYPL §240.65, NYPL §175.25, NYPL §195.00, New York City

Charter §1116, 18 U.S.C. §245(b)(5), 18 U.S.C. §241, 42 U.S.C. §1983, 42 U.S.C. §1985, 42

U.S.C. §1986, and New York State's Open Meetings Law as well as our rights pursuant to the

First Amendment, Fourth Amendment, and Fourteenth Amendment. As I showed Mr. Cruz a

printout of the public notice for the Mayor's 11/27/17 public hearing that clearly established the

fact that I had a First Amendment and Fourteenth Amendment right to attend that hearing, he

was totally dismissive of it. By doing so, he flagrantly violated New York State General

Business Law§349 by engaging in deceptive acts towards me as he suggested that printed notice

was inconsequential about whether I then had a First Amendment right to attend the Mayor's

11/27/17 public hearing. While being dismissive about that, Mr. Cruz used a variety of hand gestures to express body language in furtherance of his fraudulent remarks about that matter.



23.     The next screenshot is from the elapsed time of 1 second in the video that has the filename of "IMG_3223.MOV" that I recorded with my cell phone as I still stood next to that guardhouse. Mr. Cruz is clearly shown in it as he exhibited an irritated facial expression right after I just asked him what his name was. As that video recording begins, it shows a printout of the public notice for the Mayor's 11/27/17 public hearing that I was holding.  In response to my question about his name, Mr. Cruz told me in an irritated manner that I already knew his name as he implicitly confirmed that he and I previously met by that remark.



24.     The next screenshot is from the elapsed time of 19 minutes and 36 seconds in 11/27/17

aerial video1. Mr. Deutsch, Dona, and I are shown in it as we stood next to that NYPD

guardhouse after Mr. Deutsch returned to where we were only because he was then walking

towards the Broadway exit to City Hall.



25.     The next screenshot is from the elapsed time of 19 minutes and 40 seconds in 11/27/17

aerial video1. . Dona, and I are shown in it as we stood next to that NYPD guardhouse after Mr.

Deutsch returned to where we were only because he was then walking towards the Broadway

exit to City Hall. This screenshot supports my view that Mr. Deutsch is useless and betrays his

status as the chairman of the City Council's Committee on Veterans because he opted to betray

the needs of a Navy veteran (me) at City Hall's Broadway while Mr. Deutsch could have had a

brief conversation with Mr. Cruz to demand and immediate and entirely valid explanation for

why he was preventing me from attending the Mayor's 11/27/17 public hearing. Instead, Mr.

Deutsch chose to walk away from leadership, ethics, and integrity then by literally walking away

from Dona and I while doing nothing to try to help either of us to be able to exercise our First

Amendment right to walk past that guardhouse to City Hall's building.



26.     The next screenshot is from the elapsed time of 19 minutes and 47 seconds in that video.

Dona, myself, and Mr. Deutsch appear from left to right in it as I clearly exhibited body language

to Mr. Deutsch to express my total disappointment in him for choosing to walk away from Dona

and I instead of helping us to be able to exercise our constitutional rights to access City Hall's

building then and public hearings that were taking place in it or were about to be conducted in it.



27.     The next screenshot is from the elapsed time of 20 minutes and 5 seconds in that video. NYPD Jane Doe2 11/27/17, Dona, and I appear from left to right in it as we talked about the fact that I was being illegally prevented from accessing City Hall's building then as she was walking toward the exit of City Hall by Broadway. Although I made it perfectly clear to her during my interactions with her then that I sought for her to intervene on my behalf to enable me to immediately access City Hall's building, she made no attempt to intervene on my behalf.



28.    The next screenshot is from the elapsed time of 22 minutes and 51 seconds in that video. Defendant Cruz is shown in it as he used a hand signal to illegally direct me to move away from where I then lawfully stood in accordance with my First Amendment rights while he was equitably estopped from being able to direct me to me away from where I stood in the direction that he sought on account of the fact that he was illegally preventing me from walking past that area to reach City Hall's building.



29.     The next screenshot is from the elapsed time of 22 minutes and 54 seconds in that video. Defendant Cruz is shown in it as he continued to use a hand signal to illegally direct me to move away from where I then lawfully stood as I held a printout of both the public notice for the Mayor's 11/27/17 public hearing and provisions of New York State's Open Meetings Law in my left hand.



30.     The next screenshot is from the elapsed time of 22 minutes and 57 seconds in that video. Defendant Cruz is shown in it as he continued to used his right hand to illegally direct me to move away from where I then lawfully stood to an area that was closer to the Broadway exit for City Hall as he clearly then had an opportunity to read the public notice for the Mayor's 11/27/17 public hearing and provisions of New York State's Open Meetings Law that I held in my left hand by virtue of where his head then was relative to those printouts. In fact, Mr. Cruz was then making a series of hand gestures and remarks to both Dona and I to move away from where we lawfully stood. The gates of City Hall conceal her from view in this screenshot.



31.     The next screenshot is from the elapsed time of 23 minutes and 52 seconds in that video. Defendant Cruz and I are shown in it in the upper-left corner as he continued to use his right hand to illegally direct me to move away from where I then lawfully stood. By doing so, he continued to flagrantly violate NYPL §240.20, NYPL §240.26, NYPL §215.10, NYPL §240.65, NYPL §175.25, NYPL §195.00, New York City Charter §1116, 18 U.S.C. §245(b)(5), 18 U.S.C. §241, 42 U.S.C. §1983, 42 U.S.C. §1985, 42 U.S.C. §1986, and New York State's Open Meetings Law as well as my rights pursuant to the First Amendment, Fourth Amendment, and Fourteenth Amendment. Dona is shown in this screenshot in an area located just outside of the entrance to City Hall by Broadway as she walked away. The current time then was roughly 11:48:48 am.



32.     The next screenshot is from the elapsed time of 23 minutes and 52 seconds in that video. Defendant Cruz and I are shown in it in the upper-left corner as he continued to use his right hand to illegally direct me to move away from where I then lawfully stood. By doing so, he continued to flagrantly violate NYPL §240.20, NYPL §240.26, NYPL §215.10, NYPL §240.65, NYPL §175.25, NYPL §195.00, New York City Charter §1116, 18 U.S.C. §245(b)(5), 18 U.S.C. §241, 42 U.S.C. §1983, 42 U.S.C. §1985, 42 U.S.C. §1986, and New York State's Open Meetings Law as well as my rights pursuant to the First Amendment, Fourth Amendment, and Fourteenth Amendment. Dona is shown in this screenshot in an area located just outside of the entrance to City Hall by Broadway as she walked away. The current time then was roughly 11:48:48 am.

33.     The next screenshot is from the elapsed time of 23 minutes and 56 seconds in that video. I'm shown in that video as I yet again showed Defendant Cruz either the printout of the public notice for the Mayor's 11/27/17 public hearing or provisions of New York State's Open Meetings Law that I had with me while he continued to illegally direct me to move away from where I lawfully stood and used his right hand for that purpose.



34.     The next screenshot is from the elapsed time of 24 minutes and 6 seconds in that video. I'm shown in that video as I gestured with my left hand and arm to express that I had a First Amendment right to remain exactly where I stood at the same time that Defendant Cruz used his left hand to illegally direct me to move from where I then lawfully stood. It extremely irritated me then that instead of being able to exercise my constitutional right to access City Hall's building, I had to continue to be near Defendant Cruz's vile company. I certainly regarded Mr. Cruz on 11/27/17 as being total trash on account of the fact that he **a)** was then committing illegal acts against me and b) previously committed illegal acts and omissions against me on 9/14/17 and 9/8/17 in relation to my efforts to lawfully attend public forums that the Mayor conducted on those dates.



35.     The next screenshot is from the elapsed time of 25 minutes and 10 seconds in that video. I'm shown as I still stood precisely where I stood next to that guardhouse in the preceding screenshot. I had just finished wearing Mr. Cruz down before he finally took his trashy self away from me to go back inside of that guardhouse as he closed its door behind him to demonstrate social distancing to keep me away from NYPD trash while I took another sip of coffee.



36.     The next screenshot is from the elapsed time of 25 minutes and 58 seconds in that video. New York City Councilwoman Vanessa Gibson and I are shown from left to right as we stood near that guardhouse as I told her that I was being illegally prevented from accessing City Hall's building to attend the Mayor's 11/27/17 public hearing. I was then also showing her printouts of

the public notice that was issued for that hearing and provisions of New York State's Open Meetings Law. Although she briefly looked at those printouts, she proved that she is useless by not doing anything to try to intervene on my behalf to uphold my constitutional rights to access City Hall's building. Back then, she was the chairwoman of the City Council's Committee on Public Safety that is responsible with others in providing proper oversight for how the NYPD's mob operates. I thereafter learned that Ms. Gibson is what I regard as a suck-up to the NYPD's mob. The current time then was roughly 11:50:54 am.



37.    The next screenshot is from the elapsed time of 26 minutes and 51 seconds in that video. New York City Councilman Daniel Dromm and I are shown from left to right as we stood near that guardhouse as I told him that I was being illegally prevented from accessing City Hall's building to attend the Mayor's 11/27/17 public hearing. Upon information and belief, he was then the chairman of the City Council's Committee on Civil Rights. He proved to be useless on

11/27/17 as far as I was concerned by not doing anything to try to intervene on my behalf to uphold my constitutional rights to access City Hall's building. He instead quickly walked away. The current time then was roughly 11:51:47 am.



38.     The next screenshot is from a magnified version of the photograph that I took with my cell phone at 11:53 am on 11/27/17 of Defendant Cruz through a windows that was part of the NYPD guardhouse that I still stood next to. He was then fully inside of that guardhouse. That photograph appears to show that he was then engaged in a telephone call while he then held a telephone near his left ear with his left hand.



39.     The next screenshot is from the elapsed time of 29 minutes and 31 seconds in that video. Dan Garodnick and I are shown from left to right as he appeared on the far-left in that screenshot while wearing a blue suit as we stood near that guardhouse. New York City Councilwoman Helen Rosenthal also appears in this screenshot. I told Mr. Garodnick then that I was being illegally prevented from accessing City Hall's building to attend the Mayor's 11/27/17 public hearing. Mr. Garodnick was then a New York City Councilman and the chairman of the City Council's Committee on Government Operations. He was also the moderator of the Mayor's 9/26/17 public town hall meeting that I was illegally prevented from attending by NYPD Detective Raymond Gerola of the Mayor's NYPD security detail and others. Although Mr. Garodnick made brief remarks to me on 11/27/17 as I stood next to that guardhouse to try to be

helpful, he wasn't and didn't bother to try to have Mr. Cruz provide him then and there with an

objectively credible and detailed explanation about why I was being prevented from exercising

my constitutional rights to access City Hall's building to attend the Mayor's 11/27/17 public

hearing and testify in it. The current time then was roughly 11:54:27 am.



40.     The next screenshot is from the elapsed time of 29 minutes and 38 seconds in that video.

I'm shown in it with Mr. Garodnick as I showed him either a printout of the public notice for the

Mayor's 11/27/17 public hearing or provisions of New York State's Open Meetings Law to

further establish that I had a clear legal right to attend that public hearing. The current time then

was roughly 11:54:34 am.



41.     The next screenshot is from the elapsed time of 29 minutes and 50 seconds in that video.

NYPD John Doe2 11/27/17, Mr. Garodnick, and I are shown in it from left to right as I

continued to stand next to that guardhouse. The current time then was roughly 11:54:46 am.



42.     The next screenshot is from the elapsed time of 30 minutes and 6 seconds in that video. NYPD John Doe2 11/27/17, Mr. Garodnick, and I are shown in it as I faced NYPD John Doe2 11/27/17, who is concealed in this screenshot by the gates at City Hall's Broadway entrance. I was talking with him then about the fact that I was being illegally prevented from accessing City Hall's building. However, he made no attempt to intervene on my behalf to access City Hall's building. This screenshot seems to indicate that a video security camera was then installed on the exterior of that guardhouse behind and above where I stood. The City of New York has been legally required to preserve all pertinent audio and video recordings that were recorded on 11/27/17 by video security cameras that the NYPD controls and recorded me while I stood by that guardhouse, later walked between there and City Hall's building, entered City Hall's building, and otherwise continued to be in City Hall's building on that date. I urge this Court to immediately order the City of New York to immediately provide me all of those video

recordings without redactions in them and otherwise in an unedited form that will show the

current date and time in them when played back and will be saved as ".mp4" , ".avi", or ".mov"

video files that I can open on a Macintosh computer The current time then was roughly 11:55:02

am.



43.     The next screenshot is from the elapsed time of 30 minutes and 21 seconds in that video.

NYPD John Doe2 11/27/17 and I are shown in it with a large group of members of the public a

that group walked towards the Broadway entrance of City Hall that its members were about to be

illegally allowed to walk past in flagrant violation of my Fourteenth Amendment due process and

equal protection rights as I continued to stand next to that guardhouse. In hindsight, I never

should have hesitated to lawfully assert and exercise my First Amendment and Fourteenth

Amendment rights by remaining by that guardhouse instead of walking past that area over Mr.

