**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------------- X

Towaki Komatsu,

                           Plaintiff,

        -vs-

The City of New York, Shauna Stribula, Harold Miller, Pinny Ringel,
NYPD Officer Baez (shield #: 5984), Marco Carrion, Dustin Ridener,
NYPD Inspector Howard Redmond, NYPD John Doe1 11/30/17, NYPD
John Doe3 11/30/17, NYPD John Doe2 11/30/17, Bill de Blasio,
Lawrence Byrne, Jr., James O'Neill, Jessica Ramos, Anthony Shorris,
Cyrus Vance, Jr., Rory Lancman,

- All of the defendants listed above who are people are being sued in
  their individual and official capacities,

                        Defendants.

-------------------------------------------------------------------------------- X

**Case No.:**
20-cv-09354

**FIRST AMENDED**
**COMPLAINT**

**JURY DEMAND**

# **TABLE OF CONTENTS**

I.    Preliminary Remarks ........................................................................... 3

II.    Jurisdiction and Venue ........................................................................ 11

III.    Parties ................................................................................................... 12

IV.    Background Facts ................................................................................. 23

V.    Legal Standards ................................................................................... 30

VI.    Statement of Facts ............................................................................... 39

VII.    Causes of Action ................................................................................. 47

VIII.    Jury Demand ........................................................................................ 59

IX.    Prayer for Relief ................................................................................. 59

Plaintiff Towaki Komatsu (hereinafter referred to in the first-person as "I", "me", and "my"), proceeding pro se in this action, does hereby state and allege all that follows in this pleading.

## PRELIMINARY REMARKS

1.    The following applies throughout this complaint in the interests of brevity:

    a.    Acronyms and aliases in the second column of the following table will be used throughout this pleading instead of the entries in the third column to which they correspond:

| # | Abbreviation | Corresponds To |
|---|---|---|
| 1 | ACLU | American Civil Liberties Union |
| 2 | CCRB | New York City Civilian Complaint Review Board |
| 3 | City Council | New York City Council |
| 4 | City Hall email excerpts | Excerpts from a 374-page PDF file that I was provided on 2/15/19 by the New York City Mayor's office in response to a Freedom of Information Law demand that I submitted to it. Those excerpts correspond to e-mail messages that appear on pages 211 212, and 361 thru 374 in that file. Information shown on those pages was provided to me with redactions. Copies of e-mail messages about me that were sent 4/10/17, 6/28/17, and 6/29/17 appear on those pages. Those e-mail messages partly concern litigation that I commenced against the New York City Human Resources Administration ("HRA") in which I was then involved that are closely related to my claims in this action. Senior members of the New York City Mayor's administration and the head of the Mayor's NYPD security detail (Defendant Redmond) sent those e-mail messages to HRA Commissioner Steven Banks and amongst themselves. Those excerpts are available in a PDF file that is available on the Internet at https://drive.google.com/file/d/16wSpJ7kk-aOtx7Bkg8MeqUpyWd5Io2hR/view?usp=sharing |
| 5 | Defendant City | Defendant City of New York |
| 6 | DHS | New York City Department of Homeless Services |
| 7 | DOE | New York City Department of Education |
| 8 | DOI | New York City Department of Investigations |
| 9 | DSS | New York City Department of Social Services |
| 10 | FRCP | Federal Rule of Civil Procedure |

| 11 | HRA | New York City Human Resources Administration |
|---|---|---|
| 12 | K1 | The related federal lawsuit that I commenced against the City of New York, Defendant Nieves, and others in April of 2018 that corresponds to the ongoing case of _Komatsu v. City of New York_, No. 18-cv-3698 (LGS)(GWG)(S.D.N.Y.) that my claims in this case relate back to and amplify. The judges in that case refused to grant me sufficient time to file a further amended complaint in that case that would have otherwise enabled me to assert my claims in that case instead of in this case. In fact, Judge Lorna Schofield explicitly directed me to instead commence a new civil action for additional claims that I sought to assert in that case. |
| 13 | The Mayor | New York City Mayor Bill de Blasio |
| 14 | Mayor's 4/27/17 town hall | The public town hall meeting that members of the public conducted in a collaborative manner with the Mayor, Mr. Banks, New York City Councilman Jimmy Van Bramer, and other government officials as a mostly traditional public forum on 4/27/17 in Long Island City in Queens that was subject to New York State's Open Meetings Law and was used a campaign event to support the Mayor's re-election interests that I was illegally barred from attending while I had active litigation against HRA. |
| 15 | Mayor's 5/23/17 resource fair | The public resource fair meeting that members of the public conducted in a collaborative manner with the Mayor, Mr. Banks, and other government officials as a mostly traditional public forum on 5/23/17 inside of the Bronx Supreme Court. That public forum was subject to New York State's Open Meetings Law and I was illegally barred from attending it while I had active litigation against HRA that included claims about being illegally barred from public forums that the Mayor and Mr. Banks conducted. |
| 16 | Mayor's 10/18/17 town hall | The public town hall meeting that members of the public conducted in a collaborative manner with the Mayor, Mr. Banks, New York City Councilwoman Stephen Levin, and other government officials as a mostly traditional public forum on 10/18/17 at 180 Remsen Street in Brooklyn. That public forum was subject to New York State's Open Meetings Law |

| 17 | Mayor's 10/25/17 resource fair | The public resource meeting that members of the public conducted in a collaborative manner with the Mayor, Mr. Banks, and other government officials as a traditional public forum on 10/25/17 at Brooklyn College that is located at 2705 Campus Road in Brooklyn. That public forum was subject to New York State's Open Meetings Law. I was illegally barred from attending that public forum by Defendant Redmond and others while I continued to have active litigation against HRA. |
|---|---|---|
| 18 | Mayor's 11/2/17 town hall | The public town hall meeting that members of the public conducted in a collaborative manner with the Mayor, Mr. Banks, and other government officials as a traditional public forum on 11/2/17 in a public school controlled by the DOE that is located at 230-17 Hillside Avenue in Queens Village in Queens. That public forum was subject to New York State's Open Meetings Law and I was illegally barred from attending it while I still had ongoing litigation against HRA. |
| 19 | Mayor's 11/27/17 public hearing | The public hearing that the Mayor conducted on 11/27/17 at 12 pm inside of the Blue Room in City Hall that I sought to attend and testify in while I was entitled to do so pursuant to my First Amendment and Fourteenth Amendment rights as well as those pursuant to New York State's Open Meetings Law. However, I was instead illegally prevented from doing so while members of the City Council were aware of that and exhibited deliberate indifference about that as they passed by me near the Broadway entrance to City Hall. Defendant Redmond and other members of the NYPD were responsible for that and that occurred in spite of the fact that I conducted myself in an entirely lawful manner as that occurred. |
| 20 | Mayor's 11/27/17 public hearing video | The video recording that the Mayor's office arranged to be recorded of the Mayor's 11/27/17 public hearing that is available on the Internet at https://www.youtube.com/watch?v=gJovs33FfAk. |
| 21 | Mayor's 11/30/17 town hall | The public town hall meeting that members of the public conducted in a collaborative manner with the Mayor, Mr. Banks, and other government officials as a traditional public forum on 11/30/17 in a public school controlled by the DOE that is located at 85-05 144th Street in Briarwood in Queens. That public forum was subject to New York State's Open Meetings Law. I had ongoing litigation against HRA as I attempted to attend that town hall meeting. |

| 22 | Mayor's 11/30/17 town hall video | The video recording that the Mayor's office arranged to be recorded of the Mayor's 11/30/17 town hall. That video is available on the Internet at https://www.youtube.com/watch?v=CRV0IKbg5tQ. |
|---|---|---|
| 23 | Mayor's CAU | The Mayor's Community Affairs Unit |
| 24 | Mr. Banks | HRA Commissioner Steven Banks |
| 25 | My HRA lawsuit | The hybrid lawsuit that I commenced against HRA in January of 2017 that corresponds to *Komatsu v. New York City Human Resources Administration*, No. 100054/2017 (Sup. Ct., New York Cty.) and is being appealed. I asserted claims in that case that my claims in this case relate back to and amplify. Prior to 6/8/17, I asserted claims in that case that concerned illegal acts and omissions that were committed against me by defendants in this action that caused me to have been illegally barred from attending both the Mayor's 4/27/17 town hall and the Mayor's 5/23/17 public resource fair meeting. |
| 26 | NYCLU | New York Civil Liberties Union |
| 27 | OTDA | The New York State Office of Temporary and Disability Assistance |
| 28 | Second Circuit | United States Court of Appeals for the Second Circuit |

2.     Every reference that I make in this pleading that concerns my efforts to have attended the Mayor's 11/30/17 town hall concerns those that I made to lawfully attend it from within the room in which the Mayor, Mr. Banks, and/or other government officials jointly conducted it as it was conducted, shortly before it began, and shortly after it ended.

3.     References to HRA, DHS, and DSS will be used interchangeably in this pleading for simplicity.

4.     The first page of what appears in the annexed **Exhibit A** is a public notice that the City of New York issued on the Internet for the Mayor's 11/30/17 town hall. That notice contains the following details:

a.     The fact that the Mayor's 11/30/17 town hall would be conducted in Queens on 11/30/17 in a school that is located at 85-05 144th Street in Briarwood in Queens and begin at 7 pm. The school in which it that town hall meeting was the Robert A. Van

Wyck Middle School and is controlled by the DOE.

b.     The fact that admission to that event would begin at 6 pm and end at 7:30 pm.

c.     Information about how those who sought to attend that public forum could register in advance to do so.

d.     The identities of some of the government officials and government agencies with which the Mayor conducted that public forum as a mostly traditional public forum.

e.     The identities of various groups that helped to sponsor that public forum.

5.     The next screenshot shows a confirmation report that appeared in my Internet browser on 11/23/17 that confirmed a registration that I just submitted with an online form that was available on the Internet at http://our.cityofnewyork.us/page/s/lancman-town-hall to attend the Mayor's 11/30/17 town hall. I immediately saved that confirmation report as a PDF file.



6.     The illegal acts and omissions that were committed against me on 11/30/17 at the site of the Mayor's 11/30/17 town hall that my claims in this complaint concern were committed in relation to my efforts to have exercised my legal right to have done the following:

a.     Lawfully attended that public forum in accordance with my constitutional rights.

b.     Exercised the full extent of my rights while attending it partly by engaging in

protected whistleblowing about a broad array of matters of public concern and private matters.

7.      This is a civil rights action to vindicate my rights in response to illegal acts and omissions that were committed against me on 11/30/17 at the site of public town hall meeting that the Mayor conducted with other government officials in relation to my efforts to have lawfully attended it while Defendant Redmond was **a)** the head of the Mayor's NYPD security detail and **b)** the primary defendant in _Sherrard v. City of New York_, No. 15-cv-7318 (MB) (S.D.N.Y. Jun. 13, 2018). Since 4/27/17, I was aware of his status as the defendant in _Sherrard v. City of New York_ by having conducted research about him then in the wake of illegal acts and omissions that he and others committed against me on 4/27/17 that caused me to be illegally barred from attending the Mayor's 4/27/17 town hall in flagrant violation of my constitutional rights and other applicable laws. Those who committed such illegal acts and omissions against me on 11/30/17 mostly did so as part of a conspiracy in retaliation against me that was mainly for protected whistleblowing and litigation activities that I continued to be engaged in against Mr. Redmond, themselves, other members of the NYPD, members of the Mayor's staff, HRA, HRA's business partners, Mr. Banks, New York State court officers, and others. Such protected whistleblowing and litigation activities that this concerns were largely related to my HRA lawsuit and earlier illegal acts and omissions that were committed against me in flagrant violation of the Hatch Act (5 U.S.C. §1502(a)(1)) and other laws for the mutual benefit of the Mayor, members of the City Council, and those who committed such illegal acts and omissions leading up to the 2017 New York City government election in the interest of extending their job security and maintaining their access to opportunities to further advance their careers. Such illegal acts and omissions wee committed against me on the following dates by the defendants in

this action and others in relation to efforts that I previously undertook to exercise my constitutional rights to lawfully attend and participate in 20 earlier public forums that **a)** would have otherwise been conducted partly by me on 4/12/17 with respect to a scheduled oral arguments hearing in my HRA lawsuit that Jeffrey Moszyc of HRA illegally stole from me by engaging in illegal ex-parte communications to request an adjournment and **b)** were partly conducted by the Mayor, Mr. Banks, and others that included public town hall meetings, public resource meetings, public hearings, a publicity stunt that the Mayor conducted on 7/25/17 in a public area of a subway station, and a public press conference on 10/3/17 that was about reforming the NYPD:

> 4/12/17, 4/27/17, 5/23/17, 6/8/17, 7/12/17, 7/25/17, 8/30/17, 9/8/17, 9/14/17, 9/26/17, 9/27/17, 9/28/17, 10/3/17, 10/4/17, 10/12/17, 10/18/17, 10/25/17, 10/26/17, 11/2/17, 11/27/17