Cruz' objections to reach City Hall while first undergoing a standard security check in an area

between that guardhouse and City Hall's building that entails walking through a metal detector. I

should have instead conducted myself in such an assertive and lawful manner in regards to Mr.

Cruz and everyone else who illegally prevented me from accessing City Hall's building while also exercising my legal self-defense rights in the event that anyone initiated physical contact with me to mercilessly and quickly disable such people prior to accessing City Hall's building on account of the fact that I was then dealing with criminals who were dressed as and were impersonating law-enforcement personnel instead of actual law-enforcement personnel at City Hall on 11/27/17. The current time then was roughly 11:55:17 am.



44.     The next screenshot is from the elapsed time of 32 minutes and 58 seconds in that video. Elizabeth Crowley and I are shown in it from left to right while she was then a New York City Councilwoman as I continued to stand next to that guardhouse. The current time then was roughly 11:57:54 am. I told her then that I was being illegally prevented from being able to walk past that area to reach City Hall as I held either a printout of the public notice for the Mayor's 11/27/17 public hearing or provisions of New York State's Open Meetings Law. Prior to that date, I testified partly to her on 6/19/17 during the public hearing that the City Council's

Committee on Oversight and Investigations conducted. Back then, I testified against HRA and its business partner in relation to legislation that she had proposed that I supported and was designed to have greater oversight imposed on how HRA operated. While I talked with her on 11/27/17, though she expressed empathy about the fact that I was being illegally prevented from being able to walk to City Hall's building, she didn't make any effort to intervene on my behalf to enable me to do so. She was the most considerate government official that I interacted with by far on 11/27/17 as I stood by that guardhouse.



45.     The next screenshot is from the elapsed time of 35 minutes and 51 seconds in that video. Defendant Shorris and I are shown in it from left to right while he was then walking toward the Broadway exit of City Hall as I continued to stand next to that guardhouse. I told him then that I was being illegally prevented from being able to walk past that area to reach City Hall. The current time then was roughly 12:00:47 pm. He didn't try to intervene on my behalf to enable me

to do access City Hall's building. My conversation with him then occurred after I talked with

him on both 10/13/17 and 10/25/17 about the fact that I was being consistently and illegally

barred from attending public forums that the Mayor conducted by Defendant Redmond and

others. Mr. Shorris is the second person from the left in this screenshot and appears to have them

pointed toward me with his left hand. The totality of how he conducted himself on 11/27/17 in

regards to me sufficiently confirms that he condoned the fact that I was being illegally prevented

from being able access City Hall's building while he continued to be the First Deputy Mayor of

the City of New York.



46.     The next screenshot is from the elapsed time of 35 minutes and 55 seconds in that video.

Defendant Shorris is shown as he looked back toward me shortly after he exited City Hall's

property. The current time then was roughly 12:00:51 pm.



47.     The next screenshot is from the elapsed time of 36 minutes and 2 seconds in that video. I'm shown talking with a woman named Mary Prentis as she was about to exit City Hall's property while I still stood next to that guardhouse. I told her then that I was being illegally prevented from accessing City Hall's building. She didn't try to do anything for me about that. Back then, she worked for New York City Councilman Eric Ulrich. The current time then was roughly 12:00:58 pm.



48.     The next screenshot is from the elapsed time of 36 minutes and 15 seconds in that video. The current time then was roughly 12:01:11 pm. Donovan Richards is shown in this screenshot as he walked towards the Broadway exit of City Hall while he was then a New York City Councilman. He has since been the chairman of the City Council's Committee on Public Safety and someone who I regard as a suck-up to the NYPD's mob that is based upon how I have observed him interact with that mob's members during public hearings that the City Council has conducted in City Hall. He is also someone who has impeded my efforts to lawfully testify in public hearings that the City Council conducts partly by not having arrangements made to enable me to present pertinent video recordings in conjunction with testimony that I presented during public hearings that the City Council's Committee on Public Safety has conducted in a way that would enable the members of the public in attendance at such hearings to be able to easily see and hear the content of those video recordings as I testified in them. Also, a Twitter account that is registered to him and has the username of "@drichards13" has been blocking a Twitter account that is registered to me from having access to public forums that have been created on the Internet by how the Twitter account has been used that is registered to him that I just identified. This is entirely true and accurate in spite of the fact that the Second Circuit confirmed

in *Knight First Amendment Inst. Columbia v. Trump*, 928 F.3d 226 (2d Cir. 2019) that

government personnel who use Twitter accounts that are registered to them to establish public

forums on the Internet may not lawfully block others from them because of dislike for

viewpoints.



49.     The next screenshot is from the elapsed time of 36 minutes and 47 seconds in that video.

The current time then was roughly 12:01:43 pm. NYPD John Doe3 11/27/17 and I are shown

from left to right as we stood near that guardhouse as I told him that I was being illegally

prevented from accessing City Hall's building to attend the Mayor's 11/27/17 public hearing. He

proved to be useless on 11/27/17 as far as I was concerned by not doing anything to try to

intervene on my behalf to uphold my constitutional rights to access City Hall's building. He

instead quickly walked away.



50.    The next screenshot is from the elapsed time of less than one second in the video recording that I recorded with my cell phone on 11/27/17 at 12:05 pm that has the filename of "IMG_3226.MOV". This screenshot shows the public notice that was issued for the Mayor's 11/27/17 public hearing and I also recorded Mr. Cruz while he sat inside of the guardhouse that I continued to stand next to.



51.    The next screenshot is from the elapsed time of 44 minutes and 22 seconds in 11/27/17 aerial video1. The current time then was roughly 12:09:18 pm. New York City Councilman Eric Ulrich and I are shown from left to right as we stood near that guardhouse as I told him that I was being illegally prevented from accessing City Hall's building to attend the Mayor's 11/27/17 public hearing. He proved to be useless on 11/27/17 as far as I was concerned by not doing anything to try to intervene on my behalf to uphold my constitutional rights to access City Hall's building. He instead quickly walked away.



52.     The next screenshot is from the elapsed time of 44 minutes and 48 seconds in that video. The current time then was roughly 12:09:44 pm. Defendant Hansen and I are shown from left to right as we stood near that guardhouse as I told him that I was being illegally prevented from accessing City Hall's building to attend the Mayor's 11/27/17 public hearing. He was there to take over Defendant Cruz's assignment to that guardhouse. Instead of doing anything to try to help me to be able to lawfully exercise my constitutional right to access City Hall's building, he also illegally refused to allow me to walk past that area to reach City Hall's building.



53.     The next screenshot is from the elapsed time of 45 minutes and 3 seconds in that video. The current time then was roughly 12:09:59 pm. Defendant Cruz is shown on the left as he walked away from that NYPD guardhouse in the direction of City Hall's building as Defendant Hansen was then inside of that guardhouse that I still stood next to.



54.     The next screenshot is from the elapsed time of 46 minutes and 15 seconds in that video.

The current time then was roughly 12:11:11 pm. New York City Councilman Carlos Menchaca is shown standing to my left as I told him that I was being illegally prevented from accessing City Hall's building to attend the Mayor's 11/27/17 public hearing. While talking with him then, I showed him either a printout of the public notice of the Mayor's 11/27/17 public hearing or provisions of New York State's Open Meetings Law. However, he didn't try to intervene on my behalf to enable me to exercise my constitutional right to access City Hall's building and instead soon walked away.



55.     The next screenshot is from the elapsed time of 46 minutes and 51 seconds in that video. The current time then was roughly 12:11:47 pm. Marco Carrion of the Mayor's CAU is shown standing in front of me next to that guardhouse as I told him that I was being illegally prevented from accessing City Hall's building to attend the Mayor's 11/27/17 public hearing. However, he didn't try to intervene on my behalf to enable me to exercise my constitutional right to access City Hall's building and instead soon walked away. Prior to that date, I received information on

10/18/17, 10/26/17, and 11/2/17 from members of the Mayor's CAU and the NYPD that
indicated that Mr. Carrion was responsible for having issued orders that caused me to be illegally
prevented from attending the town hall meetings that the Mayor conducted on those dates in
flagrant violation of my constitutional right of access to a public forum that those town hall
meetings certainly all were.



56.    The next screenshot is from the elapsed time of 48 minutes and 2 seconds in that video.
The current time then was roughly 12:12:58 pm. I'm shown in this screenshot as I waved with
my left hand in the direction of NYPD video security cameras nearby to signal to Defendant
Hansen my intent to have him and everyone else who were illegally preventing me from
accessing City Hall's building on 11/27/17 fully accountable through litigation against them.



57.     The next screenshot is from the photograph that I took with my cell phone on 11/27/17 at 12:13 pm that has the filename of "IMG_3227.JPG". This screenshot shows NYPD video security cameras that I had just been waving in the direction of.



58.     The next screenshot is from the elapsed time of 49 minutes and 1 second in 11/27/17

aerial video1. The current time then was roughly 12:13:57 pm. New York City Councilman Eric

Ulrich and I are shown from left to right as we stood next to that NYPD guardhouse after Mr.

Ulrich returned there as he was then in the process of exiting City Hall's grounds through its

Broadway entrance. Although I then showed him the printouts of the public notice of the

Mayor's 11/27/17 public hearing and provisions of New York State's Open Meetings Law, he

didn't make any effort to intervene on my behalf to try to enable me to access City Hall's

building. Prior to that date, as I testified to him on 10/2/17 in the Committee Room inside of City

Hall during the public hearing that the City Council's Committee on Veterans conducted, I told

him that I had repeatedly and illegally been prevented from attending public town hall meetings

that the Mayor had been conducting by members of the NYPD. However, I later learned that Mr.

Ulrich supports the NYPD's mob.



59.     The next screenshot is from the elapsed time of 54 minutes and 36 seconds in that video.

The current time then was roughly 12:19:32 pm. An unknown young black woman who was then

visiting City Hall in regards to an internship with Manhattan Borough President Gale Brewer's

office is shown showing me a business card that she was issued as we stood next to the NYPD

guardhouse located just inside of the Broadway entrance to City Hall. I told her then that I was

being illegally prevented from accessing City Hall's building.



60.    The next screenshot is from the photograph that I took with my cell phone on 11/27/17 at

12:19 pm that has the filename of "IMG_3228.JPG". This screenshot shows the business card

that unknown young black woman just showed to me. I have rotated that photograph to the left

for this screenshot to allow the text that appears on that business card to be easier to read.



61.      The next screenshot is from the elapsed time of 1 hour, 3 minutes, and 44 seconds in

11/27/17 aerial video1. The current time then was roughly 12:28:40 pm. New York City

Councilwoman Margaret Chin and I are shown from left to right as she wore a pink scarf while I

stood next to that NYPD guardhouse as she approached where I then was while walking towards

City Hall's Broadway exit. Although I then showed her the printouts of the public notice of the

Mayor's 11/27/17 public hearing and provisions of New York State's Open Meetings Law, she

didn't really make more than a minimal effort to intervene on my behalf to try to enable me to

access City Hall's building. That occurred after Defendant Nieves was recorded on video on

6/21/17 in Chinatown in Manhattan as he illegally harassed members of the public by

confiscating literature that they had as they attempted to have that literature with them while

attending the public town hall meeting that the Mayor then conducted there as Ms. Chin acted as

the moderator for that town hall meeting.



62.      The next screenshot is from the elapsed time of 1 hour, 4 minutes, and 12 seconds in

11/27/17 aerial video1. The current time then was roughly 12:29:08 pm. I'm shown in that

screenshot as I showed Ms. Chin printouts of the public notice of the Mayor's 11/27/17 public

hearing and provisions of New York State's Open Meetings Law.



63.     The next screenshot is from the elapsed time of 1 hour, 4 minutes, and 22 seconds in that

video. The current time then was roughly 12:29:18 pm. Defendant Hansen is shown in that

screenshot as he stuck his head out of the NYPD guardhouse that he was then in and talked with

Ms. Chin briefly without providing any objectively credible and valid reason about why I was

being prevented from accessing City Hall's building.



64.     The next screenshot is from the elapsed time of 1 hour, 5 minutes, and 4 seconds in that video. The current time then was roughly 12:30 pm. I continued to then stand next to that guardhouse near Defendant Hansen, Ms. Chin, and an unknown male colleague of hers'. Also, Defendant Fowler is shown on the right as he was approaching the Broadway entrance to City Hall.