8.      While committing such illegal acts and omissions against me on 11/30/17 that my claims in this complaint concern, that was done to extend a campaign of harassment, retaliation, and unequal and discriminatory acts against me at public forums dating back to 4/11/17 that the Mayor and other government officials conducted with members of the public in a collaborative manner as the Mayor and such other government officials were running for re-election and using those public forums to try to improve their re-election prospects partly by trying to attract publicity. Although I have previously stated that such unequal and discriminatory acts against me began on 4/27/17, further review reveals that such abuse began on 4/11/17 at the site of the Mayor's 4/11/17 public resource fair meeting as NYPD Detective Raymond Gerola illegally prevented me from being able to exercise my First Amendment and Fourteenth Amendment rights to lawfully walk up to the Mayor on a public sidewalk that is a traditional public forum as Mr. Gerola escorted the Mayor from the building in which the Mayor's 4/11/17 public resource

fair meeting was conducted. That occurred as I recorded that on video at 1:13 pm on 4/11/17. What follows are two screenshots from that short video that lasts less than 3 seconds. The first screenshot that appears on the left shows how close the Mayor stood to an unknown woman as he descended a set of stairs while she was eating something. The second screenshot is relevant because it establishes the fact that my distance to where the Mayor was then was further away from him than that unknown woman was. Mr. Gerola stood closest to where I was as he appeared in this second screenshot



9.      The illegal acts and omissions that were committed against me on 11/30/17 as well as on earlier dates at public forums that members of the public conducted in a collaborative manner with the Mayor and other government officials and continued long after 11/30/17 at additional public forums that were conducted by the Mayor and other government personnel. Such illegal acts and omissions prior to 11/8/17 were acts of voter suppression, voter fraud, whistleblower retaliation, a malicious and naked abuse of process, illegal selective-enforcement, standardless

discretion, viewpoint discrimination in violation of the Hatch Act, my constitutional rights, federal and New York State criminal statutes, New York State's Open Meetings Law, and other applicable laws that were against me directly and others indirectly largely by illegally depriving the public of relevant and significant information that it could use to make informed voting decisions during the 2017 New York City government elections that I sought to lawfully and widely broadcast by attending public forums that the Mayor conducted within the rooms in which they were conducted while they were recorded on video that could amplify and extend the reach of the critical views against the Mayor's administration, the NYPD, the Mayor's administration's business partners, and whistleblower news censors in journalism that I sought to lawfully express.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§1331 and 1343. This action is brought pursuant to 42 U.S.C. §§1983, 1985, 1988 and the First, Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution.

2.      My claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§2201 and 2202, FRCP Rules 57 and 65, and the general legal and equitable powers of this Court.

3.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because I reside in the Bronx and though the illegal acts and omissions that were committed against me that this complaint concerns occurred in Queens, they were committed by defendants whose typical place of business is in Manhattan and, upon information and belief, decisions were made by the defendants about how the Mayor's 11/30/17 town hall meeting would be conducted that included deciding to illegally prevent me from attending that town hall meeting.

4.      An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. §1988.

5.      Consistent with the requirements of New York General Municipal Law § 50-e, I filed a timely Notice of Claim with the New York City Comptroller within 90 days of the accrual of my claims under New York law.

6.      My claims have not been adjusted by the New York City Comptroller's Office.

## PARTIES

1.      I am, and was at all times relevant to this action, a resident of Bronx County in the State of New York. I am also a U.S. Navy veteran, who swore to defend the U.S. Constitution against all of its enemies indefinitely and without exceptions. I have honored that oath and continue to do so.

2.      At all times relevant herein Defendant Bill de Blasio and Defendant James O'Neill were employees of the City of New York.

3.      At all times relevant herein, **a)** Defendant de de Blasio has been the Mayor of the City of New York, **b)** Defendant James O'Neill was the commissioner of the NYPD, and **c)** Defendant Lawrence Byrne, Jr. was the Deputy Commissioner for Legal Matters for the NYPD. As the commissioner of the NYPD, Defendant O'Neill was among others who were responsible for how the NYPD operated, how the NYPD's personnel were trained, how they were supervised, and how they were disciplined. In his capacity as the Deputy Commissioner for Legal Matters for the NYPD, Defendant Byrne, Jr. was similarly responsible for having the members of the NYPD operate within the bounds of applicable laws while they were on-duty as members of the NYPD. Defendant de Blasio was also partly responsible for how the NYPD operated and was supervised at all times relevant herein partly by having the power to replace Defendant O'Neill as the NYPD's commissioner and set the budget for the NYPD. In regards to this point, Mr. de Blasio was recorded on video on 11/30/17 during the public town hall meeting that he conducted in

Queens as he stated the following:

"If you have a problem with policing, I am ultimately responsible."

4. Mr. De Blasio is shown and heard as he made that remark in that video at the elapsed time of 1 hour, 49 minutes, and 19 seconds. That video recording is available on the Internet at https://www.youtube.com/watch?v=CRV0IKbg5tQ.

5. Defendant City of New York is a municipal corporation duly incorporated and authorized under the laws of the State of New York pursuant to §431 of its Charter. The City of New York is authorized under the laws of the State of New York to maintain a police department, the NYPD, which is supposed to act as its agent in the area of law-enforcement and for which it and the Mayor are ultimately responsible. The City and the Mayor both assume the risks incidental to the maintenance of a police force and the employment of police officers.

6. The following defendants in this action were at all times relevant herein officers, employees, and agents of the NYPD and the City of New York:

NYPD Detective Baez (shield #: 5984), NYPD Inspector Howard Redmond, NYPD John Doe1 11/30/17, NYPD John Doe2 11/30/17, NYPD John Doe3 11/30/17, Lawrence Byrne, Jr., James O'Neill

7. Defendants O'Neill and Byrne, Jr. have retired from the NYPD.

8. At all times relevant herein, Mr. Redmond and NYPD John Doe3 11/30/17 were members of the NYPD security detail for the Mayor and Mr. Redmond helped to direct and supervise how that security detail operated.

9. The next screenshot is from the elapsed time of 27 seconds in a video recording that I recorded on 11/30/17 at 5:30 pm as I stood in front of the entrance to the school that hosted the Mayor's 11/30/17 town hall meeting. A copy of that video is available on the Internet at https://drive.google.com/file/d/1p43pfi4DWQYVZi8b1GkHkcunEoN2Lhm4/view?usp=sharing.



10.    The following defendants appear from left to right in the preceding screenshot:

NYPD Officer Baez, Mr. Ridener, NYPD John Doe1 11/30/17, Ms. Stribula, Mr. Miller, NYPD John Doe2 11/30/17

11.    NYPD John Doe1 11/30/17, NYPD John Doe2 11/30/17 also appear on the left in the next screenshot that is from the elapsed time of 50 seconds in the video that I recorded at 5:30 pm on 11/30/17 and just discussed.



12.     Upon information and belief, one or more video security cameras were installed on 11/30/17 on the exterior of the school that hosted the Mayor's 11/30/17 town hall meeting near its entrance. I have reason to believe that such video security cameras were then controlled by the DOE and the Defendant City of New York has been legally required to preserve all video recordings that were recorded on 11/30/17 in that specific area while I was there because that is relevant evidence in this case. I further believe that NYPD John Doe1 11/30/17 and NYPD John Doe2 11/30/17 stood in areas near the entrance to the school that hosted the Mayor's 11/30/17 town hall meeting that were recorded on 11/30/17 by such video security cameras while I also stood near that entrance. Such video recordings as well as assignment logs that the NYPD may have maintained may be used to identify NYPD John Doe1 11/30/17 and NYPD John Doe2 11/30/17.

13.     At the elapsed time of 3 seconds in the video that I just discussed, Mr. Stribula is clearly shown and heard in it as she illegally told me that she would not allow me to attend the Mayor's 11/30/17 town hall in flagrant violation of my rights pursuant to the First Amendment, Fourth Amendment, Fourteenth Amendment, and New York State's Open Meetings Law. Her specific statement to me then was, "You're not coming in". Defendants Baez, NYPD John Doe1 11/30/17, and NYPD John Doe2 11/30/17 all stood within earshot of Ms. Stribula as she told me that and illegally made no attempt to intervene on my behalf to enable me to attend the Mayor's 11/30/17 town hall meeting.

14.     The next screenshot shows NYPD John Doe3 11/30/17 on the left and is from a video recording that I recorded at 7:24 pm on 11/30/17 with my laptop as I lawfully attended the Mayor's 11/30/17 town hall meeting while NYPD John Doe3 11/30/17 was illegally violating

the Handschu Agreement as he subjected to illegal selective-enforcement and abuse of process in flagrant violation of my due process and equal protection rights while spying on activities that I was lawfully engaged in while I used my laptop to prepare an early version of a legal brief for use against members of the Mayor's NYPD security detail and others in response to illegal acts and omissions that they and others committed against me in 2017 at public forums. I recorded that video largely because I was acutely aware that he was then illegally spying on me.



15. At all times relevant herein, Defendant Lancman was all of the following:

   a. The moderator for the Mayor's 11/30/17 town hall.

   b. An employee of the City of New York and member of the City Council to whom I testified on 10/16/17in City Hall during a public hearing that the City Council's Committee on Courts and Legal Services conducted as I told him that I had

repeatedly and illegally been prevented from attending public town hall meetings that the Mayor conducted in 2017.

c.     Someone who I briefly talked with on 11/30/17 at the site of the Mayor's 11/30/17 town hall as Mr. Lancman arrived there and as I told him then that I was being illegally prevented from attending that town hall meeting in flagrant violation of my constitutional rights and other applicable laws before he illegally didn't make an effort to intervene on my behalf to enable me to attend that town hall in violation of 42 U.S.C. §1986 and his constitutional oath of office as an employee of the City of New York and instead walked away.

16.     At all times relevant herein, Defendant Vance, Jr. has been the Manhattan District Attorney and has been responsible for enforcing applicable laws that include New York State's Penal Code in New York City by commencing prosecutions.

17.     At all times relevant herein, Defendant Anthony Shorris was an employee of the City of New York and worked for the Mayor's office as the First Deputy Mayor of New York City.

18.     At all times relevant herein, Defendants Carrion, Miller, Ringel, Ridener, and Stribula were employees of the City of New York who worked for the Mayor's CAU as Mr. Carrion was the commissioner of the Mayor's CAU.

19.     The next table contains links to the LinkedIn profiles on the Internet for Defendants Carrion, Miller, Ridener, Ringel, and Stribula that contain summary information about their careers and educational backgrounds:

| # | Name | Link to LinkedIn Profile |
|---|------|--------------------------|
| 1 | Marco Carrion | https://www.linkedin.com/in/marco-a-carrion/ |
| 2 | Harold Miller | https://www.linkedin.com/in/harold-miller-305502171/ |
| 3 | Dustin Ridener | https://www.linkedin.com/in/dustinridener/ |
| 4 | Pinny Ringel | https://www.linkedin.com/in/pinny-ringel-24b9045/ |

| 5 | Shauna Stribula | https://www.linkedin.com/in/shauna-stribula-294912a7/ |

20.    At all times relevant herein, Defendant Jessica Ramos was an employee of the City of New York who worked for the Mayor's office.

21.    The defendants in this action who are people violated oaths that they were required to take through the illegal acts and omissions that they committed against me on 11/30/17 in relation to my efforts to lawfully attend the Mayor's 11/30/17 town hall. The specific oaths that the defendants violated then in regards to me were those that they were required to take upon **a)** joining the NYPD and/or **b)** otherwise working for the City of New York. Those oaths required them to swear or affirm that they would perform their duties as members of the NYPD and/or other personnel of the City of New York in accordance with the U.S. Constitution and New York State Constitution to the best of their abilities. In regards to this point, the Mayor's press office made a transcript available on the Internet of a swearing-in ceremony for new members of the NYPD that the Mayor presided over on 10/8/15. That transcript is available on the Internet at https://www1.nyc.gov/office-of-the-mayor/news/702-15/transcript-mayor-de-blasio-delivers-remarks-nypd-swearing-in-ceremony.

22.    The next screenshot shows an excerpt from that transcript that reflects how those new members of the NYPD pledged to uphold the U.S. and New York Constitution and to faithfully discharge their duties as members of the NYPD to the best of their abilities after the defendant in this action who are members of the NYPD most likely did the same before they committed illegal acts and omissions against me that this action concerns. Hindsight therefore confirms that they lied in the oaths that they took upon joining the NYPD to become part of a criminal mob as liars and con artists instead of joining the ranks of actual law-enforcement.

**Mayor:** I do hereby pledge – I'm sorry, I should say repeat after me – I do hereby pledge and declare –

**Recruits:** I do hereby pledge and declare –

**Mayor:** – to uphold the Constitution of the United States –

**Recruits:** – to uphold the Constitution of the United States –

**Mayor:** – and the Constitution of the State of New York –

**Recruits:** – and the Constitution of the State of New York –

**Mayor:** – and faithfully discharge my duties –

**Recruits:** – and faithfully discharge my duties –

**Mayor:** – as a New York City Police Officer –

**Recruits:** – as a New York City Police Officer –

**Mayor:** – to the best of my ability –

**Recruits:** – to the best of my ability –

**Mayor:** – so help me God.

**Recruits:** – so help me God.

23.     In a similar vein, other personnel of the City of New York are required upon working for the City of New York by New York State Civil Service Law §62 to take and file an oath or affirmation in which they pledge and declare that they will support the U.S. and New York State Constitution and faithfully discharge the duties of their jobs with the City of New York to the best of their abilities. The terms of New York State Civil Service Law §62 are shown on the New York State Senate's web site at https://www.nysenate.gov/legislation/laws/CVS/62. The following are two relevant excerpts from that law:

      a.     "Every person employed by the state or any of its civil divisions, except an employee in the labor class, before he shall be entitled to enter upon the discharge of any of his duties, shall take and file an oath or affirmation in the form and language prescribed by the constitution for executive, legislative and judicial officers, which may be administered by any officer authorized to take the acknowledgment of the execution of a deed of real property, or by an officer in whose office the oath is required to be filed. In lieu of such oath administered by an officer, an employee may comply with the requirements of this section by

subscribing and filing the following statement: **"I do hereby pledge and declare that I will support the constitution of the United States, and the constitution of the state of New York, and that I will faithfully discharge the duties of the position of ............, according to the best of my ability."** Such oath or statement shall be required only upon original appointment or upon a new appointment following an interruption of continuous service, and shall not be required upon promotion, demotion, transfer, or other change of title during the continued service of the employee, or upon the reinstatement pursuant to law or rules of an employee whose services have been terminated and whose last executed oath or statement is on file."