65.     The next screenshot is from the elapsed time of 1 hour, 5 minutes, and 23 seconds in that

video. The current time then was roughly 12:30:19 pm. Mr. Fowler and I are shown in this

screenshot from left to right as we stood next to that guardhouse. Although I told him that I was

being illegally prevented from accessing City Hall's building by members of the NYPD and that

I sought to do so to attend and testify in the Mayor's 11/27/17 public hearing, he illegally didn't

attempt to intervene on my behalf to try to enable me to access City Hall's building. I previously

also apprised everyone else about that fact as I talked with them while standing next to that

guardhouse on 11/27/17. I also then showed Mr. Fowler the printouts of the public notice of the

Mayor's 11/27/17 public hearing and provisions of New York State's Open Meetings Law.



66.      The next screenshot is from the elapsed time of 1 hour, 6 minutes, and 37 seconds in that video. The current time then was roughly 12:31:33 pm. New York City Councilman Mathieu Eugene is shown standing to my left as I told him that I was being illegally prevented from accessing City Hall's building to attend the Mayor's 11/27/17 public hearing. He is currently the chairman of the City Council's Committee on Civil and Human Rights. While talking with him on 11/27/17 by that guardhouse, I showed him the printouts of the public notice of the Mayor's 11/27/17 public hearing and provisions of New York State's Open Meetings Law. However, he didn't try to intervene on my behalf to enable me to exercise my constitutional right to access City Hall's building. While we talked then and there, Mr. Hansen partly emerged from that guardhouse and continued not to provide any credible explanation for why I was being illegally prevented from accessing City Hall's building.



67.     The next screenshot is from the elapsed time of 1 hour, 12 minutes, and 30 seconds in that video. The current time then was roughly 12:37:26 pm. Defendant Hansen is shown as he stood in front of me outside of and next to that guardhouse as he engaged in idle small-talk with me while continuing to illegally prevent me from walking past him to City Hall's building.



68.     The next screenshot is from the elapsed time of 1 hour, 14 minutes, and 28 seconds in that video. The current time then was roughly 12:39:24 pm. I'm shown in that screenshot with Defendants NYPD John Doe1 11/27/17 and NYPD Jane Doe1 11/27/17 as I told NYPD John Doe1 11/27/17 that members of the NYPD were illegally preventing me from accessing City Hall's building. However, he illegally made not attempt to intervene on my behalf to enable me to do so. NYPD Jane Doe1 11/27/17 appears in the lower-right area in this screenshot.



69.     The next screenshot is from the elapsed time of 1 hour, 22 minutes, and 01 seconds in that video. The current time then was roughly 12:46:57 pm. James Vacca is shown standing to my left while he was then a New York City Councilman as I told him that I was being illegally prevented from accessing City Hall's building to attend the Mayor's 11/27/17 public hearing. I also clearly showed him printouts of the public notice that was issued for the Mayor's 11/27/17 public hearing and provisions of New York State's Open Meetings Law that I held. However, though Mr. Vacca briefly talked with Defendant Hansen, he didn't try to intervene on my behalf

to enable me to exercise my constitutional right to access City Hall's building. While we talked then and there, Mr. Hansen partly emerged from that guardhouse and continued not to provide any credible explanation for why I was being illegally prevented from accessing City Hall's building.



70.     The next screenshot is from the elapsed time of 14 minutes, and 49 seconds in 11/27/17 aerial video2 instead of 11/27/17 aerial video1. The current time then was roughly 1:02:57 pm. I'm shown in this screenshot as I talked with a female whistleblower news censor in journalism that I believe was Gwynne Hogan as I told her that I was being illegally prevented by members of the NYPD from accessing City Hall's building and that I had been there to try to attend and testify in the Mayor's 11/27/17 public hearing. I believe that I also told her then that I was a whistleblower against the Mayor's administration, NYPD, Mayor's CAU, and HRA while pointing out that I then was involved in ongoing litigation against HRA that I commenced. Ms.

Hogan now works for news organizations named WNYC and Gothamist after she previously worked for a news organization named DNAInfo. Although she and I talked briefly talked about that as I then still stood next to the NYPD guardhouse located just inside of the Broadway entrance to City Hall, no one in the press reported anything about the fact that I was illegally prevented from accessing City Hall's building on that date. The papers that appear in my hands in this screenshot included a printout of either the public notice for the Mayor's 11/27/17 public hearing or provisions of New York State's Open Meetings Law that I offered to show to her then.



71.      The next screenshot is from the elapsed time of 14 minutes, and 52 seconds in that video. The current time then was roughly 1:03 pm. I'm shown in this screenshot as I still talked with that woman who I believe was Gwynne Hogan. This screenshot confirms that she stepped closer to me that was likely to take a closer look at the papers I then held.



72.     The next screenshot is from the elapsed time of 15 minutes, and 4 seconds in that video. The current time then was roughly 1:03:12 pm. I'm shown in this screenshot as I still talked with the woman who I believe was Ms. Hogan. This screenshot also shows a notorious whistleblower news censor in journalism named Erin Durkin as she was about to enter City Hall's grounds through its Broadway entrance and walk directly past me.



73.     The next screenshot is from the elapsed time of 16 minutes, and 18 seconds in that video. The current time then was roughly 1:04:26 pm. The woman who I believe is Ms. Hogan is shown

leaving City Hall's grounds through its Broadway entrance after having just talked with me as I still stood by that NYPD guardhouse.



74.     The next screenshot is from the elapsed time of 16 minutes, and 20 seconds in that video. The current time then was roughly 1:04:28 pm. The woman who I believe is Ms. Hogan is more clearly shown in this screenshot as she continued to walk away from City Hall's grounds.



75.     The next screenshot is from the elapsed time of 16 minutes, and 44 seconds in that video.

The current time then was roughly 1:04:52 pm. I'm shown in this screenshot as I still stood next

to that guardhouse and spotted a genuinely nasty Jewish man named Pinny Ringel as he was

walking toward where I then stood to enter City Hall's grounds through its Broadway entrance.

Mr. Ringel then worked for the Mayor's CAU. Prior to 11/27/17, Mr. Ringel was personally

involved since 4/27/17 and most recently on 11/2/17 in committing illegal acts and omissions

against me with members of the NYPD and other members of the Mayor's CAU that caused me

to be barred from attending numerous public town hall meetings that the Mayor conducted while

I was conducting myself in an entirely lawful manner. Although I closely watched Mr. Ringel

then, I don't believe that I interacted in any way with Mr. Ringel on 11/27/17 as he entered City

Hall's grounds and walked past me. Also, it more clearly appears in this screenshot to be the case

that a video security camera that was controlled by the NYPD was installed on the exterior of

that NYPD guardhouse that I stood next to in the immediate vicinity of where I then stood.



76.     The next screenshot is from the elapsed time of 18 minutes, and 7 seconds in that video. The current time then was roughly 1:06:15 pm. I'm shown in this screenshot as I still stood next to that guardhouse as Defendant approached the area where I then stood. He is shown on the far-left side of this screenshot while Mr. Hansen partly emerged from that guardhouse.



77.     The next screenshot is from the elapsed time of 18 minutes, and 13 seconds in that video. The current time then was roughly 1:06:21 pm. Mr. Hansen, Mr. Nieves, and I are shown in this screenshot from left to right as Mr. Nieves stood directly in front of and in close proximity to me while I continued to conduct myself in an entirely lawful manner in stark contrast to him and Defendant Hansen. Mr. Nieves was then there to assist Mr. Hansen in in illegally preventing me from being able to walk past that guardhouse to reach City Hall's building.



78.     The next screenshot is from the elapsed time of 18 minutes, and 27 seconds in that video. The current time then was roughly 1:06:35 pm. Mr. Hansen, Mr. Nieves, and I are shown in this screenshot from left to right as Mr. Nieves continued to stand directly in front of me while I continued to conduct myself in an entirely lawful manner and Mr. Hansen stood behind him. I'm shown in this screenshot as I held my cell phone in my left hand as I prepared to record Mr. Nieves and Mr. Hansen on video while I talked with Mr. Nieves.



79.     The next screenshot is from the elapsed time of 3 seconds in the video recording that has

the filename of "IMG_3230.MOV" that I recorded with my cell phone at 1:06 pm on 11/27/17 of

Mr. Nieves and Mr. Hansen. That video recording is just 42 seconds in length. As a reminder, I

inadvertently recorded that video recording in an upside-down manner. This screenshot reflects

the fact that I properly rotated what appears in that video to enable that information to be more

easily and properly understood by those who read this complaint. The jacket that Mr. Nieves was

then wearing as well as the top of the door to the NYPD guardhouse that I then stood next to are

shown in this screenshot. At the very beginning of this video, I'm clearly heard asking Mr.

Nieves, "Who gave you that order?" In response, Mr. Nieves told me, "Inspector Redmond".

That answer that he just gave me was in response to my having just explicitly asked who issued

him an order to cause me to be prevented from walking past that guardhouse to reach City Hall's

building on that date. His answer to that question explicitly implicated Defendant Redmond in a

criminal conspiracy to violate my rights pursuant to the First Amendment, Fourteenth

Amendment, and New York State's Open Meetings Law to attend and testify in the Mayor's

11/27/17 public hearing and to otherwise have access to other public forums that existed on City

Hall's grounds and inside of City Hall's building on 11/27/17.



80.     The next screenshot is from the elapsed time of 4 seconds in that video as I told Mr.

Nieves that Mr. Redmond told me on 11/1/17 outside of a building in which the Mayor

participated in a debate on that date that I would be able to attend something as I was the

referring to the Mayor's 11/2/17 town hall meeting that Defendant Nieves and others illegally

prevented me from being able to attend while I conducted myself in an entirely lawful manner in stark contrast to them as they continued to illegally engage in voter suppression, voter fraud, whistleblower retaliation, and Hatch Act violations by doing so for the Mayor's benefit and their own to steal the outcome of the 2017 New York City government elections for the Mayor. In response to my remarks to Mr. Nieves then on 11/27/17, he obnoxiously and irrelevantly told me that Mr. Redmond wasn't then telling me that I could access City Hall's building on 11/27/17 in spite of the fact that I had a First Amendment and Fourteenth Amendment right to do exactly that without needing anyone's permission to lawfully do so.



81.     The next screenshot is from the elapsed time of 7 seconds in that video as I told Mr.

Nieves that "I had a First Amendment right to attend that meeting" as I was then specifically referring to the Mayor's 11/27/17 public hearing. Mr. Nieves is clearly heard telling me in response that Mr. Redmond wasn't telling me on 11/27/17 that I could do so. Defendant Hansen's NYPD hat is partly shown behind Mr. Nieves' left shoulder in this screenshot as Mr. Hansen continued to illegally make no effort to intervene on my behalf to enable me to exercise my First Amendment and Fourteenth Amendment rights to access City Hall's building.



82.    The next screenshot is from the elapsed time of 11 seconds in that video as I provided narration for that video by stating that those who I was then recording in that video included Mr. Nieves as Mr. Hansen was then more clearly seen while he stood behind Mr. Nieves' left shoulder.



83.     At the elapsed time of 12 seconds in that video, Mr. Nieves is heard stating that he knew

that I was then recording him on video and that it was nice that I was doing so. I don't disagree

with him about that because it sufficiently confirms that he was then willfully, oppressively,

maliciously, and flagrantly violating federal criminal laws 18 U.S.C. §245(b)(5), 18 U.S.C. §241,

and 18 U.S.C. §1513(e) as well as NYPL §240.20, NYPL §240.26, NYPL §240.65, NYPL

§175.25, NYPL §195.00, New York City Charter §1116, 42 U.S.C. §1983, 42 U.S.C. §1985, 42

U.S.C. §1986, and New York State's Open Meetings Law along with my rights pursuant to the

First Amendment, Fourth Amendment, Fourteenth Amendment, and New York State's Open

Meetings Law while not having any immunity for doing so.

84.     The next screenshot is from the elapsed time of 13 seconds in that video and clearly

shows Mr. Nieves' face as he told me that I needed to do him a favor by standing outside of the

Broadway entrance to City Hall instead of continuing to peacefully exercise my First

Amendment right of assembly exactly where I then stood next to that guardhouse.



85.     The next screenshot is from the elapsed time of 15 seconds in that video and clearly

shows Mr. Hansen as he stood behind Mr. Nieves and continued to illegally not intervene on my

behalf to get Mr. Nieves to immediately cease and desist from trying to further violate my

constitutional rights partly by coercing me to move away from where I lawfully then stood as

both of them continued to illegally prevent me from walking past that guardhouse to reach City

Hall's building.



86.     The next screenshot is from the elapsed time of 17 seconds in that video as I'm heard

clearly, explicitly, and calmly asking Mr. Nieves to tell me then and there exactly what the legal

basis was for why I was illegally prevented by members of the NYPD from attending the

Mayor's 11/27/17 public hearing that I then referred to instead of having explicitly identified

outright. In response, Mr. Nieves told me then that he didn't know the answer to that and that I instead needed to talk with Defendant Redmond to get that information. Mr. Nieves' response prompted me to instantly, diligently, and rhetorically ask him a follow-up question by asking him to let me talk with Mr. Redmond then instead about that specific matter. Mr. Nieves then responded to my question by telling me that Mr. Redmond was then not around to mean that he wasn't then available for me to talk with. I then immediately told Mr. Nieves that I had seen Mr. Redmond earlier that day. Mr. Nieves then reiterated to me that Mr. Redmond wasn't then available for me to talk with.