(boldface formatting added for emphasis)

b.    "The refusal or wilful failure of such employee to take and file such oath or subscribe and file such statement shall terminate his employment until such oath shall be taken and filed or statement subscribed and filed as herein provided."

24.    On a closely related note, the following shows the terms of New York City Charter Section 435(a) that address the legal duties that all members of the NYPD have and underscores the fact that the defendants in this action who were members of the NYPD on 11/30/17 committed illegal acts and omissions against me in relation to my claims in this case by flagrantly violating and disregarding their legal duties as members of the NYPD:

"**The police department and force shall have the power and it shall be their duty to preserve the public peace, prevent crime, detect and arrest offenders, suppress riots, mobs and insurrections, disperse unlawful or dangerous assemblages and assemblages which obstruct the free passage of public** streets, **sidewalks**, parks and places; **protect the rights of persons** and property, **guard the public health**, **preserve order at** elections and **all public meetings and assemblages**; subject to the provisions of law and the rules and regulations of the commissioner of traffic,* regulate, direct, control and restrict the movement of vehicular and pedestrian traffic for the facilitation of traffic and the convenience of the public as well as the proper protection of human life and health; **remove all nuisances in the public** streets, parks and **places**; arrest all street mendicants and beggars; provide proper police attendance at fires; inspect and observe all places of public amusement, all places of business having excise or other licenses to carry on any business; **enforce and prevent the violation of all laws and ordinances in force in the city**; and for these purposes **to arrest all persons guilty of violating any law or ordinance for the suppression or punishment of crimes or offenses**.

(boldface formatting added for emphasis)

25.    The next screenshot is from a Twitter posting that was posted on the Internet at

https://twitter.com/NYPDShea/status/1325105830744780803 on 11/7/20 at 11 am by a Twitter account that has the username of "@NYPDShea" that is registered to NYPD Commissioner Dermot Shea. That Twitter posting includes a remark that materially supports my claims in this case because that remark states the following about legal duties that members of the NYPD have to the public that includes those who express their views and are criticize how the NYPD operates:

"We are sworn to protect peoples rights to express their opinions even about us."

26.     It is patently clear that the past and present members of the NYPD who are defendants in this case absolutely violated their sworn duty that NYPD Commissioner Shea communicated on 11/7/20 with respect to the claims that I'm asserting against them in this case by committing illegal acts and omissions against me that violated my First Amendment and Fourteenth Amendment rights to lawfully express my views against them, the Mayor, other government personnel, and business partners of the City of New York partly by attending public forums that were partly conducted by the Mayor and expressing such views in a lawful manner while attending them. Past and present members of the NYPD have also otherwise condoned such violations of my rights as they occurred in their presence as they acted in concert with those who violated my right to express my views by not intervening on my behalf against those who violated such rights of mine.



Commissioner Shea ✔
@NYPDShea

Last night a group of NYPD officers escorted a group of 400 protesters from the west side to the Eastside and back again. Yes, the protest was against the police but that really doesn't matter. We are sworn to protect peoples rights to express their opinions even about us.

1/2

NYPD NEWS and 8 others

11:00 AM · Nov 7, 2020 · Twitter for iPhone

27. By committing the illegal acts and omissions against me that my claims in this action concern, the defendants who did so and were then personnel of the City of New York violated New York City Charter §1116 that requires them to be promptly fired and prohibited from working for the City of New York again.

28. The individual defendants are being sued herein in their individual and official capacities.

29. At all times relevant herein, the individual defendants were acting under color of state

law in the course and scope of their duties and functions as agents, servants, employees and officers of the NYPD and City of New York. They were acting for and on behalf of the NYPD, Mayor, Mr. Banks, HRA, and one another at all times relevant herein. While doing so, the defendants in this action who are members of the NYPD did so with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

30.     The individual defendants' acts hereafter complained of were carried out intentionally, recklessly, and oppressively with malice and egregious, callous, and wanton disregard of my rights.

31.     At all relevant times, the individual defendants were engaged in joint ventures, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

## BACKGROUND FACTS

1.     I incorporate by reference the statements that I made in all of the preceding paragraphs as though fully set forth herein.

2.     In the interests of brevity and pursuant to FRCP Rule 10(c), I incorporate by reference as though fully set forth herein the "Background and Retrospective Facts" section that appears in the complaint that I filed in this case on 11/6/20 as well as all of the information that section otherwise refers to.

3.     For the purpose of providing fair notice, information that I'm incorporating by reference in this section from elsewhere addresses all of the following matters with sufficient detail:

    a.     The reasons why Jessica Ramos shares liability for my claims in this amended complaint that I'm asserting against her by virtue of the fact that acted as a co-

conspirator and accomplice with other defendants in this amended complaint and others in the illegal acts that were committed against me that caused me to be prevented from attending public town hall meetings and public resource fair meetings that the Mayor conducted with others since 4/27/17 that continued thereafter to 11/30/17 at the site of the Mayor's 11/30/17 town hall as I continued to be illegally prevented from attending public town hall meetings, public resource fair meetings, and public hearings that the Mayor conducted between 4/27/17 and 11/30/17. E-mail messages confirm that Ms. Ramos was involved in that scheme and conspiracy partly by committing defamation against me in communications that she had with a whistleblower news censor in journalism named Erin Durkin on 6/28/17 and 6/29/17 in response to inquiries that Ms. Durkin made about why I was illegally prevented from attending public forums that the Mayor conducted with others since 4/27/17. While responding to those inquiries, Ms. Ramos concocted and/or otherwise used a fraudulent pretext that someone else concocted to be used against me to cover-up the actual illegal reasons why I was illegally prevented from attending public forums that the Mayor conducted with others since 4/27/17.

b.  The reasons why Defendants de Blasio, O'Neill, Shorris, Byrne, Jr., and Vance, Jr, share liability for my claims in this amended complaint that I'm asserting against them. This stems from the fact that I had face-to-face conversations with all of them on 6/26/17, 7/18/17, 10/3/17, 10/13/17 about the fact that I was illegally prevented from attending public forums that the Mayor conducted with others since 4/27/17 as I sought for them to immediate intervene on my behalf to

end that practice and have other immediate and decisive corrective action taken about that. However, all of them instead demonstrated deliberate indifference about that and that proximately enabled such abuse to continue to be committed against me at public forums that the Mayor conducted that included the Mayor's 11/30/17 town hall.

      c.      Prior to 11/30/17, both Defendants Redmond and Carrion were personally involved in decisions that were made to cause me to be illegally prevented from attending public forums that the Mayor conducted with others since 4/27/17. Both of them share liability for my 11/30/17 claims in this amended complaint because that illegal practice continued on 11/30/17 at the site of the Mayor's 11/30/17 town hall in spite of the fact they had the authority to end that practice against me prior to that date.

4.      The e-mail chain shown next shows e-mail messages that I sent to and received from Samuel Spitzberg of OTDA between 11/27/17 and 11/29/17 about entirely valid litigation that I was involved in against HRA on 11/29/17 that I commenced and was protected activity. Mr. Spitzberg is the director of OTDA's Office of Administrative Hearings. This information is relevant largely because e-mail messages that appear in the City Hall email excerpts and were sent by Racquel Lucas, Jaclyn Rothenberg, and Jessica Ramos **a)** confirm that they illegally apprised senior members of the Mayor's Office, Mr. Banks, and perhaps Defendant Redmond on 4/10/17, 6/28/17, and/or 6/29/17 about updates in litigation that I commenced against HRA in violation of my privacy rights while such litigation included litigation that was assigned to OTDA in its capacity as a New York State administrative appellate forum and **b)** those same e-mail messages were also about illegal acts and omissions that were committed against me that

caused me to be illegally prevented from attending the Mayor's 4/27/17 town hall, the Mayor's

5/23/17 public resource fair, and the Mayor's 6/8/17 town hall from within the rooms in which

they were conducted while I conducted myself in an entirely lawful manner. Mr. Spitzberg sent a

courtesy copy of the first e-mail message that appears next to Ann Marie Scalia. She is a senior

member of HRA that Mr. Banks previously told me is HRA's Deputy General Counsel.

> **From:** "Spitzberg, Samuel L (OTDA)" <Samuel.Spitzberg@otda.ny.gov>
> **Subject:** Re: Adjourning today's fair hearing concerning not submitting documents
> **Date:** November 29, 2017 at 2:03:43 PM EST
> **To:** Towaki Komatsu <towaki_komatsu@yahoo.com>
> **Cc:** "Scalia, Ann Marie (HRA)" <scaliaa@hra.nyc.gov>
>
> Are you in a meeting now? Who called the meeting?
>
> Samuel L. Spitzberg
>
> On Nov 29, 2017, at 2:00 PM, Towaki Komatsu <towaki_komatsu@yahoo.com> wrote:
>
> Mr. Spitzberg,
>
> Is it possible to adjourn today's scheduled 2 pm fair hearing due to a scheduling conflict
> that caused a meeting I just had with a lawyer to have just concluded about an urgent
> matter pertaining to my having been illegally excluded from a public hearing on Monday
> in New York City Hall by the Mayor's NYPD security detail and where I intended to
> testify?
>
> From,
>
> Towaki Komatsu
>
> On Nov 27, 2017, at 4:33 PM, Spitzberg, Samuel L (OTDA)
> <Samuel.Spitzberg@otda.ny.gov> wrote:
>
> Your one-time request for an adjournment is granted.

5.     The e-mail chain shown next shows e-mail messages that I sent to and received from

Judith Lê of the CCRB between 11/22/17 and 11/28/17 about an entirely valid complaint that I

reported to the CCRB against NYPD Detective Raymond Gerola of the Mayor's NYPD security

detail for having illegally been among people who caused me to be barred from attending the Mayor's 11/2/17 town hall meeting in Queens. This e-mail chain confirms that I was engaged in protected activity against a member of the Mayor's NYPD security detail and lost confidence in the CCRB ability to conducted proper investigations in response to such valid complaints. I instead intended to use the Mayor's 11/30/17 town hall to engage in protected whistleblowing that would partly be about the sum and substance of my HRA lawsuit and against the Mayor's NYPD security detail, other members of the NYPD, Mr. Banks, other HRA personnel, the Mayor, business partners of HRA, OTDA, whistleblower news censors in journalism, and others in a lawful manner while attending that public town hall meeting before I did exactly that to an extent while attending it.

**From:** Towaki Komatsu <towaki_komatsu@yahoo.com>
**Subject:** Re: CCRB case number 201709392
**Date:** November 28, 2017 at 12:33:07 PM EST
**To:** "Le, Judith (CCRB)" <JLe@ccrb.nyc.gov>

I think that I'm finished with the CCRB because it has proven to be subservient to the Mayor's office and therefore a total waste of time.

On Nov 28, 2017, at 9:25 AM, Le, Judith (CCRB) <JLe@ccrb.nyc.gov> wrote:


Hi Mr. Komatsu,

Just writing to follow-up on your missed appointment, regarding the case involving Det. Gerola. Did you want to reschedule your interview?

Best,

Judith Lê
Investigator, Squad 12
Civilian Complaint Review Board
100 Church Street, 10th Floor
New York, NY 10007
(212) 912-2081

From: CCRB_CTS [jle@ccrb.nyc.gov]
Sent: Wednesday, November 22, 2017 5:33 PM
To: towaki_komatsu@yahoo.com
Subject: Re: CCRB case number 201709392

November 22, 2017

Mr. Towaki Komatsu
802 Fairmount Place Apt. 4B
Bronx, NY 10460


Re: CCRB case number 201709392

Dear Mr. Komatsu:

I am the investigator assigned to the above-referenced complaint, which was filed with
the Civilian Complaint Review Board.  The CCRB is a city agency independent of the
New York City Police Department that is staffed entirely by civilians.  I am currently
investigating an allegation that (a) member(s) of the New York City Police Department
engaged in misconduct on November 02, 2017, at Martin Van Buren High School, 230-
17 Hillside Avenue Queens Village, NY 11427 in Queens, at  7:00PM.  On November
22, 2017, you failed to appear at the CCRB for an interview that we had previously
scheduled.  I have since tried to reach you but have been unable to contact you. If you
wish to have the CCRB investigate this complaint, you need to contact me immediately at
(212) 912-2081. If I do not hear from you, the agency may close this case without
conducting a full and thorough investigation.

It is important that complaints that fall within the jurisdiction of the CCRB be objectively
evaluated and corrective action taken if appropriate.  Please call me so that we can
reschedule the interview.  Thank you for your cooperation.