87.    The next screenshot is from the elapsed time of 26 seconds in that video as I'm clearly heard asking Mr. Nieves to be able to talk with his supervisor on account of the fact that Mr. Redmond wasn't available for me to talk with then. In response, Mr. Nieves told me that Mr. Redmond was his supervisor. I then immediately replied by telling him that I was then waiting exactly where I stood to talk with his supervisor.



88.     At the elapsed time of 32 seconds in that video, I'm clearly heard calling out to a
notorious whistleblower news censor in journalism named J. David Goodman who works for the
New York Times as he coincidentally then happened to be nearby and walking past Mr. Nieves
on his right towards the Broadway exit of City Hall to exit City Hall's grounds. I had previously
talked with Mr. Goodman about the fact that I had been repeatedly and illegally prevented by
members of the Mayor's NYPD security detail since 4/27/17 from attending various public
forums that were partly comprised of town hall meetings that the Mayor conducted with other
government officials as Mr. Goodman had reprehensibly maintained a practice of wrongfully
censoring that information to impede my ability to enlighten the public about that fact long
before Bill de Blasio was re-elected as New York City's Mayor on 11/7/17 to facilitate the public
in making informed decisions about whether and why Bill de Blasio needed to be promptly fired
by how the public would vote in the 2017 New York City government elections. As I spoke to
Mr. Goodman on 11/27/17 while I then stood next to Mr. Nieves and Mr. Goodman was exiting
City Hall's grounds, I explicitly and clearly told him that Mr. Nieves was then illegally
preventing me from attending a public meeting as I was then referring to additional public
hearings that were being conducted by the City Council inside of City Hall's building on that
date. As I told Mr. Goodman that, I also specifically asked him if there was something that he
could do about that while I was referring to his status as someone who worked for the New York
Times and had the ability to report that in the press to try to have Mr. Nieves held properly
accountable for violating my constitutional rights to attend a public forum.

89.     The next screenshot is from the elapsed time of 34 seconds in that video and shows Mr.
Goodman as he was walking past Mr. Nieves and I while Mr. Goodman appeared behind and to
the right of Mr. Nieves' right shoulder.



90.    The next screenshot is from the elapsed time of 18 minutes and 49 seconds in 11/27/17 aerial video2 and more clearly shows Mr. Goodman as he was then walking past Mr. Nieves and I while Mr. Goodman appeared behind and to the right of Mr. Nieves' right shoulder. The current time then was roughly 1:06:57 pm. This screenshot shows that Mr. Goodman was looking in my direction as I addressed him.



91.     The next screenshot is from the elapsed time of 36 seconds in the video recording that I recorded on 11/27/17 at 1:06 pm that has the filename of "IMG_3230.MOV" and shows Mr. Nieves as I spoke to Mr. Goodman while he was still nearby after Mr. Goodman had just walked past Mr. Nieves toward the Broadway exit of City Hall. Mr. Nieves was then looking in Mr. Goodman's direction and was silent as he made a facial expression that appeared to be directed at Mr. Goodman to communicate a message to not report about what was then transpiring between Mr. Nieves and I.



92.     The next screenshot is from the elapsed time of 38 seconds in that video after I turned my cell phone to record Mr. Goodman as he left City Hall's grounds. This screenshot shows him as he stood just outside of City Hall's Broadway exit as he said the following to me in response to my question about whether there was something that he could do about the fact that Mr. Nieves was illegally preventing me from attending a public meeting:

"Sorry, I have to run."



93.     The next screenshot is from the elapsed time of 40 seconds in that video and shows Mr.

Goodman as he walked away from where Mr. Nieves and I then were while proving that he is in

the whistleblower news censorship business instead of the news reporting business.



94.     The next screenshot is from the elapsed time of 18 minutes and 51 seconds in 11/27/17 aerial video2. The current time then was roughly 1:06:59 pm. Mr. Hansen, Mr. Nieves, myself, and Mr. Goodman are shown in it from left to right as Mr. Goodman told me that he had to run instead of staying there to gather facts to share with the public about how the NYPD's criminal

mob flagrantly violates fundamental First Amendment and Fourteenth Amendment rights at City

Hall to make it appear that Mr. Goodman and the New York Times support the First Amendment

and U.S. Constitution.



95.     The next screenshot is from the elapsed time of 18 minutes and 54 seconds in that video.

The current time then was roughly 1:07:02 pm. Mr. Hansen, Mr. Nieves, myself, and Mr.

Goodman are shown in it from left to right as Mr. Goodman continued to walk away from where

the rest of us then stood.



96.     The next screenshot is from the elapsed time of 19 minutes and 8 seconds in that video. The current time then was roughly 1:07:16 pm. Mr. Nieves appears in this screenshot as he stood in front of me while I was mostly concealed from view by the gates at City Hall's Broadway entrance. An unknown black male is also shown as he then walked past and behind Mr. Nieves towards City Hall's Broadway exit. Mr. Nieves is shown in this screenshot as he made a hand signal with his left hand as he used it to gesture in the direction of the security screening area that is located between that NYPD guardhouse and City Hall's building.



97.     The next screenshot is from the elapsed time of 19 minutes and 45 seconds in that video. The current time then was roughly 1:07:53 pm. Mr. Hansen, Mr. Nieves, and I are shown in this screenshot as I was then in the process of finally walking past them and that guardhouse to reach the security screening area between there and City Hall's building to undergo a standard security check before being allowed to proceed to City Hall's building. That occurred after Mr. Nieves finally relented and allowed me to do precisely that. Given the fact that I was recorded on 11/27/17 by the video security camera that recorded 11/27/17 aerial video1 as having arrived 11:34:50 am at the NYPD guardhouse that is located just inside of the entrance to City Hall by Broadway, what I just discussed means that I was illegally prevented from walking past that guardhouse to reach the security screening area that I just discussed for more than 1.5 hours by Defendants Cruz, Hansen, and Nieves after I arrived at that guardhouse on 11/27/17.



98.     The next screenshot is from the elapsed time of 19 minutes and 47 seconds in that video. The current time then was roughly 1:07:55 pm. Mr. Hansen, Mr. Nieves, and I are shown in this screenshot as I am shown on the far-left and was then further away from them while I walked towards the security screening area that I just discussed.



99.     The next screenshot is from the elapsed time of 21 minutes and 28 seconds in that video. The current time then was roughly 1:09:36 pm. Mr. Nieves and Mr. Hansen are shown in this screenshot as Mr. Nieves appeared to then be making a cell phone call with a cell phone that he then held in his right hand. For reasons that I will discuss shortly, I urge this Court to immediately issue an order that compels Mr. Nieves and/or the City of New York to immediately provide me the cell phone number for the telephone call that Mr. Nieves was then involved in as well as the identity of the person and entity that cell phone number then was registered to. I also urge this Court to order Mr. Nieves and/or the City of New York to provide me records that have been in their possession that indicate the duration of that telephone call and whatever unedited audio recordings and written transcripts that have existed of that telephone call. In short, I believe that what was discussed during that telephone call were illegal instructions by Mr. Nieves that were directly or indirectly issued to Defendant Dietrich that prompted Mr. Dietrich to shortly thereafter prevent me from exercising my First Amendment and Fourteenth Amendment right to peacefully assemble in the atrium area inside of City Hall on its first floor in a location that is a short distance away from the main entrance to that building.



100.     The next screenshot is from the elapsed time of 1 second in the video recording that I recorded with my cell phone on 11/27/17 at 1:11 pm that has the filename of "IMG_3231.MOV". I recorded that video as Defendant Dietrich stood directly in front of and in close proximity to me while we stood in the atrium area inside of City Hall's building on its first floor near a staircase and a corridor that leads to the Blue Room in City Hall in which the Mayor conducted his 11/27/17 public hearing that I sought to attend and testify in.



101.     The next screenshot is from the preceding one and better shows the area by the Blue Room in City Hall that is located behind where Mr. Dietrich then stood.



102.    The next screenshot is also from the elapsed time of 1 second in that video and shows a video camera that was setup on a tripod in the public area where I then stood that was a public forum.



103.     Public areas within City Hall's building are jointly used by the public, members of the

City Council, other government personnel, whistleblower news censors in journalism, a tiny

number of actual journalists, and members of the NYPD's criminal mob. The next screenshot is

also from the elapsed time of 1 second in that video and shows a video camera that was setup on

a tripod in the public area where I then stood that was a public forum. The Mayor, City Council,

and NYPD mob don't have exclusive rights to occupy public areas in City Hall's building while

no objectively reasonable grounds exist to prevent members of the public from also occupying

those same public areas in a peaceful way and shortly after having been illegally prevented from

accessing City Hall's building by members of the NYPD's criminal mob.

104.     At the beginning of the video recording that I just discussed that has the filename of

"IMG_3231.MOV" that I recorded, Mr. Dietrich is shown as he is heard saying the following to

me:

"The Mayor is going to be coming out and [unclear mumbled word] certain thing, okay? We need you to come upstairs and answer any questions you want. No problem. All right?"

105.     The preceding remarks sufficiently confirm that Mr. Dietrich illegally directed me to leave that area without an objectively valid justification in violation of my First Amendment and Fourteenth Amendment right to continue to lawfully and peacefully assemble in that specific area as well as my due process and equal protection rights and those against illegal segregation, discrimination, abuse of process, and selective enforcement. If I had been permitted to remain in that specific area, I could have briefly stepped to the side to not obstruct anyone's movements and that fact confirmed that I wouldn't be obstructing government administration. The fact that I was just illegally barred from accessing both the Mayor's 11/27/17 public hearing and City Hall's building legally entitled me to disregard anyone's efforts to try to cause me to move from where I then lawfully stood as I sought to lawfully and very publicly call the Mayor out to try to legally humiliate him and members of his NYPD security detail while seeking to have all of them held fully and immediately accountable for being responsible for my having been illegally barred from accessing City Hall's building on that date. The Mayor was then also responsible for that on account of the fact that I had an earlier conversation with him on 7/18/17 in Kew Gardens in Queens as I then apprised him about the fact that Defendant Redmond had illegally prevented me from attending the Mayor's 4/27/17 town hall at the same time that Mr. Redmond was the defendant in _Sherrard v. City of New York_, No. 15-cv-7318 (MB) (S.D.N.Y. Jun. 13, 2018). Although the Mayor could have arranged to have had appropriate corrective action promptly taken against Mr. Redmond and other members of the NYPD in response to my remarks to the Mayor on 7/18/17, he didn't do so and that deliberate indifference allowed me to be illegally barred from accessing City Hall's building for more than 90 minutes on 11/27/17 while I was

conducting myself in an entirely lawful manner like usual.

106.    The next screenshot is from the elapsed time of 6 seconds of the video recording that has the filename of "town hall 11-30.mov" that I recorded with my laptop on 11/30/17 at 7:24 pm as I lawfully conducted myself while sitting in a chair and attending the Mayor's 11/30/17 public town hall meeting in Queens from within the room in which the Mayor conducted it. A big black male whose identity I don't know and who is a member of the Mayor's NYPD security detail is shown in this screenshot with Joe Ventri, who is also a member of the Mayor's NYPD security detail. The black male to whom I just referred was illegally then violating the Handshu Agreement by spying on me and an early version of a complaint that I was then typing to use in litigation that I intended to commence against the City of New York, members of the NYPD, and member of the Mayor's CAU in response to illegal acts and omissions that they committed against me that caused me to be illegally barred from attending public town hall meetings, public resource fair meetings, public hearings, and an illegal publicity stunt that the Mayor conducted in a public area that were all public forums that the Mayor mostly conducted with other government officials as those illegal acts and omissions against me violated my constitutional rights and other applicable laws.



107.    Prior to 11/30/17, the big Black male who is shown in the preceding screenshot illegally assaulted me and pushed me on 7/18/17 at the end of my conversation with the Mayor while I conducted myself in an entirely lawful manner in stark contrast to both hi and the Mayor. I'm referring to the next 3 screenshots that are from the video recording that the Mayor's office arranged to be recorded of the Mayor's 7/18/17 public resource fair meeting that the Mayor's office illegally concealed from the public by not having that video recording that is a public record available on the Internet for the entire public to freely watch. Although the Mayor's office temporarily provided me access to that video by providing me a link to it on the Internet in response to a FOIL demand that I submitted to it, the Mayor's office thereafter illegally removed that video from the Internet or otherwise disabled my access to it.