Sincerely,



Judith Le
Investigator

6.      On 11/29/17, I took a few photographs of both a notice of claim form and a civil rights

complaint that I completed that I submitted to the New York City Comptroller's office and the

U.S. Attorney General's Office for the Southern District of New York that were in response to

illegal acts and omissions that were committed against me on 11/27/17 that caused me to be

illegally prevented from attending and testifying in the Mayor's 11/27/17 public hearing. I took

those photographs near the Park Row entrance to City Hall in an area where numerous video

security cameras that are controlled by the NYPD record that area. As I took those photographs, I

used City Hall, a sign about City Hall, and a NYPD security screening area on City Hall as

backdrops for those photographs largely to signal my intent to engage in protected

whistleblowing against the NYPD while attending the Mayor's 11/30/17 town hall. The next

screenshot is from one of those photographs that I took at 3:04 pm on 11/29/17 and shows the

first page of a civil rights complaint that I completed for the U.S. Attorney's Office for the

Southern District of New York as I stood next to a sign for City Hall by the Park Row entrance

to City Hall.



## LEGAL STANDARDS

1.  I incorporate by reference the statements that I made in all of the preceding paragraphs as though fully set forth herein.

2.  In the interests of brevity and pursuant to FRCP Rule 10(c), I incorporate by reference as though fully set forth herein the "Legal Standards" section that appears in the complaint that I filed in this case on 11/6/20 as well as all of the information that section otherwise refers to.

3.  On 10/30/17, I attended a meeting that was about the U.S. Constitution that Arthur Eisenberg of the NYCLU and David Cole of the ACLU conducted at the Fordham Law School that is located at 150 West 62nd Street in Manhattan. Those who organized that meeting arranged for it to be recorded on video that is available on the Internet at https://livestream.com/accounts/14230140/events/7870400/videos/165193623. During that meeting's question and answer session with its audience, I told Mr. Eisenberg and Mr. Cole that I was both a U.S. Navy veteran and a whistleblower. I also told them that the Mayor's NYPD security detail had been illegally preventing me from attending public forums that the Mayor had been conducting. I told them that as I asked them how I could get legal representation from their organizations to address that problem. Mr. Eisenberg was then the NYCLU's legal director and Mr. Cole was then the ACLU's national legal director. In response, Mr. Eisenberg clearly told me that I had a legal right to attend the Mayor's public forums as long as I was not disrupting those public forums. The conversation that I had with both of them during that meeting during which I made the remarks to them that I just discussed and Mr. Eisenberg gave me the answer that I just discussed begins at the elapsed time of 55 minutes and 25 seconds in the video recording of that meeting. I'm shown later in that video at the elapsed time of 1 hour, 6 minutes, and 12 seconds as I talked with Mr. Eisenberg as I wore a white sweater and was carrying a

backpack. The next screenshot shows both Mr. Cole on the left and Mr. Eisenberg on the right immediately after Mr. Eisenberg told me that I had a right to attend the Mayor's public forums while I was not disrupting those meetings.



4. The U.S. Supreme Court just issued controlling and relevant findings about First Amendment and Fourteenth Amendment rights that are applicable to New Yorkers in a critically significant 5 to 4 decision that it issued on 11/25/20 in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 S. Ct. (U.S. 2020). In short and among other things, that decision sufficiently confirms that I'm entitled to immediate and decisive injunctive relief in this case and all related litigation that I commenced. The following is a summary of key findings that were issued in the "Per Curiam" for that decision and are relevant in this case and litigation that is related to it that I commenced:

a. When acts are committed by government personnel in New York City against the First Amendment right of assembly that people have without an objectively valid

justification, those who experience such abuse are legally entitled to be granted an immediate injunctive to restrain such illegal acts against them.

b.      Government personnel are prohibited from discriminating against the extent to which different groups of people in New York City are able to lawfully assemble in accordance with their First Amendment and Fourteenth Amendment rights.

c.      Plaintiffs who establish "that their First Amendment claims are likely to prevail, that denying them relief would lead to irreparable injury, and that granting relief would not harm the public interest" are entitled to be granted injunctive relief pending appellate review. This point appears on page 2.

d.      The use of categories by government authorities to determine the extent to which people in New York City may lawfully exercise their First Amendment rights of assembly and Fourteenth Amendment equal protection rights "lead to troubling results" that impermissibly violate First Amendment freedoms of assembly.

e.      Restrictions that are not neutral and of general applicability that restrict First Amendment rights of assembly must satisfy "strict scrutiny" and be "narrowly tailored" to serve a "compelling" state interest.

f.      "while those who are shut out may in some instances be able to watch services on television, such remote viewing is not the same as personal attendance." This appears on page 5 and relates to being illegally prevented from attending public town hall meetings, public resource fair meetings, and public hearings that are partly conducted by the Mayor from within the rooms in which they're conducted as they're conducted. Such a circumstance would cause me to have to resort to observing how such meetings would be conducted **a)** from within an overflow

room that could be setup in connection with such public forums or b) by watching a video recording on the Internet that would show such meetings as they would be conducted. Such restrictions would allow for no interaction between me and government personnel who attend such public forums within the rooms in which they're conducted as they're conducted in violation of my First Amendment right to communicate to government personnel as well as my right to engage in expressive association with the audience members at such public forums similar to how people talk with one another while attending religious services.

g.      Even "in a pandemic, the Constitution cannot be put away and forgotten." This also means that the Constitution cannot be put away and forgotten while no pandemic exists.

h.      Before allowing restrictions to be imposed on First Amendment rights of assembly, judges have a duty to "conduct a serious examination of the need for such drastic measures.

i.      Injunctions that grant plaintiffs relief for the First Amendment right to assemble are warranted in situations in which government personnel may at any time again impose restrictions on such rights before judicial relief may be obtained to prevent that.

5.      The following is a summary of key findings that were issued in the opinion that U.S. Supreme Court Judge Neil Gorsuch emphatically issued on 11/25/20 for _Roman Catholic Diocese of Brooklyn v. Cuomo_ and are also relevant in this case and litigation that is related to it that I commenced:

a.      "Government is not free to disregard the First Amendment in times of crisis. At a

minimum, that Amendment prohibits government officials from treating" one or more people worse than others, unless they are pursuing a compelling interest and using the least restrictive means available.

b.    Government authorities must not be allowed to engage in discrimination by arbitrarily deciding that one or more people are able to lawfully exercise First Amendment rights of assembly while others aren't permitted to do so.

c.    "In far too many places, for far too long, our first freedom has fallen on deaf ears."

d.    "Even if the Constitution has taken a holiday", "it cannot become a sabbatical".

e.    The U.S. Constitution may not be cut loose during challenging times.

f.    Although judges may have a particular impulse to stay out of the way in times of crisis that may possibly be understandable or admirable in certain circumstances, judges "may not shelter in place when the Constitution is under attack. Things never go well when" judges do.

g.    Judges may not "discount the burden" that has been imposed on New Yorkers who "have lived for months under New York's unconstitutional regime" that caused them to be unable to exercise their First Amendment rights of assembly.

6.    The following is a very clear and straightforward excerpt from _Dresner v. Tallahassee, 375 U.S. 136, 84 S. Ct. 235, 11 L. Ed. 2d 208 (1963)_ that is controlling law and applies to my claims in this case because they confirm that the defendants in this case were prohibited from interfering with ability to lawfully exercise my constitutional rights at public forums that members of the public conducted with the Mayor and other government personnel:

"It is fundamental that our constitutions accord to the citizen of the United States the right of freedom of speech and of assembly and to peaceably petition for a redress of

grievances. Such freedoms are jealously guarded and when exercised in good faith and in good order may not be lawfully interfered with by governmental action."

7.    The excerpt that appears next and is from *Felix de Santana v. Velez*, 956 F.2d 16 (1st Cir. 1992) discussed an attempt to violate a plaintiff's First Amendment rights and points out that that was egregious conduct that substantively shocked the conscience. This excerpt is relevant to my claims in this complaint because claims about an attempt to violate my First Amendment rights while violating my Fourteenth Amendment due process and equal protection rights on 11/30/17 at the site of the Mayor's 11/30/17 town hall meeting are among my claims in this complaint.

**Excerpt from *Felix de Santana v. Velez*:**

**"We find that defendants' conduct as alleged in the complaint coupled with defendants' previous attempt to violate plaintiff's First Amendment rights amounts to a *prima facie* case of conduct so egregious as to "substantively, `shock the conscience.'"** *Morales,* 906 F.2d at 784 (citing *Barnier v. Szentmiklosi,* 810 F.2d 594, 599 (6th Cir.1987)). To cause the arrest of an innocent person and her prosecution when there is no ground for believing she committed a crime is outrageous and under the circumstances as alleged in the complaint, it is actionable under Section 1983. *See Goodwin v. Metts,* 885 F.2d 157, 163 (4th Cir.1989) ("Whether a criminal defendant is incarcerated is not decisive in determining if he has suffered an abridgment of constitutional rights"); *Hand v. Gary,* 838 F.2d 1420, 1424 (5th Cir.1988) ("There is a constitutional right to be free of `bad faith prosecution'"). The complaint alleges that plaintiff suffered financial distress, the loss of her job and reputation and incalculable public humiliation as a result of defendants' actions. We emphasize that this case presents exceptional and unusual circumstances which justify, if barely so, the finding that plaintiff has stated a *prima facie* substantive due process claim. A reasonable juror may conclude at trial that plaintiff's constitutional rights have not been violated."

(boldface formatting added for emphasis)

8.    The Merriam Webster's dictionary defines "occupation" in the following way on the Internet at https://www.merriam-webster.com/dictionary/occupation:

"an activity in which one engages"

9.    While defining "occupation" in that way, that dictionary shows "occupation" being used in the following sentence:

"Pursuing pleasure has been his major occupation."

10.     Work that involves criticizing government personnel, experiencing illegal acts and
omissions by them, and using litigation to hold them accountable and try to prevent others from
being harmed by them and other government personnel are common occupations and jobs that
can possibly lead to other occupations and jobs.

11.     The following are several relevant excerpts from *Cityspec, Inc. v. Smith*, 617 F. Supp. 2d
161 (E.D.N.Y. 2009):

   a.     "The liberty interests protected by the Fourteenth Amendment include the
          **freedom "to engage in any of the common occupations of life."** *Board of
          Regents v. Roth,* 408 U.S. 564, 572, 92 S.Ct. 2701 (quoting *Meyer v. Nebraska,*
          262 U.S. 390,399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923))."

   b.     "Whether this case is viewed as alleging deprivation of a liberty or property
          interest, it is clear that the interest alleged to have been interfered with is the
          interest in pursuing a chosen occupation. As the foregoing cases make clear, that
          right is not absolute, and an unconstitutional deprivation does not occur any time
          the State regulates a profession. Instead, **it is only when the challenged action
          effectively prohibits one from engaging in a profession, or pursuing any job
          in a given field that there is a deprivation entitled to protection**."

   c.     The First Amendment protects the right of access to the courts. *Lewis v.
          Casey,* 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Monsky v.
          Moraghan,* 127 F.3d 243, 246 (2d Cir.1997); *Patriots Way, LLC v. Marconi,* 2007
          WL 988712 *4 (D.Conn.2007). When the government obstructs an individual's
          effort to seek judicial redress, this right is violated. *Whalen v.County of
          Fulton,* 126 F.3d 400, 406 (2d Cir.1997). **Also protected is "[t]he right to
          complain to public officials and to seek administrative and judicial
          relief."** *Hampton Bays Connections, Inc. v. Duffy,* 127 F.Supp.2d 364, 372
          (E.D.N.Y.2001) (quoting, *Gagliardi v. Village of Pawling,* 18 F.3d 188, 194 (2d
          Cir.1994)).

          (boldface formatting added for emphasis)

12.     The following excerpt from *Impastato v. Hellman Enters., Inc.*, 147 A.D.2d 788, 537
N.Y.S.2d 659 (App. Div. 1989) addresses the availability of damages for emotional distress
claims:

"Plaintiffs have also failed to state or establish any claim for intentional infliction of emotional distress arising out of a breach of contract. An admission ticket to a place of public amusement is merely a license which is revocable, without cause, at the will of the proprietor (*Aaron v Ward, supra*, at 355; *People ex rel. Burnham v Flynn, supra*, at 185-186). Although, generally, there is no right of recovery for mental distress in an action for breach of a contract-related duty (*Johnson v Jamaica Hosp.*, 62 N.Y.2d 523, 528; *Aaron v Ward, supra*), there are exceptions, e.g., where one is ejected from a place of public amusement before a large number of people, one can recover for humiliation and indignity undergone as a result of such ejection (*supra*). But, "'[i]n nearly every case where such damages have been awarded, the breach has been wilful; and in many of them the ejection of the plaintiff was accompanied by wanton conduct, such as foul language, abuse of the plaintiff, accusations of immorality, and special circumstances of humiliation and indignity. Where there were no such accompanying facts, damages for mental suffering have usually been refused'" (*Johnson v Jamaica Hosp., supra*, at 529, quoting 5 Corbin, Contracts § 1076, at 432). The record in the instant case is devoid of any such accompanying conduct on the part of the theatre's employees."

13.  The following is a relevant excerpt from *Robar v. Village of Potsdam Board of Trustees,* *No. 8: 20-cv-0972 (LEK/DJS) (N.D.N.Y. Sept. 21, 2020)* that addressed a legal standard that pertained to an application for a preliminary injunction to uphold First Amendment rights that was granted through that decision:

"""Violations of the First Amendment are presumed irreparable." Tunick v. Safir, 209 F.3d 67, 70 (2d Cir. 2000). The Supreme Court has declared that "the loss of First Amendment freedoms, for even minimal periods of time, constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976); see also Bery, 97 F.3d at 693 ("Violations of First Amendment rights are commonly considered irreparable injuries for the purposes of a preliminary injunction."); Mitchell v. Cuomo, 748 F.2d 804, 806 (2d Cir. 1984) (noting that "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary," and collecting cases)."