108.    In the preceding screenshot, the Mayor suddenly and illegally tried to intimidate me by trying to touch me near my right shoulder as I kept my hands and arms very close to my body to make it abundantly clear that I was conducting myself in a lawful manner. This screenshot clearly shows the big Black male to whom I just referred as he illegally had his right hand on my backpack. I certainly would have lawfully left the Mayor's trashy company in a prompt manner shortly after I had just told him that Defendant Redmond had illegally prevented me from attending his 4/27/17 town hall meeting and that Mr. Redmond was then a defendant in an ongoing civil rights lawsuit. I was then referring to *Sherrard v. City of New York*. Absolutely no objectively valid grounds existed for the Mayor and that Black male to have deliberately made physical contact with the backpack that I then wore and my body on 7/18/17. Both of them didn't treat every other members of the public who then met with the Mayor during that meeting that way in violation of my process and equal protection rights as well as those that prohibit illegal seizure, selective-enforcement, discrimination, abuse of process, and harassment. Defendant NYPD Jane Doe1 11/27/17 appears on the far-left in the screenshot above. NYPD Chief Juanita

Holmes also appears in this video as she stood behind that Black male and was mostly concealed from view by his body.

109.    This next screenshot clearly shows that Black male with his right hand on my backpack as I left his and the Mayor's loathsome company as well as the loathsome company of Mr. Banks, who then stood to the right of the Mayor.



110.    This next screenshot clearly shows that Black male with his right hand and arm extended as he illegally pushed me from behind as I left his trashy company as well as that of the Mayor and Mr. Banks. That very same Black male thereafter criminally seized and assaulted me on 3/18/19 as I lawfully and briefly testified to the Mayor during a public hearing that the Mayor conducted in the Blue Room in City Hall as the Mayor illegally subjected me to witness

tampering while illegally interfering with my First Amendment and Fourteenth Amendment right to testify against him and his administration during that hearing partly by playing back video recordings of conversations that I previously had with him as I testified in that hearing. That Black male illegally then caused me to be ejected from that hearing in spite of the fact that I was conducting myself in an entirely lawful manner.



111.    This next screenshot clearly shows that Black male as he illegally seized my left arm and had his right hand on my back on 3/18/19 during the public hearing that I just discussed while I was in the middle of testifying to the Mayor during the public hearing that I just discussed.



112.    As I stated earlier in this complaint, Shauna Stribula of the Mayor's CAU illegally tried to prevent me from attending the Mayor's 11/30/17 town hall and was ultimately overruled as a result of Jerry Ioveno of the Mayor's NYPD security detail having finally intervened on my behalf at a public forum that the Mayor conducted by having a conversation with Marco Carrion and of the Mayor's CAU and Dustin Ridener of the Mayor's Office shortly before that town hall began outside of the school that hosted it. Following that conversation, I was permitted to attend that town hall from within the room in which it was attended. Prior to that conversation, I recorded Ms. Stribula on video on 11/30/17 as she and I stood near the entrance to the school that hosted that town hall meeting as she told me that she wouldn't allow me to attend that meeting "because I said you're not coming it". She said that to me in the immediate presence of other members of the public who were waiting to attend that town hall as well as NYPD Officer Baez (shield #: 5984), Pinny Ringel of the Mayor's CAU, and Harold Miller of the Mayor's CAU as all of those New York City government personnel condoned the fact that Ms. Stribula was illegally preventing me from attending that town hall while I was conducting myself in a lawful manner in stark contrast to her.

113.    The next screenshot is from the very beginning of the video recording that has the

filename of "VID_20171130_192647.mp4" that I recorded with my cell phone on 11/30/17 at 7:26 pm as I lawfully conducted myself while I sat in a chair and attended the Mayor's 11/30/17 public town hall meeting in Queens from within the room in which the Mayor conducted it.



114.    This screenshot shows how the screen of my laptop then appeared and the fact that I was then reading a New York Times article that was written by a whistleblower news censor in journalism named Joseph Goldstein that is entitled, "Brooklyn Judge Seeks to Examine the Prevalence of Police Lying". That article was published by the New York Times on the Internet on 10/17/17 at https://www.nytimes.com/2017/10/17/nyregion/brooklyn-judge-police-perjury-nypd.html and concerned the NYPD's ongoing practice of "Testilying" that former Brooklyn federal judge Jack Weinstein sought to examine in what was then the ongoing case of *Cordero v. City of New York*, No. 15-cv-3436 (JBW) (E.D.N.Y. Feb. 23, 2018) that I attended. While I recorded that video recording, I rotated my cell phone's camera to record the Mayor to silently

express my view that whatever he said about the NYPD during that town hall meeting would be lies that were designed to cater to a criminal mob that I believe owns him and for which he acts as a puppet. Also, I was publicly reading that news article during that town hall meeting while periodically turning my laptop's screen to face other members of the public who sat near me to try to lawfully trigger word-of-mouth advertising among them and other members of the public during that town hall meeting that I hoped would massively spread during it and thereafter to ultimately help persuade a sufficient number of New Yorkers to not trust the NYPD's criminal mob and the Mayor. Such a practice and tactic of silently reading a news article from my laptop while attending town hall meetings that the Mayor conducted within the room in which he conducted them while making such articles available for viewing by other members of the public who sat near me was among the tactics that I sought to lawfully employ to try to persuade a sufficient number of voters to fire the Mayor in the 2017 New York City government elections for him to be belatedly fired. I also intended to silently employ that type of tactic while attending the Mayor's 11/27/17 public hearing to legally humiliate the Mayor, members of the Mayor's NYPD security detail, and other members of the Mayor's administration.

115.    The next screenshot is from the very beginning of the video recording that has the filename of "IMG_3297.MOV" that I recorded with my cell phone on 11/30/17 at 9:59 pm as I continued to lawfully conduct myself while sitting in a chair and attending the Mayor's 11/30/17 public town hall meeting in Queens from within the room in which the Mayor conducted it. Defendant Cruz is shown in it as he wore a suit and tie and had his right hand on top of a metal post. Also, NYPD Officer Karl Pfeffer of the Mayor's NYPD security detail is partly shown on the right side of this screenshot while he wore a mustache.



116.    The fact that Mr. Cruz and I both attended the Mayor's 11/30/17 town hall meeting just 3

days after he illegally prevented me from accessing the Mayor's 11/27/17 public hearing

naturally raises a key question that is tantamount to the proverbial elephant in the room about

why in the hell he agreed to illegally prevent me from lawfully attending the Mayor's 11/27/17

public hearing as I conducted myself in an entirely lawful manner in stark contrast to him and

other members of the NYPD's criminal mob.

## CAUSES OF ACTION

**CLAIM #1:   Violations of the First Amendment right of access to a public forum, to protest in a public forum, to record audio and video recordings in a public forum, to take photographs in a public forum, to receive information in a public forum, to have the opportunity to talk with journalists in a public forum, to distribute whistleblowing literature in a public forum, to engage in lawful assembly in a public forum, to engage in freedom of expression in a public forum, to otherwise engage in whistleblowing and criticism of government officials in a public forum, to engage in expressive association, and to petition government officials in a public forum for redress of grievances**

(Against Defendants City of New York, Cruz, Hansen, Nieves, Fowler, Dietrich, NYPD John Doe1 11/27/17, NYPD John Doe2 11/27/17, NYPD John Doe3 11/27/17, NYPD Jane Doe1 11/27/17, NYPD Jane Doe2 11/27/17, Redmond, de Blasio, O'Neill, Byrne, Jr., Shorris, Vance, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      I also incorporate by reference as though fully set forth herein the decision that was issued on 5/19/20 in *Dunn v. City of Fort Valley,* No. 19-cv-287(TES) (M.D. Ga. May 19, 2020) due to relevant findings it contains about First Amendment rights in public forums, supervisory liability, and other pertinent things.

3.      By not trying to intervene on my behalf in relation to my efforts to lawfully attend the Mayor's 11/27/17 public hearing, otherwise access City Hall's building on 11/27/17 before I was permitted to, and continue to lawfully and peacefully assemble in the atrium area in City Hall's building on 11/27/17, the defendants listed above are as liable as those who illegally prevented me from **a)** attending the Mayor's 11/27/17 public hearing, **b)** otherwise accessing City Hall's building on 11/27/17 before I was permitted to, and **c)** being able to continue to lawfully and peacefully assemble in the atrium area in City Hall's building on 11/27/17.

4.      More importantly, my right to lawfully engage in communications in a public forum in a

manner that doesn't disrupt how that public forum is conducted while valid time, place, and

manner restrictions do not exist to prohibit such communications in a public forum was

confirmed by the following excerpt from _Occupy Nashville v. Haslam_, 949 F. Supp. 2d 777

(M.D. Tenn. 2013):

> "a state may not restrict First Amendment rights, absent valid time, place, or manner
> restriction. _See Dean_, 354 F.3d at 551; _Galvin v. Hay,_ 374 F.3d 739, 751 (9th
> Cir.2004) (**"As speakers may generally control the presentation of their message by
> choosing a location for its importance to the meaning of their speech, speakers may
> ordinarily— absent a valid time, place and manner restriction—do so in a public
> forum.");** _**Childs v. Dekalb Cnty., Ga.,**_ **286 Fed.Appx. 687, 693-94 (11th
> Cir.2008)** (denying qualified immunity and stating that, based on Supreme Court
> precedent, "police officers have known for decades that protestors present on public
> property have a First Amendment right to peacefully express their view, in the absence of
> narrowly tailored ordinances restricting the time, place, or manner of the speech")."

> (boldface formatting added for emphasis)

5.      Through the facts and circumstances that I have sufficiently presented in this complaint, I

have established that the Defendants identified above were personally involved in having

willfully, callously, oppressively, wantonly, and illegally violating my First Amendment rights in

relation to my claims about City Hall and 11/27/17 that this action concerns.

6.      Due to the violations of my First Amendment rights on 11/27/17 that occurred inside and

outside of City Hall's building in close proximity to it, the Defendants' illegal acts and omissions

against me that caused those violations to occur and maintained those acts and omissions against

me caused me irreparable harm, chilled my speech, and imposed illegal prior restraints on the

entirety of what my First Amendment rights were while I stood near the Broadway entrance to

City Hall and was otherwise inside of City Hall's building on 11/27/17.

7.       The illegal acts and omissions that were committed against me on 11/27/17 that caused

me to be prevented from accessing City Hall's building for more than 90 minutes after I arrived

at the NYPD guardhouse that is located just inside of the Broadway entrance to City Hall, attending and testifying in the Mayor's 11/27/17 public hearing, and continuing to lawfully assemble pursuant to my First Amendment and Fourteenth Amendment rights in the atrium area inside of City Hall's building on its first floor were driven by a desire to subject me to illegal viewpoint discrimination; what was then an ongoing campaign of illegal harassment, discrimination, segregation, selective-enforcement, abuse of process, and unequal treatment without a rational basis against me at public forums that the Mayor conducted that was based upon a longstanding and ongoing invidious discriminatory animus towards me.

8.     The liability of Defendants NYPD John Doe1 11/27/17, NYPD John Doe2 11/27/17, NYPD John Doe3 11/27/17, NYPD Jane Doe1 11/27/17, NYPD Jane Doe2 11/27/17, Redmond, de Blasio, O'Neill, Byrne, Jr., Shorris, Vance, Jr. for this claim stems from their role as co-conspirators in a conspiracy that violated my rights to attend public forums that the Mayor conducted as the part that the performed in that conspiracy was by not intervening on my behalf to enable me to attend public forums that the Mayor conducted after I apprised all of them that I was illegally prevented from attending public forums that the Mayor conducted by people that included members of the NYPD's mob. Relevant findings that support this assertion about their liability for this claim exist in the decisions that were issued in *US v. Blackmon*, 839 F.2d 900 (2d Cir. 1988), *Escalera v. Samaritan Village Men's Shelter*, No. 17-cv-4691 (CM) (S.D.N.Y. Sept. 27, 2019), *US v. Basey*, 816 F.2d 980 (5th Cir. 1987), *Vann v. City of New York*, 72 F.3d 1040 (2d Cir. 1995), *Pangburn v. Culberton*, 200 F.3d 65 (2d Cir. 1999), *Dunn v. City of Fort Valley,* No. 19-cv-287(TES) (M.D. Ga. May 19, 2020), *Henry v. Wyeth Pharmaceuticals, Inc.,* 616 F.3d 134 (2d Cir. 2010), and *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111 (2d Cir. 2000). Such findings partly address how a person or entity uses others as agents and proxies to

commit illegal acts for their benefit.

9.  In addition, Defendants City of New York, Cruz and Nieves are also liable for this cause of

    action in regards to the illegal acts and omissions that they committed against me on 9/8/17

    in relation to my efforts to have lawfully attended and testified in the Mayor's 2 pm public

    hearing on that date in the Blue Room in City Hall on account of the facts that I discussed in

    this complaint.