14.  In *Snyder v. Phelps*, 562 U.S. 443, 131 S. Ct. 1207, 179 L. Ed. 2d 172 (2011), the U.S. Supreme Court issued the following findings about the First Amendment that are very relevant to my claims in this action and the relief that I seek to be granted:

"Speech is powerful. It can stir people to action, move them to tears of both joy and sorrow, and—as it did here—inflict great pain. On the facts before us, we cannot react to that pain by punishing the speaker. As a Nation we have chosen a different course—to protect even hurtful speech on public issues to ensure that we do not stifle public debate."

15.     Similarly, the judge who issued the decision in *Center for Bio-Ethical Reform, Inc. v.* *Black*, 234 F. Supp. 3d 423 (W.D.N.Y. 2017) cited *Snyder v. Phelp* in the following pertinent excerpt from it that is also very relevant to my claims in this action and the relief that I seek to be granted:

> ""[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of Chicago. v. Mosley,* 408 U.S. 92, 95-96, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). State actors are "not permitted to privilege the feelings or viewpoints of one group over the viewpoints of another group." *See Forsyth County, Ga. v. Nationalist Movement,* 505 U.S. 123, 134, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992). "[U]nder our Constitution the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers, or simply because bystanders object...." *Bachellar v. Maryland,* 397 U.S. 564, 567, 90 S.Ct. 1312, 25 L.Ed.2d 570 (1970). Indeed, "[a]s a Nation, we have chosen ... to protect even hurtful speech on public issues to ensure that we do not stifle public debate." *Snyder v. Phelps,* 562 U.S. 443, 460-61, 131 S.Ct. 1207, 179 L.Ed.2d 172 (2011). It is well settled that "the right to engage in peaceful and orderly political demonstrations is, under appropriate conditions, a fundamental aspect of the `liberty' protected by the Fourteenth Amendment." *Shuttlesworth v. City of Birmingham, Ala.,* 394 U.S. 147, 161, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) (Harlan, J., concurring)."

16.     The following is a relevant excerpt from *Housing Works, Inc. v. Turner*, 00 Civ. 1122 (LAK)(JCF) (S.D.N.Y. Sept. 15, 2004) that addresses **a)** First Amendment retaliation, how it may be proved by unequal treatment that lacks a rational basis, and an ongoing campaign of harassment and reprisals and **b)** violations of the Fourteenth Amendment equal protection rights:

> The plaintiff can demonstrate a causal connection between its protected activities and the defendants' adverse actions either "indirectly by means of circumstantial evidence, . . . or directly by evidence of retaliatory animus." Cobb v. Pozzi, 363 F.3d 89, 108 (2d Cir. 2003) (quoting Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999)); Kantha v. Blue, 262 F. Supp. 2d 90, 103 (S.D.N.Y. 2003). Summary judgment is inappropriate when "questions concerning the employer's motive predominate the inquiry." Morris, 196 F.3d at 110. "Nonetheless, we have held that a plaintiff may not rely on conclusory assertions of retaliatory motive to satisfy the causal link . . . Instead, he must produce `some tangible proof to demonstrate that [his] version of what occurred was not imaginary.'" Cobb, 363 F.3d at 108 (quoting Morris, 196 F.3d at 111)).
>
> A plaintiff's circumstantial evidence of retaliation could include the timing of the defendant's actions, such as when the alleged retaliation closely follows the plaintiff's speech. Morris, 196 F.3d at 110; McCullough v. Wyandanch Union Free School District,

187 F.3d 272, 280 (2d Cir. 1999). The plaintiff can also proffer evidence of unequal treatment, or an ongoing campaign of retaliation. Hampton Bays Connections, Inc. v. Duffy, 127 F. Supp. 2d 364, 374 (E.D.N.Y. 2001); Economic Opportunity Commission of Nassau County, Inc. v. County of Nassau, 106 F. Supp. 2d 433, 437 (E.D.N.Y. 2000) (citing Gagliardi v. Village of Pawling, 18 F.3d 188, 195 (2d Cir. 1994)).

17.     The following is a relevant excerpt from *Santucci v. Levine*, No. 17-cv-10204 (NSR) (S.D.N.Y. Aug. 8, 2019) that reinforces the findings from *Housing Works, Inc. v. Turner* that I just presented:

> "In general, "[t]he ultimate question of retaliation is a defendant's motive and intent." *Gagliardi,* 18 F.3d at 195. Motive and intent, however, are "difficult to plead with specificity in a complaint." *Id.* For this reason, a plaintiff can establish a retaliatory motive by pointing to circumstantial evidence. *Lang v. Town of Tusten, N.Y.,* No. 14 CV 4136 (VB), 2015 WL 5460110, at *6 (S.D.N.Y. Aug. 6, 2015) (citing *Hartman v. Moore,* 547 U.S. 250, 260 (2006)). This includes showing unequal treatment by a defendant or an ongoing campaign of adverse action. *See Hampton Bays Connections, Inc. v. Duffy,* 127 F. Supp. 2d 364, 374 (E.D.N.Y. 2001)."

## STATEMENT OF FACTS

1.      On 11/30/17, I travelled a relatively long distance to the site of the Mayor's 11/30/17 town hall meeting and conducted myself in an entirely lawful manner throughout the entire time that I was at that location. After I arrived there, I promptly waited in a line with other members of the public to be granted an admission ticket by members of the Mayor's Office to enter the school that hosted that town hall meeting to attend that town hall meeting from within the room in which it would be conducted as it would be conducted. However, I was instead met with immediate and entirely illegal interference by Defendant Stribula in my efforts to lawfully attend that town hall meeting while I lawfully waited in that line near the entrance to that school. That occurred as she stood in close proximity to Defendants Miller, Ringel, Baez, and Ridener while other members of the NYPD were nearby.

2.      The next screenshot is from the elapsed time of 3 seconds in a video recording that I

recorded on 11/30/17 at 5:30 pm that has the filename of "IMG_3280.MOV" as I stood in front of the school that hosted the Mayor's 11/30/17 public town hall meeting.



3.       As I recorded that video, I stood in front of other members of the public who also were lawfully conducting themselves and were also waiting to be granted access to that building to lawfully attend that town hall. As I recorded that video, I recorded Defendants Stribula, Ringel, Miller, Ridener, and Baez in it as well as members of the public who certainly then were eyewitnesses. A copy of that video is available on the Internet at

https://drive.google.com/file/d/1p43pfi4DWQYVZi8b1GkHkcunEoN2Lhm4/view?usp=sharing.

The preceding screenshot shows Defendant Stribula as she was about to tell me again that she was not allowing me to attend the Mayor's 11/30/17 town hall.

4.       The next screenshot from that same video is from the elapsed time of 5 seconds and reflects what appears in it as Mr. Miller appears on the right. At that point in that video, Ms. Stribula was about to tell me that I couldn't attend that town hall simply because she said that she

wouldn't allow me to do so without any additional clarification about that. I had just asked her to provide me a valid legal basis for why she was attempting to prevent me from attending that town hall meeting that was certainly a public forum and subject to my constitutional rights and New York State's Open Meetings Law. How she treated me on 11/30/17 by trying to prevent me from attending that town hall is comparable to how **a)** she and other defendants that included Defendant Ridener treated me on 11/2/17 with respect to my efforts to have lawfully attended the Mayor's 11/2/17 town hall that I was illegally prevented from attending; **b)** she, defendant Ringel, and others illegally barred me from the Mayor's 10/18/17 town hall; and **c)** Defendants Redmond, Baez, and others illegally barred me from the Mayor's 10/25/17 resource fair as I was subjected to illegal standardless discretion by them on 10/18/17, 10/25/17, and 11/2/17 in that regard.



5.      Defendant Stribula never provided me any due process nor an objectively valid legal justification on 11/30/17 about her decision to try to illegally exclude me from being able to lawfully attend the Mayor's 11/30/17 town hall meeting and Mr. Baez, Mr. Miller, Mr. Ringel, and Mr. Ridener certainly made no attempt to enable me to exercise my constitutional right to lawfully attend that town hall. One of the members of the public who was also waiting in line near me as I recorded that video is heard in that video as he agreed to a request that I then made to him to also record what was occurring in his presence with respect to the fact that I was then being illegally prevented from attending that town hall.

6.      The next screenshot from that same video that I recorded is from the elapsed time of 42 seconds and shows Defendant Ringel right after he nodded his head to express agreement with a remark that I made as I was narrating information about what I was then experiencing in regards to being illegally prevented from attending that town hall without being provided an objectively valid legal justification for that. Right before he nodded his head to express that agreement, I stated that I wasn't being provided such a legal justification and showed a printout from a news article that was written by Margo Schlanger, is entitled "The Supreme Court Gives a Subtle Boost to Free Speech", and was published on the Internet at

https://newrepublic.com/article/117925/woodv- moss-subtle-victory-free-speech on 5/28/14 by a news organization named New Republic. That news article focused on the U.S. Supreme Court's decision in *Wood v. Moss*, 134 S. Ct. 2056, 572 U.S., 188 L. Ed. 2d 1039 (2014).



7.    The next screenshot is from that same video from the elapsed time of 36 seconds and shows the news article that I just discussed.



The Supreme Court Gives a Subtle Boost to Free Speed

A Secret Service ruling isn't the setback it may seem

BY MARGO SCHLANGER

May 28, 2014

The Supreme Court's end-of-term opinion cascade is now underway, and one of yesterday's five deci
more attention than it is so far getting. In *Wood v. Moss*, the Court handed the Secret Service a unani
protesters herded away from the President's motorcade route, who alleged, as Justice Ginsburg expla
directing their displacement, the agents acted not to ensure the President's safety, but to insulate th
message." On the theory of half a loaf being better than none, I thought I'd highlight that—notwithst
the opinion provides a little bit of ammunition to those who oppose the Orwellian "free speech zone
protesters in areas out of sight and earshot of their intended audience.

8.      The only reason why I was able to eventually able to attend the Mayor's 11/30/17 town hall was because NYPD Officer Jerry Ioveno intervened on my behalf to enable me to do so after I apprised both him and New York City Councilman Rory Lancman in front of the building that hosted that town hall about the fact that I was being illegally prevented from attending that town

hall. Mr. Lancman was the moderator for that town hall meeting and flagrantly violated his legal duty pursuant to 42 USC §1986, the constitutional oath he took to work for the City of New York, New York City Charter §1116, and NYPL §195.00 to have attempted to intervene on my behalf to enable me to attend that town hall. Mr. Ioveno then intervened on my behalf by briefly talking with Defendant Carrion and Mr. Ridener on a sidewalk before he returned to where I was and told me that I would be able to attend that town hall. I had a Fourteenth Amendment due process and equal protection right on 11/30/17 to have had Defendants Baez, NYPD John Doe1 11/30/17, NYPD John Doe2, and other members of the NYPD to have similarly intervened on my behalf then and overruled Defendant Stribula as she was attempting to illegally prevent me from attending the Mayor's 11/30/17 town hall.

9.      As I briefly alluded to earlier in this amended complaint, the illegal unequal treatment without any rational basis that I experienced by Defendant Stribula on 11/30/17 at the site of the Mayor's 11/30/17 town hall meeting as she told me that I could not attend that town hall didn't end after I was allowed to attend that town hall meeting from within the room in which it was conducted. Instead, NYPD John Doe3 11/30/17 then also subjected me to unequal treatment without any rational basis in violation of my Fourteenth Amendment due process and equal protection rights as he illegally spied on me while I lawfully sat in a chair during that town hall meeting and was typing on my laptop to prepare an early version of a complaint that I intended to use in entirely valid litigation that I would commence against Ms. Stribula and others for illegally interfering with my constitutional rights to attend public forums that were partly conducted by the Mayor. Ms. Stribula's motive for her illegal acts against me on 11/30/17 at the site of the Mayor's 11/30/17 town hall and the fact that Defendants Baez, Miller, Ringel, and Ridener didn't' intervene on my behalf to enable me to attend that town hall meeting were likely

due to the fact that they correctly believed that I intended to lawfully engage in protected whistleblowing against them and others in response to earlier illegal acts and omissions that they and others they worked with committed against me in violation of my constitutional rights at earlier public town hall meetings and public resource fair meetings that were partly conducted by the Mayor. Such illegal acts and omissions caused me to be banned from those public forums and those illegal acts and omissions occurred as recently as 11/27/17.

10.     The fact that Defendant Ridener thereafter told me on 11/13/19 that I could attend the public town hall meeting that the Mayor conducted in Queens on that date right after I began to tell Mr. Ridener that I had just been illegally kicked out of a public meeting and was then also being illegally prevented from entering New York City Hall's grounds by members of the NYPD sufficiently confirms that I had a Fourteenth Amendment due process and equal protection right as well as a First Amendment right retrospectively on 11/30/17 to have had him intervene on my behalf as Defendant Stribula was attempting to illegally prevent me from attending the Mayor's 11/30/17 town hall.