**CLAIM #2:**        **First Amendment Retaliation, Viewpoint Discrimination,**
                     **and Standardless Discretion in Denying Access to a Public Forum**

(Against Defendants City of New York, Cruz, Hansen, Nieves, Fowler, Dietrich, NYPD John
Doe1 11/27/17, NYPD John Doe2 11/27/17, NYPD John Doe3 11/27/17, NYPD Jane Doe1
11/27/17, NYPD Jane Doe2 11/27/17, Redmond, de Blasio, O'Neill, Byrne, Jr., Shorris, Vance,
Jr.)

1.  I incorporate by reference the information presented in the preceding paragraphs and attached

    exhibits as though fully set forth herein.

2.  The defendants that this claim concerns are liable for it due to the information that I

    presented in this complaint.

**CLAIM #3:**                        **Violations of the Fourth Amendment**

(Against Defendants City of New York, Cruz, Hansen, Nieves, Fowler, Dietrich, NYPD John
Doe1 11/27/17, NYPD John Doe2 11/27/17, NYPD John Doe3 11/27/17, NYPD Jane Doe1
11/27/17, NYPD Jane Doe2 11/27/17, Redmond, de Blasio, O'Neill, Byrne, Jr., Shorris, Vance,
Jr.)

1.  I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set

    forth herein.

2.  The defendants that this claim concerns are liable for it due to the information that I

    presented in this complaint.

3.  Defendants Cruz, Dietrich, Fowler, Hansen, Nieves, Redmond, NYPD John Doe1 11/27/17,

NYPD John Doe2 11/27/17, NYPD John Doe3 11/27/17, NYPD Jane Doe1 11/27/17, NYPD

Jane Doe2 11/27/17, and Shorris committed illegal acts and omissions against me on

11/27/17 by the Broadway entrance to City Hall and/or inside of City Hall's building that

impeded my movements to City Hall's building and additional areas in the atrium area on the

first floor inside of City Hall's building by demonstrating a show of authority toward me.

4. What I just discussed is supported by findings in *Dotson v. Farrugia*, No. Civ. 1126 (PAE)
(S.D.N.Y. Mar. 26, 2012) and *People v. Alba*, 81 A.D.2d 345, 440 N.Y.S.2d 230 (App. Div.
1981).


**CLAIM #4:**               <u>**Violations of the Fifth Amendment**</u>

(Against Defendants City of New York, Cruz, Hansen, Nieves, Fowler, Dietrich, NYPD John
Doe1 11/27/17, NYPD John Doe2 11/27/17, NYPD John Doe3 11/27/17, NYPD Jane Doe1
11/27/17, NYPD Jane Doe2 11/27/17, Redmond, de Blasio, O'Neill, Byrne, Jr., Shorris, Vance,
Jr.)

1. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set
forth herein.

2. The defendants that this claim concerns are liable for it due to the information that I
presented in this complaint.


**CLAIM #5:**               <u>**Violations of the Fourteenth Amendment**
**Substantive Due Process Rights**</u>

(Against Defendants City of New York, Cruz, Hansen, Nieves, Fowler, Dietrich, NYPD John
Doe1 11/27/17, NYPD John Doe2 11/27/17, NYPD John Doe3 11/27/17, NYPD Jane Doe1
11/27/17, NYPD Jane Doe2 11/27/17, Redmond, de Blasio, O'Neill, Byrne, Jr., Shorris, Vance,
Jr.)

1. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set
forth herein.

2. The defendants that this claim concerns are liable for it due to the information that I

presented in this complaint.

**CLAIM #6:**                **Violations of Procedural Due Process**

(Against Defendants City of New York, Cruz, Hansen, Nieves, Fowler, Dietrich, NYPD John Doe1 11/27/17, NYPD John Doe2 11/27/17, NYPD John Doe3 11/27/17, NYPD Jane Doe1 11/27/17, NYPD Jane Doe2 11/27/17, Redmond, de Blasio, O'Neill, Byrne, Jr., Shorris, Vance, Jr.)

1.  I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.  The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**CLAIM #7:**                **Violations of the Fourteenth Amendment**
**Equal Protection Rights**

**(Against Defendants City of New York, Cruz, Hansen, Nieves, Fowler, Dietrich, NYPD John Doe1 11/27/17, NYPD John Doe2 11/27/17, NYPD John Doe3 11/27/17, NYPD Jane Doe1 11/27/17, NYPD Jane Doe2 11/27/17, Redmond, de Blasio, O'Neill, Byrne, Jr., Shorris, Vance, Jr.)**

1.  I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.  The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**CLAIM #8:**                **Violations of the Fourteenth Amendment**
**Prohibitions Against Selective-Enforcement**

(Against Defendants City of New York, Cruz, Hansen, Nieves, Fowler, Dietrich, NYPD John Doe1 11/27/17, NYPD John Doe2 11/27/17, NYPD John Doe3 11/27/17, NYPD Jane Doe1 11/27/17, NYPD Jane Doe2 11/27/17, Redmond, de Blasio, O'Neill, Byrne, Jr., Shorris, Vance, Jr.)

1.  I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set

forth herein.

2. The defendants that this claim concerns are liable for it due to the information that I
   presented in this complaint.

**CLAIM #9:**  **Illegal Discrimination, Segregation, and Harassment**

(Against Defendants City of New York, Cruz, Hansen, Nieves, Fowler, Dietrich, NYPD John
Doe1 11/27/17, NYPD John Doe2 11/27/17, NYPD John Doe3 11/27/17, NYPD Jane Doe1
11/27/17, NYPD Jane Doe2 11/27/17, Redmond, de Blasio, O'Neill, Byrne, Jr., Shorris, Vance,
Jr.)

1. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set
   forth herein.

2. The defendants that this claim concerns are liable for it due to the information that I
   presented in this complaint.

**CLAIM #10:**  **Failure to Intervene in Violation of the
Fourteenth Amendment**

(Against Defendants City of New York, Cruz, Hansen, Nieves, Fowler, Dietrich, NYPD John
Doe1 11/27/17, NYPD John Doe2 11/27/17, NYPD John Doe3 11/27/17, NYPD Jane Doe1
11/27/17, NYPD Jane Doe2 11/27/17, Redmond, de Blasio, O'Neill, Byrne, Jr., Shorris, Vance,
Jr.)

1. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set
   forth herein.

2. The defendants that this claim concerns are liable for it due to the information that I
   presented in this complaint.

**CLAIM #11:**  **Failure to Train and Supervise**

**(Against Defendants City of New York, Cruz, Hansen, Nieves, Fowler, Dietrich, NYPD
John Doe1 11/27/17, NYPD John Doe2 11/27/17, NYPD John Doe3 11/27/17, NYPD Jane
Doe1 11/27/17, NYPD Jane Doe2 11/27/17, Redmond, de Blasio, O'Neill, Byrne, Jr.,
Shorris, Vance, Jr.)**

1. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2. The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**CLAIM #12:**        **Violation of the New York State's Open Meetings Law**

(Against Defendants City of New York, Cruz, Hansen, Nieves, Fowler, Dietrich, NYPD John Doe1 11/27/17, NYPD John Doe2 11/27/17, NYPD John Doe3 11/27/17, NYPD Jane Doe1 11/27/17, NYPD Jane Doe2 11/27/17, Redmond, de Blasio, O'Neill, Byrne, Jr., Shorris, Vance, Jr.)

1. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2. Both the Mayor's 11/27/17 public hearing and public hearings that the City Council conducted on 11/27/17 inside of City Hall's building during the period in which I was illegally prevented from accessing City Hall's building on that date were public forums during which public business was conducted by the government officials who conducted those meetings.

3. The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**CLAIM #13:**                **Abuse of Process**

(Against Defendants City of New York, Cruz, Hansen, Nieves, Fowler, Dietrich, NYPD John Doe1 11/27/17, NYPD John Doe2 11/27/17, NYPD John Doe3 11/27/17, NYPD Jane Doe1 11/27/17, NYPD Jane Doe2 11/27/17, Redmond, de Blasio, O'Neill, Byrne, Jr., Shorris, Vance, Jr.)

1. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2. The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

## CLAIM #14:  <u>Fraudulent Misrepresentation and Fraudulent Inducement</u>

(Against Defendants City of New York, Cruz, Hansen, Nieves, Fowler, Dietrich, NYPD John Doe1 11/27/17, NYPD John Doe2 11/27/17, NYPD John Doe3 11/27/17, NYPD Jane Doe1 11/27/17, NYPD Jane Doe2 11/27/17, Redmond, de Blasio, O'Neill, Byrne, Jr., Shorris, Vance, Jr.)

1. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2. The public notice that was issued for the Mayor's 11/27/17 public hearing explicitly indicated that it was a public hearing as did the public notices that were issued for the public hearings that the City Council conducted on 11/27/17 inside of City Hall. Those notices didn't indicate that illegal acts and omissions would be committed against me on 11/27/17 that would prevent me from being able to lawfully attend them. That fact and omission sufficiently establishes that this claim about fraudulent misrepresentation and fraudulent inducement is entirely valid because those public notices fraudulently induced me to try to lawfully attend those public hearings on 11/27/17 before I was illegally prevented from doing so by members of the NYPD's criminal mob.

3. The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

## CLAIM #15:  <u>Violation of New York State General Business Law 349</u>

(Against Defendants City of New York, Cruz, Hansen, Nieves, Fowler, Dietrich, NYPD John Doe1 11/27/17, NYPD John Doe2 11/27/17, NYPD John Doe3 11/27/17, NYPD Jane Doe1 11/27/17, NYPD Jane Doe2 11/27/17, Redmond, de Blasio, O'Neill, Byrne, Jr., Shorris, Vance, Jr.)

1. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2. The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.


**CLAIM #16:**                                    **Negligence**

(Against Defendants City of New York, Cruz, Hansen, Nieves, Fowler, Dietrich, NYPD John Doe1 11/27/17, NYPD John Doe2 11/27/17, NYPD John Doe3 11/27/17, NYPD Jane Doe1 11/27/17, NYPD Jane Doe2 11/27/17, Redmond, de Blasio, O'Neill, Byrne, Jr., Shorris, Vance, Jr.)

1. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2. The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.


**CLAIM #17:**                                **Municipal Liability**

(Against Defendant City of New York)

1. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2. I have established in this complaint that unofficial illegal policies, customs, and practices of the City of New York that had the force of law were committed against me on 11/27/17 in relation to my efforts to have **a)** attended and testified in the Mayor's 11/27/17 public hearing, **b)** attended public hearings that the City Council conducted inside of City Hall on 11/27/17 while I was instead illegally prevented from accessing City Hall's building by members of the NYPD's criminal mob, and **c)** continued to lawfully assemble in the atrium area inside of City Hall's building on 11/27/17 in accordance with my First Amendment and

Fourteenth Amendment rights, and **d)** otherwise accessed City Hall's building on 11/27/17

without being subjected to illegal and unreasonable interference in violation of my

constitutional rights and other applicable laws through the illegal acts and omissions that

Defendants City of New York, Cruz, Hansen, Nieves, Fowler, Dietrich, NYPD John Doe1

11/27/17, NYPD John Doe2 11/27/17, NYPD John Doe3 11/27/17, NYPD Jane Doe1

11/27/17, NYPD Jane Doe2 11/27/17, Redmond, de Blasio, O'Neill, Byrne, Jr., Shorris,

Vance, Jr. committed against me individually and as part of a collaborative conspiracy in

furtherance of an abuse of process that was designed to violate my civil rights and tacitly

condone such abuse against me.

3.   The unofficial illegal policies, customs, and practices that had the force of law and were

committed against me on 11/27/17 that this action concerns were inextricably intertwined

with similar illegal acts and omissions that were committed against me that prevented me

from attending earlier public forums that the Mayor conducted since 4/27/17 and subsequent

public forums that the Mayor conducted that occurred most recently on 3/18/19. All of that

was also inextricably intertwined with similar illegal acts and omissions that were committed

against me that prevented me from:

    a.   Accessing City Hall's building on 1/8/18 due to illegal acts and omissions that NYPD

        Officer Lee (shield #: 544) committed against me on that date at the Broadway

        entrance to City Hall by not allowing me to walk past the NYPD guardhouse at that

        location to City Hall's building to attend and testify in a public hearing that the

        Mayor conducted in the Blue Room inside of City Hall's building while I was

        conducting myself lawfully.

    b.   Accessing City Hall's building on 11/13/19 due to illegal acts and omissions that

Rafael Perez of the City Council's security team and NYPD Officer Lin (shield #: 25714) committed against me on that date at the Broadway entrance to City Hall by not allowing me to walk past the NYPD guardhouse at that location to City Hall's building while I was conducting myself lawfully.

c. Remotely participating in public hearings that the Mayor conducted in 2020 during the ongoing coronavirus pandemic.

**CLAIM #18:**      **Intentional and Negligent Infliction of Emotional Distress**

(Against Defendants City of New York, Cruz, Hansen, Nieves, Fowler, Dietrich, NYPD John Doe1 11/27/17, NYPD John Doe2 11/27/17, NYPD John Doe3 11/27/17, NYPD Jane Doe1 11/27/17, NYPD Jane Doe2 11/27/17, Redmond, de Blasio, O'Neill, Byrne, Jr., Shorris, Vance, Jr.)

1. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2. The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**CLAIM #19:**               **Conspiracy to Violate Civil Rights**

(Against Defendants City of New York, Cruz, Hansen, Nieves, Fowler, Dietrich, NYPD John Doe1 11/27/17, NYPD John Doe2 11/27/17, NYPD John Doe3 11/27/17, NYPD Jane Doe1 11/27/17, NYPD Jane Doe2 11/27/17, Redmond, de Blasio, O'Neill, Byrne, Jr., Shorris, Vance, Jr.)

1. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2. The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**CLAIM #20:**                 <u>**Unjust Enrichment**</u>

(Against Defendants City of New York, Cruz, Hansen, Nieves, Fowler, Dietrich, NYPD John Doe1 11/27/17, NYPD John Doe2 11/27/17, NYPD John Doe3 11/27/17, NYPD Jane Doe1 11/27/17, NYPD Jane Doe2 11/27/17, Redmond, de Blasio, O'Neill, Byrne, Jr., Shorris, Vance, Jr.)

1. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2. The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

**CLAIM #21:**                 <u>**Public and Private Nuisance**</u>

(Against Defendants City of New York, Cruz, Hansen, Nieves, Fowler, Dietrich, NYPD John Doe1 11/27/17, NYPD John Doe2 11/27/17, NYPD John Doe3 11/27/17, NYPD Jane Doe1 11/27/17, NYPD Jane Doe2 11/27/17, Redmond, de Blasio, O'Neill, Byrne, Jr., Shorris, Vance, Jr.)

1. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2. The defendants that this claim concerns are liable for it due to the information that I presented in this complaint.

<u>**DEMAND FOR A JURY TRIAL**</u>

1. I demand a trial by jury in this action on each and every one of my damage claims.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, this Court should accept jurisdiction over this entire matter and grant me additional relief by:

1.       Causing this Court to exercise supplemental jurisdiction over K1, K3, K4, K5, K6, K7, K8, K9, K10 before then consolidating them with this action that will result in having this action

to control how all of that litigation is conducted. This request stems from a common nucleus of operative fact and is pursuant to FRCP Rule 42.

2.      Empaneling a jury to hear and decide this case strictly on its merits.

3.      Granting me the following additional relief against the defendants individually and jointly:

      a.      Compensation for violations of my constitutional rights, abuse of process, nuisance, unjust enrichment, discrimination, segregation, abuse of process, wire fraud, and fraudulent misrepresentations as well as pain, suffering, mental anguish, and humiliation that I experienced due to the illegal acts and omissions by the defendants. The public notice that was issued for the Mayor's 11/27/17 public hearing was made available on the Internet electronically. The fact that public notice fraudulently omitted the material fact that I would be illegally prevented from attending it sufficiently establishes a wire fraud claim that my claims about fraudulent misrepresentation and fraudulent inducement concern.

      b.      Declaratory, injunctive, and equitable relief in accordance with findings expressed in *Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899 (8th Cir. 2012) through the issuance of an order that enjoins Defendant City's personnel and agencies from continuing to commit illegal acts and omissions against me that violate my rights.

      c.      Further declaratory, injunctive, and equitable relief through the immediate issuance of an order that:

            i.      Prohibits all members of the NYPD from deliberately making any physical contact with me while I am conducting myself in a lawful manner.

            ii.      Requires all members of the Mayor's NYPD security detail to not come within 10 feet from me while they are on-duty as members of the Mayor's NYPD security

detail and I am conducting myself in a lawful manner, unless I explicitly grant consent for that to occur.

iii.     Requires all members of the Mayor's CAU to not come within 10 feet from me while I am conducting myself in a lawful manner and they are on-duty as members of the Mayor's CAU, unless I explicitly grant consent for that to occur.

iv.     Prohibits Defendant City's personnel from illegally interfering with my ability to attend public forums that the Mayor may conduct from within the room in which he does so as he does so.

v.     Prohibits Defendant City's personnel from initiating physical contact with people in New York City as they peacefully assemble on sidewalks, in parks, and all other public areas in New York City where they have a First Amendment and Fourteenth Amendment right to assemble.

vi.     Bans a practice that is known as "kettling" that the NYPD uses against groups of people that flagrantly violates Fourth Amendment, First Amendment, and Fourteenth Amendment rights by severely restricting their ability to freely move about.

vii.     Prohibits Defendant City's personnel from illegally interfering with the rights that other people have to lawfully attend public forums that the Mayor conducts that may allow others and I to exercise our First Amendment right to observe, hear, and enjoy lawful speech and other expression that such people may engage in to criticize the Mayor and others during them.

viii.     Prohibits Defendant City's personnel from illegally interfering with the First Amendment and Fifth Amendment rights that people have to **a)** bring literature

and signs with them into rooms in which the Mayor conducts public forums, **b)** lawfully distribute such literature during those meetings without disrupting those meetings, **c)** distribute such literature and otherwise show it and signs in the rooms in which the Mayor conducts such meetings before they begin and after they end, and **d)** Keep such literature and signs with them as the Mayor conducts such public forums.

ix.   Requires Defendant City to grant access to public forums that the Mayor conducts inside of buildings based on the order in which members of the public line up directly outside of those buildings shortly before those meetings begin to be granted access to the room in which the Mayor conducts such public forums on those dates.

x.   Prohibits Defendant City from allowing its personnel to prevent members of the public from attending public forums that the Mayor conducts inside of buildings from within the rooms in which he does so while sufficient seating is available in those rooms.

xi.   Orders Defendant City to immediately cause all members of the NYPD who are present in areas where the Mayor conducts public town hall meetings, public resource meetings, public hearings, and press conferences that the public may observe to wear body-cameras that are always on and always recording both audio and video recordings.

xii.   Orders Defendant City of New York to provide all audio and video recordings from such body-cameras in unedited and non-redacted form along with their audit trail records to allow for an independent forensic analysis within 24 hours of any

adverse encounter that occurs between **a)** members of the public and **b)** the members of the NYPD wearing those body-cameras.

xiii.   Orders Defendant City to immediately cause clear audio recordings to be recorded of all verbal communications that members of the NYPD have while they are on-duty as members of the NYPD and present in areas where the Mayor conducts public town hall meetings, public resource meetings, public hearings, and press conferences that the public may observe.

xiv.   Orders Defendant City of New York to provide all such audio recordings in unedited and non-redacted form that includes information that identifies the date and time when those recordings began to be recorded as well as the speakers heard in those communications that are personnel of Defendant City within 24 hours of any adverse encounter that occurs between **a)** members of the public and **b)** the members of the NYPD heard in those audio recordings while they are being recorded.

xv.   Orders Defendant City to immediately cause all other electronic communications (such as e-mail messages, cell phone text messages, and encrypted communications) that are engaged in by those who are part of the Mayor's NYPD security detail to be recorded and preserved for possible use in litigation by people that they commit illegal acts and omissions against.

xvi.   Orders Defendant City to provide all such electronic communications within 24 hours in unedited and non-redacted form that includes information that identifies the date and time when those communications occurred and the identities of those who engaged in them to members of the public who have adverse encounters with

members of the Mayor's NYPD security detail to the extent that those communications concern those adverse encounters.

xvii.   Orders Defendant City to provide me copies of all communications that its personnel have had about me since 2/1/16 in unedited and non-redacted form. This includes, but is not limited to all of the following:

1)   All communications that have taken place by using personally-owned devices, personal e-mail accounts, personal encrypted messaging accounts, and personal cell phone plans as well as by using computers and other devices that are owned or leased by Defendant City and e-mail, cell phone, and encrypted messaging accounts that are administered and/or controlled by Defendant City.

d.   Further declaratory, injunctive, and equitable relief through the immediate issuance of an order that:

i.   Orders Defendant City to immediately cause the CCRB and DOI to be provided all video recordings within 24 hours after a complaint is reported to them about illegal acts and omissions that are committed by members of the NYPD and other personnel of Defendant City that are recorded by video security cameras that Defendant City controls. This includes, but is not limited to illegal acts that are related to public forums that the Mayor conducts and occur on the dates and at the locations where the Mayor conducts them.

ii.   Further orders Defendant City to make those video recordings available within 24 hours in unedited and non-redacted form to those who report such illegal acts and

omissions to the CCRB and DOI.

iii.   Orders that the following Defendants are also required to be fired at the earliest

possible instead of practical or convenient time from the jobs that they hold with

Defendant City of New York largely pursuant to Section 1116 of the New York

City Charter in response to the illegal acts and omissions that they committed

against me in relation to my claims in this action and that they are prohibited from

being employed by Defendant City again:

> Cruz, Hansen, Nieves, Fowler, Dietrich, NYPD John Doe1 11/27/17,
> NYPD John Doe2 11/27/17, NYPD John Doe3 11/27/17, NYPD Jane
> Doe1 11/27/17, NYPD Jane Doe2 11/27/17, Redmond, de Blasio, O'Neill,
> Byrne, Jr., Shorris, and Vance, Jr.

iv.   Orders the following defendants to immediately and fully reimburse the City of

New York with pre-judgment and post-judgment interest for the total value of pay

and benefits that they received that directly correspond to the length of time

during which they were involved in committing the illegal acts and omissions

against me that my claims in this action concern:

Cruz, Hansen, Nieves, Fowler, Dietrich, NYPD John Doe1 11/27/17, NYPD John
Doe2 11/27/17, NYPD John Doe3 11/27/17, NYPD Jane Doe1 11/27/17, NYPD
Jane Doe2 11/27/17, Redmond, de Blasio, O'Neill, Byrne, Jr., Shorris, and Vance,
Jr.

v.   Restrains Defendant City's personnel and agencies from continuing to commit

illegal acts and omissions against me that violate my rights, especially in all areas

that are public forums.

vi.   Restrains the City of New York from allowing the NYPD to provide more

security and law-enforcement that would benefit members of the press in public

forums and other public areas than what members of the NYPD extended to me

on 11/27/17 in relation to my claims that this action concerns on the grounds that such greater security and law-enforcement would violate my Fourteenth Amendment rights that pertain to selective-enforcement, equal protection, due process, and discrimination.

vii.    Declares that the ban that the Mayor announced that prohibits large gatherings of people in New York City and protests from being conducted is overly broad, pretextual, void, and unenforceable largely because it impermissibly violates core First Amendment rights as well as Fifth Amendment and Fourteenth Amendment rights that pertain to due process, selective-enforcement, equal protection, and liberty.

viii.    Further declares that though it may possibly be advisable to wear a face mask in New York City, no one is required to do so partly because **a)** members of the NYPD are not themselves wearing face masks outside and **b)** doing so impedes the flow of oxygen to healthy people and impermissibly infringes upon the First Amendment rights that people have to engage in freedom of expression, such as by having people see them smiling, expressing affection by kissing, being able to yawn without having to wear a face mask, and having other facial expressions that they make seen by others. Although it is potentially dangerous to one's health to engage in a wide variety of other activities that include driving a car because of the possibility that a drunk driver may pass by and having a drink in a bar because there is a possibility to breathe in second-hand smoke, bans on driving and visiting bars have not been imposed due to such risk factors.

ix.    Similarly declares that the social-distancing restrictions in New York State are

overly broad, void, and unenforceable for the same reasons just discussed and

declares that those restrictions have been selectively-enforced by the NYPD in

violation of the Fourteenth Amendment.

e.      Declaratory relief by declaring that the Mayor's 11/27/17 public hearing and all

public hearings that the City Council conducted inside of City Hall's building on 11/27/17

while I was being illegally prevented by members of the NYPD from accessing City Hall's

building were public forums that were subject to New York State's Open Meetings Law and

that all actions that were taken in relation to those public hearings are void pursuant to

Section 107 of New York State's Public Officer Law because those public hearings were

conducted in violation of New York State's Open Meetings Law.

f.      Injunctive and equitable relief by ordering Defendant City to immediately provide me

the following in unedited and non-redacted form:

   i.      Copies of all video recordings and photographs that were recorded and otherwise

            taken on 11/27/17 of me and those I interacted with and otherwise passed by me

            near me by **a)** video security cameras controlled by the NYPD and **b)** Defendant

            City's personnel between where I initially stood on 11/27/17 **c)** in close proximity

            to the NYPD guardhouse that is located just inside of the Broadway entrance to

            City Hall and **d)** inside of City Hall's building.

   ii.     Copies of all other video recordings and photographs that were recorded and

            otherwise taken on 11/27/17 of me while I was on City Hall's property hearing by

            **a)** video security cameras controlled by the NYPD and **b)** Defendant City's

            personnel.

   iii.    Copies of all video recordings and photographs that were recorded and otherwise

taken on 11/27/17 inside of the Blue Room inside of City Hall during the Mayor's 11/27/17 public hearing by **a)** video security cameras controlled by the NYPD and **b)** Defendant City's personnel.