11.     On 11/13/19, I recorded a video recording at 11:01 am that has the filename of "IMG_1379.MOV" as I stood just outside of the entrance to City Hall by Broadway. That video recording is available on the Internet at

https://drive.google.com/open?id=1LPyr5MAgkvzGLjuHDYNzKOUvelCRHB28. Among other things, that video recording recorded a face-to-face conversation that I had with Defendant Ridener as he stood near the NYPD guardhouse that is located just inside of the entrance to City Hall by Broadway. My conversation with Ridener begins at the elapsed time of 1 minute and 5 seconds in that video as I called out to him from where I stood as he coincidentally happened to then be crossing paths with me as he approached that entrance to enter City Hall's grounds. The

next screenshot is from the elapsed time of 1 minute and 49 seconds in that video and clearly shows Mr. Ridener as he was then continuing to confirm that I could attend the public town hall meeting that the Mayor would conduct on that date in Queens from within the room in which it would be conducted as it would be conducted.



## CAUSES OF ACTION

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

**CLAIM #1:**      Attempted violations of my First Amendment right of access to a public forum, to communicate in a public forum, to record audio and video recordings in a public forum, to take photographs in a public forum, to receive information in a public forum, to have the opportunity to talk with journalists in a public forum, to distribute whistleblowing literature in a public forum, to engage in lawful assembly in a public forum, to engage in freedom of expression in a public forum, to otherwise engage in whistleblowing and criticism of government officials in a

public forum, to engage in expressive association, and to petition government
officials in a public forum for redress of grievances

(Against Defendants City of New York, Stribula, Miller, Ringel, Baez, Carrion, Ridener,
Redmond, de Blasio, Byrne, Jr., O'Neill, Ramos, Shorris, Vance, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully
set forth herein.

2.      I also incorporate by reference as though fully set forth herein the decision that was
issued on 5/19/20 in _Dunn v. City of Fort Valley,_ No. 19-cv-287(TES) (M.D. Ga. May 19, 2020)
due to relevant findings it contains about First Amendment rights in public forums, supervisory
liability, and other pertinent things.

3.      My right to lawfully communicate ideas and views with others in a public forum in a
manner that doesn't disrupt how that public forum is conducted while valid time, place, and
manner restrictions do not exist to prohibit such communication in a public forum was
acknowledged the following remark that U.S. District Judge Lorna Schofield expressed in the
decision that she issued in _Gonzalez v. City of New York_, No. 14 Civ. 7721 (LGS) (S.D.N.Y.
Sept. 29, 2016):

> "Two branches of First Amendment claims are relevant to the present case: (a)
> interference with the right to protest in a public forum and (b) retaliation for exercising
> First Amendment rights."

4.      More importantly, my right to lawfully communicate ideas and views in a public forum
in a manner that doesn't disrupt how that public forum is conducted while valid time, place, and
manner restrictions do not exist to prohibit such communication in a public forum was confirmed
by the following excerpt from _Occupy Nashville v. Haslam_, 949 F. Supp. 2d 777 (M.D. Tenn.
2013):

> "a state may not restrict First Amendment rights, absent valid time, place, or manner
> restriction. _See Dean,_ 354 F.3d at 551; _Galvin v. Hay,_ 374 F.3d 739, 751 (9th

<u>Cir.2004</u>) ("**As speakers may generally control the presentation of their message by choosing a location for its importance to the meaning of their speech, speakers may ordinarily— absent a valid time, place and manner restriction—do so in a public forum.");** ***Childs v. Dekalb Cnty., Ga.,* 286 Fed.Appx. 687, 693-94 (11th Cir.2008)** (denying qualified immunity and stating that, based on Supreme Court precedent, "police officers have known for decades that protestors present on public property have a First Amendment right to peacefully express their view, in the absence of narrowly tailored ordinances restricting the time, place, or manner of the speech")."

(boldface formatting added for emphasis)

5.      Due to the facts and circumstances that I have discussed at length and with sufficient specificity in this pleading, I have decisively established that the Defendants identified above that this claim concerns were personally involved in having attempted to willfully, callously, wantonly, and illegally violate my First Amendment rights in relation to my efforts to have attended the Mayor's 11/30/17 town hall.

6.      Relevant findings that support the issuance of a determination that confirms the existence of shared liability between Defendants Stribula, Ramos, Miller, Ringel, Baez, Carrion, Ridener, Redmond, de Blasio, Byrne, Jr., O'Neill, Shorris, and Vance, Jr. for this claim exist in the decisions that were issued in <u>US v. Blackmon</u>, 839 F.2d 900 (2d Cir. 1988), <u>Escalera v. Samaritan Village Men's Shelter</u>, No. 17-cv-4691 (CM) (S.D.N.Y. Sept. 27, 2019), <u>US v. Basey, 816 F.2d 980 (5th Cir. 1987)</u>, <u>Vann v. City of New York</u>, 72 F.3d 1040 (2d Cir. 1995), <u>Pangburn v. Culbertson</u>, 200 F.3d 65 (2d Cir. 1999), and <u>Dunn v. City of Fort Valley,</u> No. 19-cv-287(TES) (M.D. Ga. May 19, 2020).

**CLAIM #2:**      **<u>First Amendment Retaliation, Viewpoint Discrimination,</u>**
          **<u>and Standardless Discretion in Denying Access to a Public Forum</u>**

(Against Defendants City of New York, Stribula, Miller, Ringel, Baez, Carrion, Ridener, Redmond, de Blasio, Byrne, Jr., O'Neill, Ramos, Shorris, Vance, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully

set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint and otherwise incorporated by reference within it.

## CLAIM #3:      **Attempt to violate my Fourth Amendment rights**

(Against Defendants City of New York, Stribula, Miller, Ringel, Baez, Carrion, Ridener, Redmond, de Blasio, Byrne, Jr., O'Neill, Ramos, Shorris, Vance, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      Defendant Stribula illegally subjected me to an unofficial attempted arrest of my ability to attend the Mayor's 11/30/17 town hall and that fact constituted an illegal unofficial arrest in violation of the Fourth Amendment of my ability to freely and lawfully walk into a public forum by a show of authority.

3.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint and otherwise incorporated by reference within it.

## CLAIM #4:      **Violations of the Fifth Amendment**

(Against Defendants City of New York, Stribula, Miller, Ringel, Baez, Carrion, Ridener, Redmond, de Blasio, Byrne, Jr., O'Neill, Ramos, Shorris, Vance, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint and otherwise incorporated by reference within it.

**CLAIM #5:** <u>**Violations of the Fourteenth Amendment**</u>
<u>**Substantive Due Process Rights**</u>

(Against Defendants City of New York, Stribula, Miller, Ringel, Baez, Carrion, Ridener, Redmond, NYPD John Doe1 11/30/17, NYPD John Doe2 11/30/17, NYPD John Doe3 11/30/17, Lancman, de Blasio, Byrne, Jr., O'Neill, Ramos, Shorris, Vance, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint and otherwise incorporated by reference within it.

**CLAIM #6:** <u>**Violations of Procedural Due Process**</u>

(Against Defendants City of New York, Stribula, Miller, Ringel, Baez, Carrion, Ridener, Redmond, NYPD John Doe1 11/30/17, NYPD John Doe2 11/30/17, NYPD John Doe3 11/30/17, Lancman, de Blasio, Byrne, Jr., O'Neill, Ramos, Shorris, Vance, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint and otherwise incorporated by reference within it.

**CLAIM #7:** <u>**Violations of the Fourteenth Amendment**</u>
<u>**Equal Protection Rights**</u>

(Against Defendants City of New York, Stribula, Miller, Ringel, Baez, Carrion, Ridener, Redmond, NYPD John Doe1 11/30/17, NYPD John Doe2 11/30/17, NYPD John Doe3 11/30/17, de Blasio, Byrne, Jr., O'Neill, Ramos, Shorris, Vance, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint and otherwise incorporated by reference within it.

**CLAIM #8:**        <u>Violations of the Fourteenth Amendment</u>
                                     <u>Prohibitions Against Selective-Enforcement</u>

(Against Defendants City of New York, Stribula, Miller, Ringel, Baez, Carrion, Ridener, Redmond, NYPD John Doe1 11/30/17, NYPD John Doe2 11/30/17, NYPD John Doe3 11/30/17, de Blasio, Byrne, Jr., O'Neill, Ramos, Shorris, Vance, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint and otherwise incorporated by reference within it.


**CLAIM #9:**        <u>Failure to Intervene in Violation of the</u>
                                      <u>Fourteenth Amendment</u>

(Against Defendants City of New York, Stribula, Miller, Ringel, Baez, Carrion, Ridener, Redmond, NYPD John Doe1 11/30/17, NYPD John Doe2 11/30/17, NYPD John Doe3 11/30/17, Lancman, de Blasio, Byrne, Jr., O'Neill, Ramos, Shorris, Vance, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint and otherwise incorporated by reference within it.


**CLAIM #10:**        <u>Failure to Train and Supervise</u>

(Against Defendants City of New York, Stribula, Miller, Ringel, Baez, Carrion, Ridener, Redmond, NYPD John Doe1 11/30/17, NYPD John Doe2 11/30/17, NYPD John Doe3 11/30/17, Lancman, de Blasio, Byrne, Jr., O'Neill, Ramos, Shorris, Vance, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint and otherwise incorporated by reference within it.

**CLAIM #11:** <u>**Violation of the New York State's Open Meetings Law**</u>

(Against Defendants City of New York, Stribula, Miller, Ringel, Baez, Carrion, Ridener, Redmond, NYPD John Doe1 11/30/17, NYPD John Doe2 11/30/17, de Blasio, Byrne, Jr., O'Neill, Ramos, Shorris, Vance, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint and otherwise incorporated by reference within it.


**CLAIM #12:** <u>**Abuse of Process**</u>

(Against Defendants City of New York, Stribula, Miller, Ringel, Baez, Carrion, Ridener, Redmond, NYPD John Doe1 11/30/17, NYPD John Doe2 11/30/17, NYPD John Doe3 11/30/17, de Blasio, Byrne, Jr., O'Neill, Ramos, Shorris, Vance, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint and otherwise incorporated by reference within it.


**CLAIM #13:** <u>**Deliberate Indifference**</u>

(Against Defendants City of New York, Stribula, Miller, Ringel, Baez, Carrion, Ridener, Redmond, NYPD John Doe1 11/30/17, NYPD John Doe2 11/30/17, NYPD John Doe3 11/30/17, Lancman, de Blasio, Byrne, Jr., O'Neill, Ramos, Shorris, Vance, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint and otherwise incorporated by reference within it.

**CLAIM #14:**     __Fraudulent Misrepresentation and Fraudulent Inducement__

(Against Defendants City of New York, Stribula, Shorris)

1.     I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.     The public notice that was issued for the Mayor's 11/30/17 town hall meeting didn't state or otherwise suggest that illegal acts would be committed against me on 11/30/17 by Defendant Stribula and others at the site of the Mayor's 11/30/17 town hall meeting in response to efforts that I lawfully undertook on 11/30/17 to attend that town hall meeting. That omission of material fact was a factor that fraudulently induced me to try to lawfully attend that public town hall meeting in accordance with my constitutional rights and essentially functioned as a bait to lure there at which point Defendant Stribula and others committed illegal acts and omissions against me that caused me undue and patently illegal harassment, embarrassment, reputational harm, and emotional distress mainly in the form of justifiable rage against Ms. Stribula that I didn't outwardly exhibit in any way that was in response to how she yet again was attempting to flagrantly violate my constitutional rights in front of other members of the public at the site of a public forum that the was partly conducted by the Mayor as I was conducting myself in a lawful manner. Defendant City of York is responsible for the content of that public notice for the Mayor's 11/30/17 town hall and is liable for fraudulent inducement on account of the fact that it didn't include any information in that notice about illegal acts that would be committed against me by its personnel if I attempted to try to lawfully attend that town hall meeting. The City of New York also fraudulently confirmed my RSVP for that town hall that further fraudulently induced me to try to attend it.

3.     Ms. Stribula committed fraud against me on 11/30/17 by bluntly telling me that I would

not be allowed to attend that town hall meeting because she had said so. The fact that hindsight confirms that I actually attended that town hall meeting because Jerry Ioveno of the NYPD thereafter intervened on my behalf to have her overruled sufficiently confirms that her earlier remarks about whether I could attend that town hall meeting were fraudulent.

4.     When I talked with Defendant Shorris on 10/13/17 at the New York Law School in front of whistleblower news censors in journalism that include Ben Max, Jillian Jorgensen, Matthew Chayes, and Yoav Gonen, he told me that the Mayor's Office tries to be open and accessible to the public after I told him that I had repeatedly and illegally been prevented from attending public forums that were partly conducted by the Mayor. The fact that I continued to be illegally prevented from attending public forums that were partly conducted by the Mayor thereafter and that illegal acts and omissions were committed against me to otherwise try to prevent me from being able to attend them in accordance with my constitutional rights to do so sufficiently establishes that Mr. Shorris' remarks to me on 10/13/17 about attempts by the Mayor's Office to be open and accessible to the public were materially fraudulent.

5.     The defendants that this claim concerns are liable for it due to the information that I presented in this complaint and otherwise incorporated by reference within it.


**CLAIM #15:**          **Violation of New York State General Business Law 349**

(Against Defendants City of New York, Stribula, Ramos, Shorris, Redmond, Baez, NYPD John Doe1 11/30/17, NYPD John Doe2 11/30/17, Byrne, Jr., O'Neill, Vance, Jr.)

1.     I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.     The defendants that this claim concerns are liable for it due to the information that I presented in this complaint and otherwise incorporated by reference within it.