iv.   Copies of all video recordings and photographs that were recorded and otherwise taken on 11/27/17 in the area that is located immediately outside of the Blue Room inside of City Hall as people entered it to attend the Mayor's 11/27/17 public hearing and exited it after that hearing ended by **a)** video security cameras controlled by the NYPD and **b)** Defendant City's personnel.

v.   Copies of all records that have been in the possession of Defendant City's personnel that pertain to the deliberations, planning, coordination, execution, and cover-up that took place in regards to my having been illegally:

1.   Prevented from attending the Mayor's 11/27/17 public hearing.

2.   Prevented from accessing City Hall's building on 11/27/17.

3.   Prevented from being able to continue to lawfully assemble in the atrium area inside of City Hall on its first floor on 11/27/17.

vi.   Copies of all records that have been in the possession of Defendant City's personnel and agencies that identify the members of the press who **a)** attended the Mayor's 11/27/17 public hearing, **b)** attended public hearings that the City Council conducted on 11/27/17 while I was prevented by members of the NYPD from accessing City Hall's building, and **c)** were otherwise inside of City Hall's building and/or otherwise on City Hall's property on 11/27/17 while I was being illegally prevented from accessing City Hall's building on that date.

g.   Injunctive and equitable relief by ordering Defendant City of New York to

immediately provide me all video recordings as an ".avi", ".mp4", or ".mov" computer file that were recorded on 2/19/20 by all video security cameras that were installed in the school and are controlled by DOE that hosted the town hall meeting that the Mayor conducted on that date between the times when the first member of the public was allowed into that school for the purpose of attending that town hall until everyone who attended that town hall exited that school.

h.       Compensation for all costs and attorney fees that are related to my pursuit of this civil action.

i.       Equitable and injunctive relief that authorizes me and others that I may ask to help me to paint, write, or draw any message or image of any size indefinitely throughout New York City without needing pre-approval from anyone on any public street, sidewalk, public passageway, concourse, and park indefinitely by using resources that will be provided to me by the City of New York for that purpose. This will partly offset the fact that I was illegally prevented from attending and testifying in the Mayor's 11/27/17 public hearing and how that circumstance illegally prevented me from being able to use that public forum and the video recording that the Mayor's Office arranged to be recorded of it that is available on the Internet to express views that I then sought to share with the public about the Mayor, NYPD, and others.

j.       Equitable and injunctive relief that orders the City of New York to cause its NYPD to accord whatever messages and images that I may paint, write, or draw in public areas throughout New York City to receive equal law-enforcement protection that is accorded to Black Lives Matter signs on streets in New York City, especially the one located in front of Trump Tower in Manhattan.

k.      An award of damages against the following defendants pursuant to 18 U.S.C. §1986

for having not intervened on my behalf in relation to my effort to have attended and testified

in the Mayor's 11/27/17 public hearing, attended public hearings that the City Council

conducted inside of City Hall on 11/27/17 while I was illegally prevented from accessing

City Hall's building, and continued to lawfully assemble in the atrium area inside of City

Hall on 11/27/17, and otherwise access public areas on City Hall's property: on 11/27/17

while I was being illegally prevented from accessing City Hall's building:

> Cruz, Hansen, Nieves, Fowler, Dietrich, NYPD John Doe1 11/27/17, NYPD John Doe2
> 11/27/17, NYPD John Doe3 11/27/17, NYPD Jane Doe1 11/27/17, NYPD Jane Doe2
> 11/27/17, Redmond, de Blasio, O'Neill, Byrne, Jr., Shorris, and Vance, Jr.

l.      An award of damages against the following defendants pursuant to New York State

General Business Law §349 for deception in relation to my efforts to have attended and

testified in the Mayor's 11/27/17 public hearing meeting and otherwise exercised my

constitutional rights on 11/27/17 on City Hall's grounds and within City Hall's building in

the areas that I have already identified in this complaint with respect to how those defendants

conducted themselves as criminal accomplices instead of the law-enforcement personnel that

they technically were on 11/27/17:

> Cruz, Hansen, Nieves, Fowler, Dietrich, NYPD John Doe1 11/27/17, NYPD John
> Doe2 11/27/17, NYPD John Doe3 11/27/17, NYPD Jane Doe1 11/27/17, NYPD Jane
> Doe2 11/27/17, Redmond, O'Neill, Byrne, Jr., and Vance, Jr.

m.      An award of punitive damages for all of my claims set forth in this pleading.

n.      An award of pre-judgment and post-judgment interest.

o.      Equitable and injunctive relief that orders the City of New York to remove all

obstructions from public sidewalks, public streets, public parks, and public concourses that

include traditional public forums within 24 hours that the NYPD and Mayor's office has set

up and otherwise allowed to exist on them and to not setup such obstructions again in such

public areas nor otherwise allow them to exist on and in them without prior approval by this

Court. The existence of such obstructions on sidewalks violates New York City

Administrative Code §16-122(b). Also, such obstructions impermissibly infringe upon and

otherwise burden the First Amendment rights that people have to lawfully walk, bicycle, and

otherwise freely move about and congregate in such areas – especially on sidewalks and in

parks that are traditional public forums – while some who seek to do so may have various

disabilities that include blindness and physical ailments. Allowing such obstructions to exist

on public sidewalks, in public streets, in public parks, and on public concourses in New York

City is clearly inequitable and quite literally an insult to injury with respect to my claims in

this action that largely concern illegal acts and omissions that were committed against me

while no pandemic existed in New York City that prevented me from lawfully attending

public forums. It is patently inequitable to my countervailing interest and ability to lawfully

exercise my constitutional rights on public sidewalks and in parks to be curtailed by the

NYPD and Mayor's administration during the ongoing Coronavirus pandemic to

accommodate such things as outdoor dining after the NYPD and Mayor's administration

flagrantly, willfully, criminally, and repeatedly violated my constitutional rights to lawfully

attend public forums inside of buildings that the Mayor and other government officials

conducted. In the same way that I took a risk that I would be illegally prevented from

lawfully attending such public forums that the Mayor conducted while no pandemic existed

in New York City as I visited the sites where those public forums were conducted on the

dates when they were conducted, the owners of restaurants and other businesses that would

benefit by being able to expand their operations on public sidewalks and in public parks in

New York City at the expense of my First Amendment, Fifth Amendment, and Fourteenth Amendment rights to freely make use of all areas on such public sidewalks and public parks that are traditional public forums took a risk that circumstances beyond their control would possibly arise that would materially and repeatedly disrupt their ability to operate their businesses. A reasonable, equitable, and creative accommodation may be made for owners of businesses that wish to conduct their operations outside by having this Court order the immediate bulldozing of City Hall; the NYPD headquarters, precincts, and training facilities, and Gracie Mansion to allow such businesses to promptly expand their operations on account of the fact that those locations have been the primary sanctuaries of mobsters dressed as government officials and members of the NYPD that committed illegal acts and omissions that rigged and stole the 2017 New York City government elections through voter suppression, voter fraud, whistleblower retaliation, and terrorism that persists against New Yorkers.

p.      Equitable relief that will have this Court adopt the practice in _USA v. Donziger_, No. 11-cv-0691(LAK)(RWL)(S.D.N.Y.) to similarly appoint private prosecutors to commence criminal prosecutions against the defendants that this action concerns in response to criminal acts and omissions that they committed and/or condoned against me that are addressed in this complaint to remedy the fact that prosecutors have negligently refused to do so.

q.      Orders the City of New York to immediately implement a procedure by which all members of the public can obtain free, unedited, and non-redacted copies of all video recordings within 48 hours after they are recorded by video security cameras that are controlled by the NYPD that will begin in the next 7 calendar days for which the following relevant facts apply to befit the public's interest in government transparency, accountability,

being accorded proper due process while testifying in public hearings and otherwise talking

with government officials, and having a means with which to measure the extent to which **a)**

due process is and isn't accorded to members of the public during such interactions members

of the news media inappropriately and consistently censor those who testify in public

hearings that aids and abets greater societal ills that include terrorism by the NYPD, voter

suppression, whistleblower retaliation, viewpoint discrimination, and voter fraud:

     i.   Such video recordings to be made available to the public within 48 hours include those that are recorded inside of City Hall's building in all areas in which public hearings are conducted as well as all other public areas inside of City Hall's building.

     ii.   Such video recordings to be made available to the public within 48 hours include those that are recorded by all video security cameras of those areas by video security cameras that are controlled by the NYPD.

     iii.   Such video recordings to be made available to the public within 48 hours also include those that are recorded outside of and in the immediate vicinity of City Hall's building of the property of City Hall for all areas of that property.

     iv.   Such video recordings to be made available to the public within 48 hours include those that are recorded by all video security cameras of the areas just discussed by video security cameras that are controlled by the NYPD.

     v.   Such video recordings to be made available to the public within 48 hours also include those that are recorded of all areas of the sidewalks and other passageways and walkways that immediately surround City Hall's property.

     vi.   Such video recordings to be made available to the public within 48 hours

include those that are recorded by all video security cameras of the areas just discussed by video security cameras that are controlled by the NYPD.

vii.    Such video recordings to be made available to the public within 48 hours must be made available as types of video recordings that that have the file extension of ".mp4", ".avi", and ".mov" that can readily be played back on computers that run the operating systems for Windows and Macintosh computers without the need for special software to do so.

viii.   Such video recordings to be made available to the public within 48 hours must include information in them that show the date and time when they were recorded.

r.    Restrains the City of New York from transferring the NYPD's authority to issue and revoke press credentials to another entity within Defendant City's government.

s.    Immediately revokes the NYPD's authority to issue and revoke press credentials and empowers me and a group of other whistleblowers who are independent of the influence of both **a)** Defendant City and **b)** alleged news organizations to act in the NYPD's place to determine who will and will not have press credentials issued to them as well as those who will have their existing press credentials revoked to befit the public's interest in transparency, government accountability, and inappropriate and complicit censorship by the press that aids and abets societal ills within an illegitimate, corrupt, and dysfunctional government.

t.    Declares that New York City has proven to be and remains an anarchist jurisdiction largely because of illegal acts and omissions that the defendants in this action criminally perpetrated in New York City in relation to the constitutional rights that people have to lawfully attend and participate in public forums in New York City.

u.      Declares that all restrictions that have been established in New York City by New York State Governor Andrew Cuomo. Defendant de Blasio, and the NYPD that restrict peaceful **a)** protesting and demonstrating activities outdoors and indoors and **b)** gatherings of people indoors and outdoors for other purposes that may possibly include obtaining information from witnesses and formulating plans to establish a class-action lawsuit against the City of New York in relation to this case and related litigation that I commenced impermissibly violate the First Amendment, are overly broad, is clear standardless discretion, are an unlawful prior restraint on First Amendment rights, are being selective-enforced in violation of the Fourteenth Amendment, and are void.

v.      Injunctive and equitable relief by ordering Defendant City to immediately provide me within 24 hours all "Unusual Occurrence Reports" and related reports that members of the NYPD were required to complete in relation to the illegal acts and omissions that they committed against me that pertain to my claims in this action on City Hall's grounds on 11/27/17 between the time that I arrived at the NYPD guardhouse that is located just inside of the Broadway entrance to City Hall and thereafter left the area by City Hall on 11/27/17.

w.      Orders the City of New York to immediately close the buildings in which New York City's Housing Courts operate that the City of New York maintains until 60 days after the following occurs:

      i.      All New York City public libraries have fully re-opened to allow all members of the public to use the Internet access and other resources that such libraries make available that would be of benefit to pro se litigants who need Internet access and may not otherwise have that with which to:

           1.      Engage in legal research and prepare legal papers to properly prepare

for legal proceedings assigned to New York City's housing courts.

2. Search for and apply for employment opportunities.

3. Stay abreast of news pertaining to the coronavirus and how best to take
   care of themselves, their families, and friends to stay healthy during
   the ongoing coronavirus pandemic.

4. Engage in research to make contingency plans about housing and other
   matters.

5. Stay abreast of news that directly impacts their life.

x.      Orders the City of New York to immediately cause City Hall's building and the entire
grounds of City Hall to be immediately cleared of all people who occupy them for the entire
duration during which members of the public are prevented from assembling on City Hall's
grounds and inside of City Hall's building to uphold First Amendment and Fourteenth
Amendment rights in response to situations that may continue to arise in which members of
the public are prevented from accessing City Hall's grounds and City Hall's building without
an objectively valid reason while such members of the public are conducting themselves
lawfully and have a constitutional right to access those grounds and/or City Hall's building.

y.      Such other, further, and different relief as the interests of justice and equity may
require.


Dated:        New York, New York
              November 6, 2020

                                                From,


                                                s_/Towaki Komatsu

                                                *Plaintiff, Pro Se*

802 Fairmount Pl., Apt. 4B
Bronx, NY 10460
(347) 872-1205
Towaki_Komatsu@yahoo.com