3.     Defendants Redmond, Baez, NYPD John Doe1 11/30/17, NYPD John Doe2 11/30/17, Byrne, Jr., O'Neill, Vance, Jr. are liable for this claim because they engaged in deception in violation of New York State General Business Law §349 in relation to my efforts to have attended the Mayor's 11/30/17 town hall meeting with respect to how those defendants conducted themselves as criminal accomplices of Defendant Stribula against me through their failure to intervene on my behalf to enable me to attend the Mayor's 11/30/17 town hall and otherwise end the illegal practices prior to 11/30/17 by the NYPD and Mayor's Office's staff that were responsible for those illegal acts on 11/30/17 instead of being the law-enforcement personnel that they technically were on and prior to 11/30/17.

**CLAIM #16:**                                    **Negligence**

(Against Defendants City of New York, Stribula, Miller, Ringel, Baez, Carrion, Ridener, Redmond, NYPD John Doe1 11/30/17, NYPD John Doe2 11/30/17, NYPD John Doe3 11/30/17, Lancman, de Blasio, Byrne, Jr., O'Neill, Ramos, Shorris, Vance, Jr.)

1.     I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.     The defendants that this claim concerns are liable for it due to the information that I presented in this complaint and otherwise incorporated by reference within it.

**CLAIM #17:**                                    **Municipal Liability**

**(Against Defendant City of New York)**

1.     I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.     The defendants that this claim concerns are liable for it due to the information that I presented in this complaint and otherwise incorporated by reference within it.

**CLAIM #18:** <u>**Intentional and Negligent Infliction of Emotional Distress**</u>

(Against Defendants City of New York, Stribula, Miller, Ringel, Baez, Carrion, Ridener, Redmond, NYPD John Doe1 11/30/17, NYPD John Doe2 11/30/17, NYPD John Doe3 11/30/17, Lancman, de Blasio, Byrne, Jr., O'Neill, Ramos, Shorris, Vance, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint and otherwise incorporated by reference within it.

**CLAIM #19:** <u>**Conspiracy to Violate Civil Rights and**</u>
<u>**Cover-Up Such Abuse**</u>

(Against Defendants City of New York, Stribula, Miller, Ringel, Baez, Carrion, Ridener, Redmond, NYPD John Doe1 11/30/17, NYPD John Doe2 11/30/17, NYPD John Doe3 11/30/17, Lancman, de Blasio, Byrne, Jr., O'Neill, Ramos, Shorris, Vance, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint and otherwise incorporated by reference within it.

**CLAIM #20:** <u>**Unjust Enrichment**</u>

(Against Defendants City of New York, Stribula, Miller, Ringel, Baez, Carrion, Ridener, Redmond, NYPD John Doe1 11/30/17, NYPD John Doe2 11/30/17, NYPD John Doe3 11/30/17, Lancman, de Blasio, Byrne, Jr., O'Neill, Ramos, Shorris, Vance, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      This claim largely concerns the fact that though the defendants that this claim applies to committed illegal acts and omissions against me that this amended complaint concerns, they

were likely compensated by the City of New York for work that they performed as they committed such illegal acts and omissions against me. That circumstance amounts to unjust enrichment.

3.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint and otherwise incorporated by reference within it.

## CLAIM #21: <u>Public and Private Nuisance</u>

(Against Defendants City of New York, Stribula, Miller, Ringel, Baez, Carrion, Ridener, Redmond, NYPD John Doe1 11/30/17, NYPD John Doe2 11/30/17, NYPD John Doe3 11/30/17, Lancman, de Blasio, Byrne, Jr., O'Neill, Ramos, Shorris, Vance, Jr.)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint and otherwise incorporated by reference within it.

## CLAIM #22: <u>Violation of the Handschu Agreement</u>

(Against Defendants City of New York, Redmond, NYPD John Doe3 11/30/17, de Blasio, Byrne, Jr., O'Neill)

1.      I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

2.      The defendants that this claim concerns are liable for it due to the information that I presented in this complaint and otherwise incorporated by reference within it.

## DEMAND FOR A JURY TRIAL

1.      I demand a trial by jury in this action on each and every one of my damage claims.

## PRAYER FOR RELIEF

WHEREFORE, this Court should accept jurisdiction over this entire matter and grant me additional relief by:

1.      Causing this Court to exercise supplemental jurisdiction over K1 before then consolidating it with this action that will result in having this action to control how all of that litigation is conducted. This request stems from a common nucleus of operative fact and is pursuant to FRCP Rule 42.

2.      Empaneling a jury to hear and decide this case strictly on its merits.

3.      Granting me the following additional relief against the defendants individually and jointly:

   a.      Compensation for violations of my constitutional rights, defamation, abuse of process, nuisance, unjust enrichment, wire fraud, and fraudulent misrepresentations as well as pain, suffering, mental anguish, and humiliation that I experienced due to the illegal acts and omissions by the defendants.

   b.      Declaratory, injunctive, and equitable relief through the issuance of an order that voids the results of the 2017 New York City government elections for the jobs of New York City Mayor, New York City Councilmember, Bronx District Attorney, Queens Borough President, New York City Comptroller, and New York City Public Advocate primarily because it is reasonable to believe that results of those elections were materially tainted by voter fraud, voter suppression, and whistleblower retaliation in violation of 5 U.S.C. §1502(a)(1) that occurred partly by illegally:

      i.     Preventing whistleblowers from attending public forums that the Mayor conducted with them and were partly used as campaign events to attract various types of support from voters and prospective voters.

      ii.    Segregating and discriminating against whistleblowers at such public forums.

c.     Declaratory, injunctive, and equitable relief in accordance with findings expressed in *Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899 (8th Cir. 2012) through the issuance of an order that enjoins Defendant City's personnel and agencies from continuing to commit illegal acts and omissions against me that violate my rights.

d.     Further declaratory, injunctive, and equitable relief through the immediate issuance of an order that:

      i.     Prohibits all members of the NYPD from deliberately making any physical contact with me while I am conducting myself in a lawful manner.

      ii.    Requires all members of the Mayor's NYPD security detail to not come within 10 feet from me while they are on-duty as members of the Mayor's NYPD security detail and I am conducting myself in a lawful manner, unless I explicitly grant consent for that to occur.

      iii.   Requires all members of the Mayor's CAU to not come within 10 feet from me while I am conducting myself in a lawful manner and they are on-duty as members of the Mayor's CAU, unless I explicitly grant consent for that to occur.

      iv.   Prohibits Defendant City's personnel from illegally interfering with my ability to attend public forums that the Mayor may conduct from within the room in which he does so as he does so.

      v.    Prohibits Defendant City's personnel from illegally interfering with the rights that

other people have to lawfully attend public forums that the Mayor conducts that may allow others and I to exercise our First Amendment right to observe, hear, and enjoy lawful speech and other expression that such people may engage in to criticize the Mayor and others during them.

vi. Prohibits Defendant City's personnel from illegally interfering with the First Amendment and Fifth Amendment rights that people have to **a)** bring literature and signs with them into rooms in which the Mayor conducts public forums, **b)** lawfully distribute such literature during those meetings without disrupting those meetings, **c)** distribute such literature and otherwise show it and signs in the rooms in which the Mayor conducts such meetings before they begin and after they end, and **d)** Keep such literature and signs with them as the Mayor conducts such public forums.

vii. Requires Defendant City to grant access to public forums that the Mayor conducts inside of buildings based on the order in which members of the public line up directly outside of those buildings shortly before those meetings begin to be granted access to the room in which the Mayor conducts such public forums on those dates.

viii. Prohibits Defendant City from allowing its personnel to prevent members of the public from attending public forums that the Mayor conducts inside of buildings from within the rooms in which he does so while sufficient seating is available in those rooms.

ix. Orders Defendant City to immediately cause all members of the NYPD who are present in areas where the Mayor conducts public town hall meetings, public

resource meetings, public hearings, and press conferences that the public may observe to wear body-cameras that are always on and always recording both audio and video recordings.

x.   Orders Defendant City of New York to provide all audio and video recordings from such body-cameras in unedited and non-redacted form along with their audit trail records to allow for an independent forensic analysis within 24 hours of any adverse encounter that occurs between **a)** members of the public and **b)** the members of the NYPD wearing those body-cameras.

xi.   Orders Defendant City to immediately cause clear audio recordings to be recorded of all verbal communications that members of the NYPD have while they are on-duty as members of the NYPD and present in areas where the Mayor conducts public town hall meetings, public resource meetings, public hearings, and press conferences that the public may observe.

xii.   Orders Defendant City of New York to provide all such audio recordings in unedited and non-redacted form that includes information that identifies the date and time when those recordings began to be recorded as well as the speakers heard in those communications that are personnel of Defendant City within 24 hours of any adverse encounter that occurs between **a)** members of the public and **b)** the members of the NYPD heard in those audio recordings while they are being recorded.

xiii.   Orders Defendant City to immediately cause all other electronic communications (such as e-mail messages, cell phone text messages, and encrypted communications) that are engaged in by those who are part of the Mayor's NYPD

security detail to be recorded and preserved for possible use in litigation by people that they commit illegal acts and omissions against.

xiv. Orders Defendant City to provide all such electronic communications within 24 hours in unedited and non-redacted form that includes information that identifies the date and time when those communications occurred and the identities of those who engaged in them to members of the public who have adverse encounters with members of the Mayor's NYPD security detail to the extent that those communications concern those adverse encounters.

xv. Orders Defendant City to provide me copies of all communications that its personnel have had about me since 2/1/16 in unedited and non-redacted form. This includes, but is not limited to all of the following:

1) All communications that have taken place by using personally-owned devices, personal e-mail accounts, personal encrypted messaging accounts, and personal cell phone plans as well as by using computers and other devices that are owned or leased by Defendant City and e-mail, cell phone, and encrypted messaging accounts that are administered and/or controlled by Defendant City.

e. Further declaratory, injunctive, and equitable relief through the immediate issuance of an order that:

i. Orders Defendant City to immediately cause the CCRB and DOI to be provided all video recordings within 24 hours after a complaint is reported to them about illegal acts and omissions that are committed by members of the NYPD and other

personnel of Defendant City that are recorded by video security cameras that Defendant City controls. This includes, but is not limited to illegal acts that are related to public forums that the Mayor conducts and occur on the dates and at the locations where the Mayor conducts them.

ii. Further orders Defendant City to make those video recordings available within 24 hours in unedited and non-redacted form to those who report such illegal acts and omissions to the CCRB and DOI.

iii. Orders that the following Defendants are also required to be fired at the earliest possible instead of practical or convenient time from the jobs that they hold with Defendant City of New York largely pursuant to Section 1116 of the New York City Charter in response to the illegal acts and omissions that they committed against me in relation to my efforts to have lawfully attended the Mayor's 11/30/17 town hall and that they are prohibited from being employed by Defendant City again in spite of the fact that I was ultimately able to attend that town hall meeting:

> Carrion, Ridener, Miller, Ringel, Stribula, Redmond, NYPD John Doe1 11/30/17, NYPD John Doe2 11/30/17, de Blasio, Byrne, Jr., O'Neill, Ramos, Lancman, Shorris, Vance, Jr.

iv. Orders the following defendants to immediately and fully reimburse the City of New York with pre-judgment and post-judgment interest for the total value of pay and benefits that they received that directly correspond to the length of time during which they were involved in the illegal acts and omissions that were committed against me in relation to my efforts to have lawfully attended the Mayor' 11/30/17 town hall and be treated just like any other member of the public

while attending that town hall meeting in accordance with my Fourteenth

Amendment due process and equal protection rights:

> Carrion, Ridener, Miller, Ringel, Stribula, Redmond, NYPD John Doe1
> 11/30/17, NYPD John Doe2 11/30/17, NYPD John Doe3 11/30/17, de
> Blasio, Byrne, Jr., O'Neill, Ramos, Lancman, Shorris, Vance, Jr.

v. Restrains Defendant City's personnel and agencies from continuing to commit

illegal acts and omissions against me that violate my rights, especially in all areas

that are public forums.

vi. Restrains the City of New York from allowing the NYPD to provide more

security and law-enforcement that would benefit members of the press in public

forums and other public areas than what members of the NYPD extended to me

on 11/30/17 in relation to my efforts to attend the Mayor's 11/30/17 town hall

meeting on the grounds that such greater security and law-enforcement would

violate my Fourteenth Amendment rights that pertain to selective-enforcement,

equal protection, due process, and discrimination.

vii. Declares that the ban that the Mayor announced that prohibits large gatherings of

people in New York City and protests from being conducted is overly broad,

pretextual, void, and unenforceable largely because it impermissibly violates core

First Amendment rights as well as Fifth Amendment and Fourteenth Amendment

rights that pertain to due process, selective-enforcement, equal protection, and

liberty.

viii. Further declares that though it may possibly be advisable to wear a face mask in

New York City, no one is required to do so partly because **a)** members of the

NYPD are not themselves wearing face masks outside and **b)** doing so impedes

the flow of oxygen to healthy people and impermissibly infringes upon the First Amendment rights that people have to engage in freedom of expression, such as by having people see them smiling, expressing affection by kissing, being able to yawn without having to wear a face mask, and having other facial expressions that they make seen by others. Although it is potentially dangerous to one's health to engage in a wide variety of other activities that include driving a car because of the possibility that a drunk driver may pass by and having a drink in a bar because there is a possibility to breathe in second-hand smoke, bans on driving and visiting bars have not been imposed due to such risk factors.

    ix.    Similarly declares that the social-distancing restrictions in New York State are overly broad, void, and unenforceable for the same reasons just discussed and declares that those restrictions have been selectively-enforced by the NYPD in violation of the Fourteenth Amendment.

f.    Declaratory relief by declaring that the Mayor's 11/30/17 town hall was a public forum that was subject to New York State's Open Meetings Law and that all actions that were taken in relation to that meeting are void pursuant to Section 107 of New York State's Public Officer Law because that town hall meeting was conducted in violation of New York State's Open Meetings Law.

g.    Injunctive and equitable relief by ordering Defendant City to immediately provide me the following in unedited and non-redacted form:

    i.    Copies of all video recordings and photographs that were recorded and otherwise taken by Defendant City's personnel inside of the building that hosted the Mayor's 11/30/17 town hall meeting between the time when **a)** the first member

of the public entered that building on 11/30/17 in relation to attending that town hall meeting and **b)** everyone who attended that town hall meeting exited that building after it concluded on 11/30/17.

ii.  Copies of all video recordings and photographs that were recorded and otherwise taken by Defendant City's personnel in the areas where I interacted with the defendants on 11/30/17 at the site of the Mayor's 11/30/17 town hall meeting while they and/or others illegally prevented me from attending that town hall meeting through their illegal acts and omissions.

iii.  Copies of all records that have been in the possession of Defendant City's personnel that pertain to the deliberations, planning, coordination, execution, and cover-up that took place in regards to my having been illegally:

1)  Prevented from attending the Mayor's 11/30/17 town hall meeting.

iv.  Copies of all records that have been in the possession of Defendant City's personnel that describe staff assignments that were issued to the members of the Mayor's staff, the Mayor's CAU, the members of the Mayor's NYPD security detail, and the other members of the NYPD who were assigned work to do in relation to the Mayor's 11/30/17 town hall meeting.

v.  Copies of all records that have been in the possession of Defendant City's personnel that consist of the names and contact information for the members of the public who registered to attend the Mayor's 11/30/17 town hall meeting as well as the names and contact information for the journalists who attended that town hall meeting.

h.  Injunctive and equitable relief by ordering Defendant City of New York to

immediately provide me all video recordings as an ".avi", ".mp4", or ".mov" computer file that were recorded on 2/19/20 by all video security cameras that were installed in the school and are controlled by DOE that hosted the town hall meeting that the Mayor conducted on that date between the times when the first member of the public was allowed into that school for the purpose of attending that town hall until everyone who attended that town hall exited that school.

i.      Compensation for all costs and attorney fees that are related to my pursuit of this civil action.

j.      Equitable and injunctive relief that authorizes me and others that I may ask to help me to paint, write, or draw any message or image of any size indefinitely throughout New York City without needing pre-approval from anyone on any public street, sidewalk, public passageway, concourse, and park indefinitely by using resources that will be provided to me by the City of New York for that purpose.

k.      Equitable and injunctive relief that orders the City of New York to cause its NYPD to accord whatever messages and images that I may paint, write, or draw in public areas throughout New York City to receive equal law-enforcement protection that is accorded to Black Lives Matter signs on streets in New York City, especially the one located in front of Trump Tower in Manhattan.

l.      An award of damages against the following defendants pursuant to 18 U.S.C. §1986 for having not intervened on my behalf in relation to my effort to have attended the Mayor's he Mayor's 11/30/17 town hall meeting:

> Carrion, Ridener, Miller, Ringel, Stribula, Redmond, NYPD John Doe1 11/30/17, NYPD John Doe2 11/30/17, de Blasio, Byrne, Jr., O'Neill, Ramos, Lancman, Shorris, Vance, Jr.

m.      An award of damages against the following defendants pursuant to New York State

General Business Law §349 for deception in relation to my efforts to have attended the

Mayor's 11/30/17 town hall meeting with respect to how those defendants conducted

themselves as criminal accomplices instead of the law-enforcement personnel that they

technically were on 11/30/17:

> Redmond, Baez, NYPD John Doe1 11/30/17, NYPD John Doe2 11/30/17, Byrne, Jr.,
> O'Neill, Vance, Jr.

n.  An award of punitive damages for all of my claims set forth in this pleading.

o.  An award of pre-judgment and post-judgment interest.

p.  Declares that the Mayor's 11/30/17 town hall was illegally conducted inside of a

public school.

q.  Equitable and injunctive relief that orders the City of New York to remove all

obstructions from public sidewalks, public streets, public parks, and public concourses that

include traditional public forums within 24 hours that the NYPD and Mayor's office has set

up and otherwise allowed to exist on them and to not setup such obstructions again in such

public areas nor otherwise allow them to exist on and in them without prior approval by this

Court. The existence of such obstructions on sidewalks violates New York City

Administrative Code §16-122(b). Also, such obstructions impermissibly infringe upon and

otherwise burden the First Amendment rights that people have to lawfully walk, bicycle, and

otherwise freely move about and congregate in such areas – especially on sidewalks and in

parks that are traditional public forums – while some who seek to do so may have various

disabilities that include blindness and physical ailments. Allowing such obstructions to exist

on public sidewalks, in public streets, in public parks, and on public concourses in New York

City is clearly inequitable and quite literally an insult to injury with respect to my claims in

this action that largely concern illegal acts and omissions that were committed against me

while no pandemic existed in New York City that prevented me from lawfully attending public forums. It is patently inequitable to my countervailing interest and ability to lawfully exercise my constitutional rights on public sidewalks and in parks to be curtailed by the NYPD and Mayor's administration during the ongoing Coronavirus pandemic to accommodate such things as outdoor dining after the NYPD and Mayor's administration flagrantly, willfully, criminally, and repeatedly violated my constitutional rights to lawfully attend public forums inside of buildings that the Mayor and other government officials conducted. In the same way that I took a risk that I would be illegally prevented from lawfully attending such public forums that the Mayor conducted while no pandemic existed in New York City as I visited the sites where those public forums were conducted on the dates when they were conducted, the owners of restaurants and other businesses that would benefit by being able to expand their operations on public sidewalks and in public parks in New York City at the expense of my First Amendment, Fifth Amendment, and Fourteenth Amendment rights to freely make use of all areas on such public sidewalks and public parks that are traditional public forums took a risk that circumstances beyond their control would possibly arise that would materially and repeatedly disrupt their ability to operate their businesses. A reasonable, equitable, and creative accommodation may be made for owners of businesses that wish to conduct their operations outside by having this Court order the immediate bulldozing of City Hall; the NYPD headquarters, precincts, and training facilities, and Gracie Mansion to allow such businesses to promptly expand their operations on account of the fact that those locations have been the primary sanctuaries of mobsters dressed as government officials and members of the NYPD that committed illegal acts and omissions that rigged and stole the 2017 New York City government elections through voter

suppression, voter fraud, whistleblower retaliation, and terrorism that persists against New Yorkers.

r.      Equitable relief that will have this Court adopt the practice in *USA v. Donziger*, No. 11-cv-0691(LAK)(RWL)(S.D.N.Y.) to similarly appoint private prosecutors to commence criminal prosecutions against the defendants that this action concerns in response to criminal acts and omissions that they committed and/or condoned against me that are addressed in this complaint to remedy the fact that prosecutors have negligently refused to do so.

s.      Orders the City of New York to immediately implement a procedure by which all members of the public can obtain free, unedited, and non-redacted copies of all video recordings within 48 hours after they are recorded by video security cameras that are controlled by the NYPD that will begin in the next 7 calendar days for which the following relevant facts apply to befit the public's interest in government transparency, accountability, being accorded proper due process while testifying in public hearings and otherwise talking with government officials, and having a means with which to measure the extent to which **a)** due process is and isn't accorded to members of the public during such interactions members of the news media inappropriately and consistently censor those who testify in public hearings that aids and abets greater societal ills that include terrorism by the NYPD, voter suppression, whistleblower retaliation, viewpoint discrimination, and voter fraud:

  i.      Such video recordings to be made available to the public within 48 hours include those that are recorded inside of City Hall's building in all areas in which public hearings are conducted as well as all other public areas inside of City Hall's building.

  ii.      Such video recordings to be made available to the public within 48 hours

include those that are recorded by all video security cameras of those areas by video security cameras that are controlled by the NYPD.

iii.   Such video recordings to be made available to the public within 48 hours also include those that are recorded outside of and in the immediate vicinity of City Hall's building of the property of City Hall for all areas of that property.

iv.   Such video recordings to be made available to the public within 48 hours include those that are recorded by all video security cameras of the areas just discussed by video security cameras that are controlled by the NYPD.

v.   Such video recordings to be made available to the public within 48 hours also include those that are recorded of all areas of the sidewalks and other passageways and walkways that immediately surround City Hall's property.

vi.   Such video recordings to be made available to the public within 48 hours include those that are recorded by all video security cameras of the areas just discussed by video security cameras that are controlled by the NYPD.

vii.   Such video recordings to be made available to the public within 48 hours must be made available as types of video recordings that that have the file extension of ".mp4", ".avi", and ".mov" that can readily be played back on computers that run the operating systems for Windows and Macintosh computers without the need for special software to do so.

viii.   Such video recordings to be made available to the public within 48 hours must include information in them that show the date and time when they were recorded.

t.   Restrains the City of New York from transferring the NYPD's authority to issue and

revoke press credentials to another entity within Defendant City's government.

u.      Immediately revokes the NYPD's authority to issue and revoke press credentials and empowers me and a group of other whistleblowers who are independent of the influence of both **a)** Defendant City and **b)** alleged news organizations to act in the NYPD's place to determine who will and will not have press credentials issued to them as well as those who will have their existing press credentials revoked to befit the public's interest in transparency, government accountability, and inappropriate and complicit censorship by the press that aids and abets societal ills within an illegitimate, corrupt, and dysfunctional government.

v.      Declares that New York City has proven to be and remains an anarchist jurisdiction largely because of illegal acts and omissions that the defendants in this action criminally perpetrated in New York City in relation to the constitutional rights that people have to lawfully attend and participate in public forums in New York City.

w.      Declares that all restrictions that have been established in New York City by New York State Governor Andrew Cuomo. Defendant de Blasio, and the NYPD that restrict peaceful **a)** protesting and demonstrating activities outdoors and indoors and **b)** gatherings of people indoors and outdoors for other purposes that may possibly include obtaining information from witnesses and formulating plans to establish a class-action lawsuit against the City of New York in relation to this case and related litigation that I commenced impermissibly violate the First Amendment, are overly broad, is clear standardless discretion, are an unlawful prior restraint on First Amendment rights, are being selective-enforced in violation of the Fourteenth Amendment, and are void.

x.      Injunctive and equitable relief by ordering Defendant City to immediately provide me within 24 hours all "Unusual Occurrence Reports" and related reports that members of the

NYPD were required to complete in relation to their acts and omissions against me that caused and otherwise enabled me to have been prevented from attending the Mayor's 11/30/17 town hall meeting.

y.     Orders the City of New York to immediately close the buildings in which New York City's Housing Courts operate that the City of New York maintains until 60 days after the following occurs:

    i.     All New York City public libraries have fully re-opened to allow all members of the public to use the Internet access and other resources that such libraries make available that would be of benefit to pro se litigants who need Internet access and may not otherwise have that with which to:

        1)     Engage in legal research and prepare legal papers to properly prepare for legal proceedings assigned to New York City's housing courts.

        2)     Search for and apply for employment opportunities.

        3)     Stay abreast of news pertaining to the coronavirus and how best to take care of themselves, their families, and friends to stay healthy during the ongoing coronavirus pandemic.

        4)     Engage in research to make contingency plans about housing and other matters.

        5)     Stay abreast of news pertaining to upcoming government elections that directly impact their life.

z.     Such other, further, and different relief as the interests of justice and equity may require.

Dated:    New York, New York
           November 27, 2020

From,

s_/Towaki Komatsu

*Plaintiff, Pro Se*
802 Fairmount Pl., Apt. 4B
Bronx, NY 10460
(347) 872-1205
Towaki_Komatsu@yahoo.com

# **Exhibit A**



# Council Member Rory Lancman

in conjuction with Queens Borough President Melinda Katz
State Senator Leroy Comrie
& Assembly Members Vivian Cook, David Weprin, Nily Rozic
Alicia Hyndman & Daniel Rosenthal
present

# WORKING FOR **COUNCIL DISTRICT 24**



# TOWN HALL
## - with -

# Mayor Bill de Blasio

**THURSDAY,** November 30th at 7PM

DOORS OPEN AT 6:00PM & CLOSE AT 7:30PM

**FIRST COME, FIRST SEATED**

## MS 217 - Robert A. Van Wyck

85-05 144th Street, Briarwood, NY 11435

## Space is limited - please RSVP by November 29th at 5PM



**Mayor's Community
Affairs Unit**

**TOWN HALL** CO-SPONSORS

Briarwood Community Association
Fresh Meadows Homeowners Civic Association
Greater Jamaica Development Corporation
Jamaica Estates Association
Jamaica Muslim Center
Kew Gardens Hills Civic Association
Pomonok Residents Association
Queens Jewish Community Council

**TO RSVP**

**Visit:** www.nyc.gov/cd24townhall
**Email:** townhallrsvp@cityhall.nyc.gov
**or Call:** (212) 788-1453

ACCESS PROVIDED:

Please contact us if you have any additional accessibility or translation needs.